IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN RIGBY, ALAN KNIGHT, and FIREARMS POLICY COALITION, INC. , | : : : | C.A. No. 1:21-cv-01523-MN |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN C. CARNEY, Governor of Delaware; KATHY JENNINGS, Attorney General of Delaware | : : : | |

Defendants.

**ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION**

STATE OF DELAWARE DEPARTMENT OF JUSTICE

Patricia A. Davis (No. 3857)
Kenneth L. Wan (No. 5667)
Deputy Attorney General
Carvel Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Email: PatriciaA.Davis@delaware.gov
Kenneth.wan@delaware.gov

*Counsel for Defendants*

Date: November 16, 2021

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................... 1

SUMMARY OF THE ARGUMENT .......................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

    A. The Plaintiffs ................................................................................................................... 2

    B. Legal Overview ............................................................................................................... 2

    1. Requirements under the Gun Control Act of 1968 ............................................................ 2

    2. Unfinished receiver kits and ghost guns circumvent the requirements of the Gun Control
       Act and threaten public safety ........................................................................................... 3

    3. HB 125 responds to the threat posed by unfinished receiver kits and ghost guns ............. 4

ARGUMENT .............................................................................................................................. 5

    I.    STANDARD OF REVIEW .......................................................................................... 5

    II.   HB 125 IS CONSTITUTIONAL AND PLAINTIFFS ARE UNLIKELY TO SUCCEED
        ON THE MERITS OF ANY OF THEIR CLAIMS ........................................................ 6

      A. Plaintiffs are unlikely to succeed on the merits ............................................................. 7

          1. HB 125 does not violate the Second Amendment ............................................. 7

            i. Plaintiffs' claims cannot survive the two-step analysis applied by the Third
              Circuit. ...................................................................................................... 7

            ii. HB 125 does not burden conduct protect by the Second Amendment because
              it is a longstanding, presumptively valid regulation that does not interfere with
              Delawareans' right to defend "hearth and home.''............................................. 8

            iii. In the alternative, HB 125 passes heightened scrrutiny ............................... 9

          2. Plaintiffs' takings claim cannot support injunctive relief and is unlikely to
            succeed ..................................................................................................... 11

            i. Injunctive relieve is not available for takings claims. ................................. 11

i

ii.  No compensation is due for restrictions on personal property. ................... 11

3.  HB 125 does not violate the First Amendment ................................................. 13

i.  The Instructions Ban is not the publishing of an item of expressive speech 13

ii.  The Instructions Ban is a valid, content-neutral regulation of Plaintiffs'
conduct that does not infringe First Amendment Rights .......................... 14

iii.  The Instructions Ban is not a facially unconstitutional prior restraint ...... 15

iv.  The Instructions Ban is not unconstitutionally overbroad ........................ 16

B. Plaintiffs fail to demonstrate irreparable harm ................................................. 17

C. The public's interest in preventing and prosecuting gun crime outweighs Plaintiffs'
asserted hardship ......................................................................................... 17

CONCLUSION ............................................................................................. 18

## TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                                                                      <u>**PAGE**</u>

*Abramski v. United States*, 573 U.S. 169 (2014) ........................................................................*2,3*

*Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000) ......................................................*5*

*Adkins v. United States*, 82 Fed. Cl. 619 (2008).........................................................................13

*Alexander v. U.S.*, 509 U.S. 544 (1993)......................................................................................15

*Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC,* 793 F.3d 313 (3d Cir. 2015)............*6*

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ..............................................................................16

*Brockett v. Spokane Arcades*, 472 U.S. 491 (1985)......................................................................16

*CFTC v. Cartuli*, 228 F.3d 94 (2d Cir. 2000) ..............................................................................14

*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988).................................................15

*Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288 (1984).................................................14

*Deluna v. Del. Harness Racing Comm'n*, 2019 WL 5067198 (D. Del. Oct. 9, 2019) ...................*6*

*District of Columbia v. Heller*, 554 U.S. 570 (2008)...................................................................*7,8*

*Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018) ...................*6*

*Fahr v. City of San Diego*, 2021 WL 4895974 (S.D. Cal. Oct. 20, 2021)....................................12

*Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979) ..........................................................................13

*Goldblatt v. Hempstead*, 369 U.S. 590  (1962).............................................................................12

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995)....................13

*Jackson v. City and Cty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ................................*9,10*

*Kleinman v. City of San Marcos*, 597 F.3d 323 (5th Cir. 2010) .....................................................15

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004).....................................................*5*

*McCutchen v. United States*, 145 Fed. Cl. 42 (2019), *aff'd* 14 F.4th 1355 (Fed. Cir. 2021).........12

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)...........................................................................7

*Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356 (4th Cir. 2020)........................................................12

*Mugler v. Kansas*, 123 U.S. 623 (1887) .........................................................................................12

*NRA, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012)8

*N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1 (1987).......................................................16

*Pena v. Horan*, 141 S. Ct. 108 (2020) ...........................................................................................10

*Pena v. Lindley*, 898 f.3d 969 (9th Cir. 2018) ...............................................................................10

*Preseault v. I.C.C.*, 494 U.S. 1 (1990)...........................................................................................11

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017). ............................................................6

*Rupp v. Becerra*, Case No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138452, *8-*9 (C.D. Cal. May 9, 2018) .................................................................................................................................................13

*Schwartz v. Cohen*, 1996 WL 591206 (S.D.N.Y. Oct. 15, 1996)  .................................................6

*Silvester v. Becerra*, 138 S. Ct. 945 (2018) ....................................................................................9

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) .......................................................................9,10

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302 (2002)....................12

*Texas v. Johnson*, 491 U.S. 397 (1989) ..........................................................................................13

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994)...................................................................14

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013)............................................................7,10

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)........................................................7,9,10

*United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985)..........................................11

*United States v. Salerno*, 481 U.S. 739 (1987) ..............................................................................11

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001).............................................14

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981) ........................................................................6

*U.S. v. Chi Mak*, 683 F.3d 1126 (9th Cir. 2012).................................................17

*U.S. v. Hicks*, 980 F.2d 963 (5th Cir. 1992)......................................................16

*U.S. v. O'Brien*, 391 U.S. 367 (1968)...............................................................15

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)........................................14

*Warth v. Seldin*, 422 U.S. 490 (1975)..............................................................16

*Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021)..................................................7

## STATUTES, REGULATIONS, & OTHER AUTHORITIES

11 *Del. C.* § 222.................................................................................................5

11 *Del. C.* § 1459A............................................................................................4

11 *Del. C.* § 1462...............................................................................................5

11 *Del. C.* § 1463...............................................................................................5

H.R. Rep. No. 116-88, at 2 (2019).................................................................3,4

86 Fed. Reg. 27720-01 (2021) .................................................................3,4,17

27 C.F.R. § 478.11 (2019) ...............................................................................3

27 C.F.R. § 478.92(a) (2019).............................................................................2

27 C.F.R. § 479.11 (2019) ...............................................................................3

18 U.S.C. § 921(a)(3) (2019)............................................................................3

18 U.S.C. § 922(k) (2015).................................................................................3

18 U.S.C. § 923(i) (2004).............................................................................2,3

U.S. Const. Amend. II........................................................................................7

U.S. Const. Amend. V .....................................................................................11

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed their Complaint against Governor John C. Carney and Attorney General Kathleen Jennings (collectively, the "Defendants") on October 27, 2021. D.I. 1. Plaintiffs' Complaint challenges the constitutionality of House Bill 125 ("HB 125" or the "Bill"). They allege that HB 125's restrictions on unserialized, untraceable, and undetectable firearms and firearms components violate their rights under the First, Second, Fifth, and Fourteenth Amendments to the U.S. Constitution.

On November 2, 2021, Plaintiffs filed a motion for a preliminary and permanent injunction (the "Motion"). D.I. 5.  The motion seeks to enjoin Defendants' enforcement of HB 125. D.I. 6 (the "Opening Brief" or "Op. Br.") at 19. This is Defendants' opposition to Plaintiffs' Motion.[1]

## SUMMARY OF THE ARGUMENT

1.      Plaintiffs have no likelihood of success on the merits of their Second Amendment claims.

2.      Plaintiffs have no likelihood of success on their Takings claim.

3.      Plaintiffs have no likelihood of success on their First Amendment claim.

4.      Plaintiffs have not shown that they will suffer irreparable injury in the absence of preliminary or permanent injunctive relief.

5.      The balance of the equities weighs in favor of denying Plaintiffs' requested relief.

---

[1] Defendants file this response to the Motion without waiving any arguments and/or affirmative defenses they may have pursuant to state or federal rules or case law. Defendants reserve the right to assert all defenses via motion, as appropriate, or in the first responsive pleading to the Complaint.

<u>**STATEMENT OF FACTS**</u>

**A. The Plaintiffs.**

John Rigby, Alan Knight, and Firearms Policy Coalition, Inc. ("FPC" and, together with Messrs. Rigby and Knight, the "Plaintiffs") have initiated this lawsuit against Governor Carney and Attorney General Jennings.

Mr. Rigby alleges that he is a Delaware citizen and member of FPC. D.I. 7 at ¶¶ 3-4. He further alleges that he owns one untraceable, self-manufactured firearm—a self-manufactured Glock-compatible handgun—which he completed before the enactment of HB 125. *Id.* at ¶ 8. Because of HB 125, he claims that he has removed his self-manufactured handgun to a location outside of Delaware. *Id.* at ¶ 9. Mr. Rigby also allegedly owns and possesses in Delaware an unserialized receiver and associated components: in particular, a lower receiver suitable for the manufacture and assembly of an AR-15-design rifle. *Id.* at ¶ 12.

Mr. Knight also alleges that he is a Delaware citizen and member of FPC. D.I. 8 at ¶¶ 3-4. He further alleges that he owns two unserialized, unfinished receivers and associated components: two lower receivers suitable for the manufacture and assembly of an AR-15-design rifle. *Id.* at ¶ 10.

**B. Legal Overview.**

**1. Requirements under the Gun Control Act of 1968.**

"[F]or over [50] years [the Gun Control Act of 1968 has] regulated sales by licensed firearms dealers, principally to prevent guns from falling into the wrong hands." *Abramski v. United States*, 573 U.S. 169, 172 (2014). The Gun Control Act provides that "certain classes of people – felons, drug addicts, and the mentally ill, to list a few – may not purchase or possess any firearm." *Id.* The Gun Control Act further requires that each firearm built by a licensed manufacturer contain a serial number unique to that firearm. 18 U.S.C. § 923(i) (2004); 27 C.F.R.

§ 478.92(a) (2019). It is a crime to possess a firearm that had its serial number removed. 18 U.S.C. § 922(k) (2015). The statute also imposes recordkeeping requirements on federal firearm licensees so that a gun found on the street can be traced, through its serial number, to its point of sale. *Abramski*, 573 U.S. at 173.

The serial number must be engraved or cast on the "frame or receiver" of the weapon because that is the statutory "firearm." 18 U.S.C. § 923(i) (2004); 18 U.S.C § 921 (a)(3) (2019). The "[f]rame or receiver" is the part of the firearm that receives the other essential components of the gun, like the barrel and the firing pin. *See* 27 C.F.R § 478.11 (2019); 27 C.F.R. § 479.11 (2019). That is, other gun components are attached to the receiver to create the complete gun.

### 2. Unfinished receiver kits and ghost guns circumvent the requirements of the Gun Control Act and threaten public safety.

"In recent years, individuals have been purchasing firearm part kits with incomplete frames or receivers, commonly called '80% receivers,' either directly from manufacturers of the kits or retailers, without background checks or recordkeeping." Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27720-01, 27726 (2021). "Some of these parts kits contain most or all of the components (finished or unfinished) necessary to complete a functional weapon within a short period of time." *Id.*

Given that an unfinished receiver requires additional work before it can be used as a functioning gun, it is not considered a "firearm" subject to the prescriptions and proscriptions of the Gun Control Act. *Id.* Because they do not contain anything that qualifies as a firearm, unfinished receiver kits can be sold without a background check and do not contain any serialized components that can be used to trace the weapon. H.R. Rep. No. 116-88, at 2 (2019). Guns made from these receivers and associated components are virtually untraceable if used in a crime, which

is why they are often referred to as "ghost guns." Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27720-01, 27722-23 (2021).

The U.S. House Committee on Homeland Security has concluded that "[g]host guns" present a "homeland security challenge." H.R. Rep. No. 116-88, at 2. "Ghost guns not only pose a challenge on the front end, enabling prohibited buyers to purchase deadly weapons with just a few clicks online, but also on the back end, hamstringing law enforcement's ability to investigate crimes committed with untraceable weapons." *Id.* The ATF likewise identified ghost guns as a threat to public safety. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722.

Law enforcement recovered nearly 24,000 ghost guns at crime scenes between 2016 and 2020. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722. To curtail the proliferation of ghost guns, the ATF has issued a notice of proposed rulemaking. If promulgated, the new rule will expand the definition of "firearm" to include unfinished receivers that are "designed to or may readily be converted to" fire projectiles.  Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726.  That means the sale of unfinished receiver kits will be subject to background checks and unfinished receivers will be serialized. Definition of "Frame or Receiver" and Identification

### 3.  HB 125 responds to the threat posed by unfinished receiver kits and ghost guns.

HB 125 addresses the threat posed by unserialized firearms and firearm components, as well as untraceable firearms.  First, HB 125 prohibits the "[p]ossession of an unfinished firearm frame or receiver with no serial number." 11 *Del. C.* § 1459A.  HB 125 also prohibits knowingly transporting, shipping, transferring, or selling an unfinished firearm frame or receiver unless: (1) the person is a federally licensed gun dealer or manufacturer; (2) the name of the manufacturer

and an individual serial number are conspicuously placed on the unfinished firearm frame or receiver; and (3) the person maintains records for the unfinished firearm frame or receiver. *Id.*

In addition, HB 125 prohibits the possession or manufacturing of a covert or undetectable firearm. 11 *Del. C.* § 1462. A "covert firearm" is defined as any firearm that is constructed in a shape or configuration such that it does not resemble a firearm. 11 *Del. C.* § 222. An "undetectable firearm" is defined as a firearm constructed entirely of non-metal substances or is not detectable by walkthrough metal detectors. *Id.*

HB 125 further prohibits the possession, manufacture, or distribution of an untraceable firearm. 11 *Del. C.* § 1463. Distribution of an untraceable firearm includes distribution, "by any means, including the internet, to a person who is not licensed as a manufacturer, instructions in the form of computer aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver or major component of a firearm" (the "Instructions Ban"). *Id.*

HB 125 is necessary to eliminate unserialized, untraceable, and undetectable firearms, thereby promoting and protecting the public health, safety, and general welfare of the citizens of the State of Delaware.

<u>**ARGUMENT**</u>

**I.   Standard of Review**

A preliminary injunction is an extraordinary remedy that should be granted in limited circumstances only if the movant carries his burden of proving that the circumstances clearly demand it. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). "The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000).

5

A request seeking a preliminary injunction "may be granted only when the moving party shows (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018). The movant carries a heavy burden and must establish entitlement to such injunctive relief by clear evidence. *Deluna v. Del. Harness Racing Comm'n*, 2019 WL 5067198, at *2 (D. Del. Oct. 9, 2019). "Failure to establish any of the elements, especially either of the first two, renders preliminary injunctive relief 'inappropriate.'" *Id.* (quoting *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC,* 793 F.3d 313, 319 (3d Cir. 2015)). Further, if a movant cannot establish the first two elements, a court need not consider the remainder of the elements. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a likelihood of success. *See, e.g.*, *Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981). A permanent injunction is ordinarily issued only after a full trial on the merits. *Schwartz v. Cohen*, 1996 WL 591206, at *3 (S.D.N.Y. Oct. 15, 1996).[2]

## II. HB 125 Is Constitutional and Plaintiffs Are Unlikely to Succeed on the Merits of Any of Their Claims

Plaintiffs assert a claim based on the Second Amendment and a claim alleging an unconstitutional taking under the Fifth and Fourteenth Amendments. Plaintiffs also assert a claim based on the First Amendment. Plaintiffs cannot demonstrate a likelihood of success on the claims

---

[2] Plaintiffs' request for permanent injunctive relief comes before any discovery, let alone a trial on the merits and should therefore be denied as they cannot, as a matter of law, meet their burden of showing actual success on the merits.

they assert, as required by the first factor. Because their irreparable harm and balance of the equities arguments are predicated on constitutional violations, those arguments also fail.

**A.  Plaintiffs are unlikely to succeed on the merits.**

**1.  HB 125 does not violate the Second Amendment.**

**i.  Plaintiffs' claims cannot survive the two-step analysis applied by the Third Circuit.**

The Second Amendment expressly states, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. "[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). "Like most rights, the right secured by the Second Amendment is not unlimited" and, historically speaking, "the right is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. The Second Amendment is fully applicable to the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 790-91 (2010).

As Plaintiffs acknowledge, the Third Circuit has established a two-step framework to evaluate Second Amendment claims. Op. Br. at 8-9 (quoting *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). First, the plaintiff must show that the law burdens conduct protected by the Second Amendment. *Marzzarella*, 614 F.3d at 89. If the law burdens protected Second Amendment conduct, then the second step requires determining the appropriate level of scrutiny and applying it to the challenged law. *Id.* Other Circuits have similarly adopted this framework. *See Young v. Hawaii*, 992 F.3d 765, 783-84 (9th Cir. 2021) (en banc). Applying this Second Amendment analysis shows that HB 125 is constitutional.

ii. **HB 125 does not burden conduct protect by the Second Amendment because it is a longstanding, presumptively valid regulation that does not interfere with Delawareans' right to defend "hearth and home."**

Plaintiffs' challenge fails at step one because HB 125 does not burden Second Amendment protected conduct. The law's serialization requirements are properly classified as "longstanding" gun-control measures that are "presumptively lawful" and thus do not burden the Second Amendment. *Heller*, 554 U.S. at 635. Laws tracking and restricting the possession of firearms date back to colonial times. *See NRA, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 200 (5th Cir. 2012). Moreover, "a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." *NRA*, 700 F.3d at 196-97. For example, *Heller's* exemplars of "longstanding" regulations – a ban on firearms possession by felons and the mentally ill – did not have precise founding-era analogs. *Id.* Serialization dates to the same time period as *Heller's* examples and should also be considered a longstanding and presumptively valid measure.

Plaintiffs' challenge fails at step one for an additional reason. HB 125 only regulates unserialized, untraceable, and undetectable firearms and unserialized, unfinished firearm components – the law therefore does not interfere with the core right to "defense of hearth and home" because the individual Plaintiffs' ability to use any serialized firearms to defend their homes remains unchanged by HB 125. *Id.* Moreover, none of the individual Plaintiffs alleged that if they dispose of their unserialized, untraceable firearms and unfinished frames and receivers, they will lack the firearms necessary to defend their homes. Because HB 125 does not interfere with the core right of the Second Amendment, Plaintiffs' challenge fails at step one of the analysis.

Plaintiffs argue that HB 125 burdens their right to "self-manufacture" firearms. D.I. 6 at 3. They fail to present evidence that self-assembling from unserialized components is necessary or superior for home defense. Nor do they cite caselaw finding that the Second Amendment extends

8

to assembling – as opposed to keeping and bearing – firearms. In addition, individual Plaintiffs are not stripped of an opportunity to self-manufacture and assemble firearms and constituent parts so long as they are serialized and traceable.

Accordingly, HB 125 does not burden constitutionally protected activity.

### iii.   In the alternative, HB 125 passes heightened scrutiny.

Under *Marzzarella*, this Court need not reach step two of the analysis because HB 125 does not burden constitutionally protected activity. *Marzzarella*, 614 F.3d at 89. If the Court does reach step two, however, it should apply intermediate scrutiny and uphold HB 125.

Intermediate scrutiny is the proper level of scrutiny for Second Amendment cases such as this. *See Silvester v. Harris*, 843 F.3d 816, 822-23 (9th Cir. 2016) (collecting cases), *cert. denied sub nom.*; *Silvester v. Becerra*, 138 S. Ct. 945 (2018). "[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, [courts] may apply intermediate scrutiny." *Jackson v. City and Cty. of San Francisco*, 746 F.3d 953, 960-61 (9th Cir. 2014). Strict scrutiny should only be applied in the rare case where a measure "implicates the core of the Second Amendment right and severely burdens that right." *Silvester*, 843 F.3d at 821.

As previously explained, HB 125 does not implicate the core Second Amendment right of home defense. HB 125 regulates unserialized, untraceable, and undetectable firearms – the law therefore does not interfere with the right to defense of hearth and home because the individual Plaintiffs' ability to use any serialized, traceable firearms to defend their homes remains unchanged. Nor does the law implicate any purported right to self-manufacture firearms. Plaintiffs are not stripped of an opportunity to self-manufacture and assemble firearms and constituent parts so long as they are serialized or fall within an exception.

Intermediate Scrutiny: A statute is constitutional under intermediate scrutiny as long as (1) the government's stated goal is "significant, substantial, or important" and (2) there is a "reasonable fit" between the statute and the government's goal. *Silvester*, 843 F.3d at 821-22. Intermediate scrutiny is not a strict test, and it does not require that the government select "the least restrictive means of furthering a given end." *Id.* at 827.

Ghost gun kits and unserialized, untraceable, and undetectable firearms are threats to public safety because they circumvent background checks and cannot be traced through law enforcement databases. "It is self-evident" that public safety is an important government interest. *Chovan*, 725 F.3d at 1139; *see also Jackson*, 746 F.3d at 965. Additionally, other courts have previously recognized that "preserving the ability of law enforcement to conduct serial number tracing – effectuated by limiting the availability of untraceable firearms – constitutes a substantial or important interest." *Pena v. Lindley*, 898 f.3d 969, 982 (9th Cir. 2018), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct. 108 (2020). Thus, HB 125 satisfies the first prong of intermediate scrutiny.

Because HB 125 only targets unserialized firearms that are not within a categorical exception, that bypass background checks by virtue of self-assembly, and that are untraceable without a serial number, it is a reasonable fit for achieving the State's objectives of decreasing the threat that unserialized firearms pose to public safety and preserving law enforcement's ability to trace firearms. *See Marzzarella*, 614 F.3d 85, 99 (3d Cir. 2010) (holding that "[r]egulating the possession of un[serialized] firearms" fits "closely with the interest in ensuring the traceability of weapons"). HB 125 "reaches only conduct creating a substantial risk of rendering a firearm untraceable." *Id.* at 98. It does not prevent any Delaware citizen who is legally permitted to obtain a firearm from purchasing a serialized firearm for home defense.

10

Strict Scrutiny: Even under strict scrutiny, HB 125 is constitutional. A firearms law passes strict scrutiny if it is "narrowly tailored to serve a compelling state interest." *Id.* at 99. Crime prevention and investigating gun violence are compelling interests. *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 749 (1987)).

HB 125 was narrowly tailored to serve the State's compelling interest because it leaves intact Plaintiffs' ability to use any and all serialized firearms to defend their homes while concurrently making it harder for prohibited persons to obtain firearms, and by proscribing possession of a firearm that would be untraceable if used in a crime.

### 2. Plaintiffs' takings claim cannot support injunctive relief and is unlikely to succeed.

#### i. Injunctive relief is not available for takings claims.

In general, "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to a taking." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127-28 (1985) (citation omitted). "[T]he Fifth Amendment does not require that just compensation be paid in advance of or even contemporaneously with the taking." *Preseault v. I.C.C.*, 494 U.S. 1, 11 (1990).

Accordingly, injunctive relief is inappropriate.

#### ii. No compensation is due for restrictions on personal property.

Plaintiffs' takings claim also fails on the merits because neither a physical, nor regulatory taking has occurred.

Physical Taking: HB 125 does not effect a physical taking. The Takings Clause expressly prohibits the taking of "private property . . . *for public use, without just compensation*." U.S. Const. Amend. V (emphasis added). A physical taking of property occurs only "[w]hen the government

11

physically takes possession of an interest in the property for some public purpose." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). HB 125 is a prohibition against unserialized and untraceable firearms and unserialized, unfinished receivers and firearms frames. It does not transfer title of the unfinished receivers or unserialized firearms to the government, nor is there any indication that the State of Delaware intends to put the devices to its own use. Federal courts have already rejected the takings argument made by plaintiffs in other cases challenging similar regulations on unserialized firearms as well as in connection with bump-stock bans. *Fahr v. City of San Diego*, 2021 WL 4895974, at \*12 (S.D. Cal. Oct. 20, 2021); *Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 366 (4th Cir. 2020); *McCutchen v. United States*, 145 Fed. Cl. 42, 54 (2019), *aff'd* 14 F.4th 1355 (Fed. Cir. 2021). Because Plaintiffs' property is not being commandeered for public use, there is no physical taking.

Regulatory Taking: A government does not need to compensate owners when it prohibits a type of personal property through a valid law. *Md. Shall Issue*, *Inc.*, 963 F.3d at 366-67. The police power exception of the Takings Clause provides that "[a] prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking." *Mugler v. Kansas*, 123 U.S. 623, 668 (1887). "If [a law] is otherwise a valid exercise of the [government's] police powers, the fact that it deprives the property of its most beneficial uses does not render it unconstitutional." *Goldblatt v. Hempstead*, 369 U.S. 590, 592 (1962) (citations omitted). HB 125 seeks to regulate ghost guns to eliminate unserialized, untraceable firearms, thereby promoting and protecting the public health, safety, and general welfare of the citizens of the State of Delaware.

Several other courts analyzing firearms restrictions in the context of the police power exception to the Takings Clause have reached similar conclusions. *See Fahr*, 2021 WL 4895974,

at *13 (holding that prohibition on unserialized firearms and firearms components did not constitute a physical or regulatory taking); *Adkins v. United States*, 82 Fed. Cl. 619, 623-24 (2008) (holding that prohibition on the sale of machine guns to anyone other than law enforcement agencies did not constitute a physical or regulatory taking); *Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979) (holding that a statue requiring machine guns denied registration be sold, surrendered, or disposed, was a valid exercise of police power thereby not a taking); *Rupp v. Becerra*, Case No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138452, *8-*9 (C.D. Cal. May 9, 2018) (dismissing a takings claim on the grounds that a California prohibition on certain weapons represented an exercise of police power and not a taking).

HB 125 is a valid exercise of the State's police power and, accordingly, Plaintiffs are unlikely to succeed on their Takings Claim.

### 3.   HB 125 does not violate the First Amendment.

#### i. The Instructions Ban is not the publishing of an item of expressive speech.

Although "speech" under the First Amendment is not limited to written or spoken words, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995), the Supreme Court has made clear that the First Amendment does not encompass all types of conduct. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989) ("[W]e have rejected the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" (quotations omitted)). At a minimum, conduct must be sufficiently expressive and communicative to other persons to qualify for protection under the First Amendment. *See Hurley*, 515 U.S. at 569.

The Instructions Ban does not prohibit the mere publication or distribution of ideas. The files at issue are essentially blueprints that can be used with a three-dimensional printer to

automatically generate firearms and firearms components.  While Plaintiffs rely on *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001), a Second Circuit decision holding that computer code and computer programs can qualify for First Amendment protection, *Corley* expressly distinguished the facts of that case from *CFTC v. Cartuli*, 228 F.3d 94, 111 (2d Cir. 2000), which had previously held that computer instructions that "induce action without the intercession of the mind or the will of the recipient" are not constitutionally protected speech. Similarly, the files subject to the Instructions Ban are not constitutionally protected. Op. Br. at 13.

### ii. The Instructions Ban is a valid, content-neutral regulation of Plaintiffs' conduct that does not infringe First Amendment Rights.

Plaintiffs contend that the Instructions Ban is a content-based speech restriction subject to strict scrutiny, but this argument is in error. "[R]egulations that are unrelated to the content of speech" receive less demanding First Amendment scrutiny because they ordinarily "pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). Where the government's purpose in imposing a regulation is "justified without reference to the content of the regulated speech," such regulation is content-neutral. *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984).  It is the State's purpose, not other factors, that is the "controlling consideration" in this determination. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

HB 125 regulates the conduct of distributing untraceable firearms for the purpose of advancing public safety. The computer files subject to the Instructions Ban function to automatically produce such weapons or their components. Whatever expressive value may exist in the theory of these files, they function to create a firearm. Thus, the State may restrict their distribution on the basis of their functionality to create untraceable firearms. HB 125 is not the

14

product of government hostility toward the spread of ideas about 3D printing of firearms, but rather against the means to easily do so.

Accordingly, HB 125 is not directed at the content of expression. For this reason, strict scrutiny does not apply to a First Amendment analysis of the Instructions ban.

Under intermediate scrutiny, the State's regulation of "'speech' and 'non-speech' elements [] united in a course of conduct" must be sustained if it is "within the constitutional power of the government, it furthers an important or substantial government interest, the government interest is unrelated to the suppression of free expression, and the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Kleinman v. City of San Marcos*, 597 F.3d 323, 328 (5th Cir. 2010) (quoting *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968)). As set forth above, these standards are met by HB 125.

Accordingly, even if subjected to a heightened standard of review under the First Amendment, the Instructions Ban is constitutional.

### iii. The Instructions Ban is not a facially unconstitutional prior restraint.

Plaintiffs also have no likelihood of success on the merits of their theory that the Instructions Ban constitutes an unlawful prior restraint on speech. Op. Br. at 17. "The doctrine of prior restraint originated in the common law of England, where prior restraints of the press were not permitted, but punishment after publication was." *Alexander v. U.S.*, 509 U.S. 544, 553 (1993). The classic administrative prior restraint is what is often described as a licensing scheme for speech, where the plaintiff's right to speak is conditioned on a prior approval from the government. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988). Such a prior restraint is contrasted with prohibitions on certain speech enforced by punishment *after* the fact, which is not a prior restraint. *See id.* at 764. The Instructions Ban does not represent a licensing scheme or

15

a prior restraint. Nor is HB 125 directed at expressive speech, but instead is directed to addressing the act of distributing untraceable firearms and related technical data, a category of conduct that is not characteristically expressive.

### iv.   The Instructions Ban is not unconstitutionally overbroad.

Plaintiffs also raise an "overbreadth" challenge to the Instructions Ban.  Op. Br. at 15-16. Overbreadth is a exception to the prudential standing requirement that a plaintiff may only "assert his own legal rights and interests." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). In circumstances where a regulation is alleged to be so broad that it is incapable of any permissible application, courts may allow a party to bring a facial challenge to a statute because it threatens others not before the court. *See N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1987); *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). Overbreadth is "strong medicine" to be used "sparingly and only as a last resort," *Broadrick*, 413 U.S. at 613, and plaintiffs must show that the alleged "overbreadth of a statute [is] not only [] real, but substantial . . . judged in relation to the statute's plainly legitimate sweep." *Id.* at 615.

Here, Plaintiffs' overbreadth claim cannot meet these standards. First, "[c]ourts need not entertain an overbreadth challenge 'where the parties challenging the statute are those who desire to engage in protected speech that the overbroad statute purports to punish.'" *U.S. v. Hicks*, 980 F.2d 963, 969 (5th Cir. 1992) (quoting *Brockett v. Spokane Arcades*, 472 U.S. 491, 504 (1985)). Thus, no overbreadth challenge is "appropriate if the first amendment rights asserted" on behalf of third parties are "essentially coterminous" with those asserted by the plaintiffs themselves. *Id.* Here, as the Supreme Court observed in *Brockett*, Plaintiffs do not allege any "want of a proper party to challenge the [statute], no concern that the attack on the [statute] will be unduly delayed or protected speech discouraged." 472 U.S. at 504.

16

Second, even if the merits of Plaintiffs' overbreadth claim are reached, the Instructions Ban has a substantially permissible purpose. It serves the vital purpose of ensuring public safety. Accordingly, there is no substantial overbreadth here, and Plaintiffs are not likely to succeed on this claim. *See U.S. v. Chi Mak*, 683 F.3d 1126, 1136 (9th Cir. 2012) (rejecting overbreadth challenge).

**B.  Plaintiffs fail to demonstrate irreparable harm.**

Plaintiffs' claims of irreparable harm are predicated entirely on the alleged violations of their constitutional rights.  D.I. 6 at 17-18. As discussed above, the HB 125 does not burden Second Amendment rights. Nor does it violate Plaintiffs' First Amendment rights. Additionally, HB 125 does not effect a taking.  Even if it did effect a taking, however, Plaintiffs will not suffer irreparable harm because monetary relief is available.

Accordingly, Plaintiffs have not shown they are likely to suffer irreparable harm.

**C. The public's interest in preventing and prosecuting gun crime outweighs Plaintiffs' asserted hardship.**

Unserialized, unfinished receivers may be purchased without a background check and easily assembled into untraceable ghost guns. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27723, 27726. A firearm manufactured using a three-dimensional printer can likewise be obtained without a background check and cannot be traced. HB 125 attempts to close a regulatory loophole that has allowed for the proliferation of unserialized, untraceable firearms. This public interest outweighs any hardship suffered by Plaintiffs.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for a Preliminary and Permanent Injunction should be denied.

<div style="margin-left:40%">

STATE OF DELAWARE DEPARTMENT
OF JUSTICE

*/s/ Kenneth L. Wan* _____
Patricia A. Davis (No. 3857)
Kenneth L. Wan (No. 5667)
Deputy Attorney General
Carvel Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Email: PatriciaA.Davis@delaware.gov
Kenneth.wan@delaware.gov

*Counsel for Defendants*

</div>

November 16, 2021