# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN RIGBY, ALAN KNIGHT, and FIREARMS POLICY COALITION, INC., <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br> JOHN CARNEY, Governor of Delaware; KATHY JENNINGS, Attorney General of Delaware, <br>　　　　Defendants. | C.A. No. 1:21-cv-01523-MN |

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION**

　　　　　　　　　　　　　　　　　　　　　　　　Bradley P. Lehman (No. 5921)
　　　　　　　　　　　　　　　　　　　　　　　　GELLERT SCALI BUSENKELL &
　　　　　　　　　　　　　　　　　　　　　　　　BROWN LLC
　　　　　　　　　　　　　　　　　　　　　　　　1201 N. Orange Street, Suite 300
　　　　　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　　　　　P: (302) 425-5800
　　　　　　　　　　　　　　　　　　　　　　　　E: blehman@gsbblaw.com

*Of Counsel*
Edward Paltzik, Esq.
JOSHPE MOONEY PALTZIK LLP
1407 Broadway, Suite 4002
New York, NY 10018
P: (212) 344-8211
E: epaltzik@jmpllp.com
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .......................................................................................................................... 1

    I.    Plaintiffs are Likely to Succeed on the Merits of their Second Amendment Claims .......... 1

        A.   Defendants' Answering Brief Utterly Fails to Address the Fact that NFOs and SMFs are Protected Components and Arms in Common Use ................................................ 1

        B.   Alternatively, the NFO Ban and the SMF Ban Fail Any Level of .................................. 2

            1.   The NFO Ban and the SMF Ban Burden Plaintiffs' Second Amendment Right ......... 2

            2.   The NFO Ban and SMF Ban Are Neither Reasonably Fitted Nor Narrowly Tailored  6

    II.   Plaintiffs are Likely to Succeed on the Merits of their Fifth and Fourteenth Amendment Claims ....................................................................................................................... 7

    III.  Plaintiffs are Likely to Succeed on the Merits of their First Amendment Claims.............. 8

        A.   The Instructions Ban is a Content-Based Speech Restriction ......................................... 8

        B.   The Instructions Ban is Overbroad ................................................................................. 9

        C.   The Instructions Ban is a Prior Restraint ..................................................................... 10

    IV.  Plaintiffs Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction ....... 10

    V.   The Balance of the Equities Favors the Grant of Preliminary Injunctive Relief ............. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bd. of Trs .v. Fox*,
    492 U.S. 469 (1989)..................................................................................................................7

*Boos v. Barry*,
    485 U.S. 312 (1988)..................................................................................................................9

*Broadrick v. Oklahoma*,
    413 U.S. 601 ……………………………………………………………………………….10

*Bruni v. City of Pittsburgh*,
    824 F.3d 353 (3d Cir. 2016).......................................................................................................7

*Buchanan v. Warley*,
    245 U.S. 60 (1917)....................................................................................................................8

*Caetano v. Massachusetts*,
    136 S. Ct. 1027 (2016) (Alito, J., concurring) ..........................................................................1

*Defense Distributed, et al. v. Grewal*,
    No. 3:19-cv-04753-AET-TJB (D.N.J.) .....................................................................................9

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)......................................................................................................1, 2, 3, 5

*Drummond v. Robinson Twp.*,
    9 F.4th 217 (3d Cir. 2021) .........................................................................................................7

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*,
    710 F.3d 99 (3d Cir. 2013)......................................................................................................10

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982)..................................................................................................................8

*Lucas v. South Carolina Coastal Council*,
    505 U.S. 1003 (1992)................................................................................................................8

*McCullen v. Coakley*,
    573 U.S. 464 (2014)..................................................................................................................7

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)..................................................................................................................3

*Miller v. Bonta*,
    2021 U.S. Dist. LEXIS 105640 (S.D. Cal. June 4, 2021) ......................................................5

*Miller v. Johnson*,
    515 U.S. 900 (1995) ............................................................................................................7

*Mugler v. Kansas*,
    123 U.S. 623 (1887) ............................................................................................................8

*N.Y. State Club Ass'n v. City of New York*,
    487 U.S. 1 (1987) ..........................................................................................................9, 10

*United States v. Miller*,
    307 U.S. 174 (1939) ............................................................................................................1

*United States v. Stevens*,
    559 U.S. 460 (2010) ..........................................................................................................10

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ............................................................................................................9

*Wrenn v. District of Columbia*,
    864 F.3d 650 (D.C. Cir. 2017) ............................................................................................2

## United States Code

17 U.S.C. § 101, 102, and 113 ......................................................................................................9

18 U.S.C. § 922(p)(1)(A) ..............................................................................................................4

18 U.S.C. § 922(p)(1)(B) ..............................................................................................................4

18 U.S.C. § 922(r) .........................................................................................................................4

## State Bills & Statutes

Cal. Penal Code § 29180(b) ..........................................................................................................4

Cal. Penal Code § 29180(b)(1) .....................................................................................................5

Cal. Penal Code § 29182(a)(1) ......................................................................................................6

Cal. Penal Code § 29182(b)(1) .....................................................................................................6

Conn. Pub. Act No. 19-6 ...............................................................................................................4

Conn. Pub. Act No. 19-6(b) ..........................................................................................................6

D.C. Code § 7-2502.02(a)(8) ........................................................................................................4

2019 Hi. HB 2744 …………………………………………………………………………….. 4

2021 NV. AB 286, amending Title 15, Chapter 202 ……………………………………………. 4

N.J. Stat. § 2C:39-9...............................................................................................................................4

N.Y. Legislation S.13A/A.2666A …………………………………………………………..4

N.Y. Legislation S.14A/A.613A..……………………………………………………………... 4

2020 R.I. HB 7102 ……………………………………………………………….......................4

### Other Authorities

3 ARCHIVES OF MARYLAND: PROCEEDINGS OF THE COUNCIL OF MARYLAND 1636-
1667 (William Hand Brown ed., 1883) ......................................................................................3

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, *What is ATF doing in regards to people making their own firearms*, (May 14, 2015), https://www.atf.gov/firearms/qa/what-atf-doing-regards-people-making-their-own firearms ………...........................................................3

JAMES B. WHISKER, THE GUNSMITH'S TRADE 5 (1992)…………………………………………..2

JOSEPH G.S. GREENLEE, *The American Tradition of Self-Made Arms* (Nov. 10, 2021 ) ........................................................................................................................................3

PENNSYLVANIA ARCHIVES, second ser. 299 (William H. Egle ed., 1887)......................................3

THE PUBLIC RECORDS OF THE COLONY OF CONNECTICUT, FROM 1665 TO 1678; WITH THE JOURNAL OF THE COUNCIL OF WAR, 1675 TO 1678 (J. Hammond Trumbull ed., 1852) ........................................................................................................................3

Plaintiffs John Rigby ("Rigby"), Alan Knight ("Knight"), and Firearms Policy Coalition, Inc. ("FPC"), respectfully submit this Reply Brief in Further Support of their Motion for a Preliminary and Permanent Injunction.[1] For the reasons set forth herein and in Plaintiffs' Opening Brief (cited herein as "Pl. Op. Br." – D.I. 6), HB 125 is facially unconstitutional and, in the absence of injunctive relief, will cause irreparable harm to Plaintiffs.

## ARGUMENT

### I. Plaintiffs are Likely to Succeed on the Merits of their Second Amendment Claims

#### A. Defendants' Answering Brief Utterly Fails to Address the Fact that NFOs and SMFs are Protected Components and Arms in Common Use

As demonstrated in Plaintiffs' Opening Brief and in the accompanying Declarations of Rigby (D.I. 7) and Knight (D.I. 8), and unrebutted by Defendants in their Answering Brief, self-manufactured firearms ("SMFs") and their predecessor materials, non-firearm objects ("NFOs"), are typically possessed and commonly owned by law-abiding citizens for lawful purposes such as self-defense, are therefore not unusual, and are thus protected by the Second Amendment. Pl. Op. Br. at 5-8; *see also District of Columbia v. Heller*, 554 U.S. 570, 625 (2008) (the Second Amendment right necessarily encompasses firearms and firearms components "typically possessed by law-abiding citizens for lawful purposes . . . ."); *Caetano v. Massachusetts*, 136 S. Ct. 1027, 1031 (2016) (Alito, J., concurring) ("A weapon may not be banned unless it is *both* dangerous *and* unusual.") (emphasis in original). In other words, "the sorts of weapons protected [a]re those 'in common use at the time.'" *Heller*, 554 U.S. at 627 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). Ownership of SMFs, and firearms predecessor materials used by individuals to make SMFs, are not new—law-abiding citizens have commonly owned SMFs and

---

[1] Defendants submitted an Answering Brief dated November 16, 2021 (cited herein as "Def. Br." – D.I. 11).

1

predecessor materials for lawful purposes, including self-defense, *throughout* American history. Indeed, as historian James Whisker wrote:

> [g]un crafting was one of several ways Americans expressed their unrestrained democratic impulses at the time of the adoption of the Bill of Rights . . . . The climate of opinion was clearly such that it would have supported a broad distribution of this right to the people over and against government. Anything else would have been inconceivable.

JAMES B. WHISKER, THE GUNSMITH'S TRADE 5, 92 (1992).

In their Answering Brief, Defendants do not address this dispositive point, thereby conceding that NFOs and SMFs are commonly owned. Accordingly, for this reason alone—that NFOs and SMFs are commonly owned and not unusual—and because self-manufacturing of firearms has been legal and commonplace since the time of Founding, the NFO Ban and the SMF Ban are categorically unconstitutional and should be enjoined as such, without resort to tiered scrutiny analysis. *See Wrenn v. District of Columbia*, 864 F.3d 650, 665 (D.C. Cir. 2017) (citing *Heller*, 554 U.S. at 629) ("It's appropriate to strike down such 'total bans[s]' without bothering to apply tiers of scrutiny because no such analysis could ever sanction obliterations of an enumerated constitutional right.").

### B. Alternatively, the NFO Ban and the SMF Ban Fail Any Level of Tiered Scrutiny Analysis

#### 1. The NFO Ban and the SMF Ban Burden Plaintiffs' Second Amendment Right

Defendants argue that HB 125 "does not burden Second Amendment protected conduct" because "[s]erialization dates to the same time period as *Heller's* examples and should also be considered a longstanding and presumptively valid measure." Def. Br. at 8. The *Heller* Court deemed certain firearm regulations longstanding and thus presumptively lawful, such as "prohibitions on the possession of firearms by felons and the mentally ill, or law forbidding the carrying of firearms in sensitive places . . . or laws imposing conditions and qualification on the

2

*commercial* sale of arms." *Heller*, 554 U.S at 626-627 (emphasis added). Although this list was not exhaustive, the Court indicated that the key question in determining whether a regulation is presumptively lawful is that it must be, at a minimum, "longstanding"—which the Court reiterated in 2010. *See McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010).

However, as observed by author Joseph Greenlee, Defendants are simply incorrect in their assertion that regulations requiring serialization of *self-built* firearms are longstanding.

> In fact, there were no restrictions on the manufacture of arms for personal use in America during the seventeenth, eighteenth, or nineteenth centuries. All such restrictions have been enacted in the last decade.

JOSEPH G.S. GREENLEE, *The American Tradition of Self-Made Arms*, 37 (Nov. 10, 2021 ), available at SSRN: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3960566.

A few colonial laws[2] and one during the Revolutionary War[3] required gunsmiths to repair militia arms prior to resuming work for private customers. But even these laws did not prohibit the self-manufacturing of firearms or impede citizens from exercising their freedom to defend themselves with arms of their choice.

Today, it remains legal to self-manufacture firearms under federal law. BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, *What is ATF doing in regards to people making their own firearms*, (May 14, 2015), https://www.atf.gov/firearms/qa/what-atf-doing-regards-people-making-their-own-firearms ("An individual may generally make a firearm for personal

---

[2] Maryland in 1661 required "[t]hat all Smiths which have tooles be forced to fix armes for the Soldiers." 3 ARCHIVES OF MARYLAND: PROCEEDINGS OF THE COUNCIL OF MARYLAND 1636-1667, at 531 (William Hand Brown ed., 1883). Connecticut in 1665 allowed authorities, "upon just complaint of any souldier or inhabitant in this Colony, to . . . order and require [Gunsmiths] . . . forthwith to doe what is requisite to be done for fitting the Armes sent to them." THE PUBLIC RECORDS OF THE COLONY OF CONNECTICUT, FROM 1665 TO 1678; WITH THE JOURNAL OF THE COUNCIL OF WAR, 1675 TO 1678, at 19 (J. Hammond Trumbull ed., 1852).

[3] PENNSYLVANIA ARCHIVES, second ser. 299 (William H. Egle ed., 1887) ("Resolved, That in the case any of the gun-smiths, in the county of Lancaster . . . shall refuse to go to work and make their proportion of the firelocks and bayonets required of this county . . . the tools of the said gun-smiths so refusing shall be taken from them, and moreover the said gun-smiths shall not be permitted to carry on their trades until they shall engage to go to work as aforesaid . . . .").

use."). To the extent federal laws apply to SMFs, such laws do not specifically target SMFs, but rather are related to firearms generally. *See e.g.*, 18 U.S.C. § 922(p)(1)(A) (forbidding, *inter alia*, manufacture of any firearm if "after removal of grips, stocks, and magazines, [it] is not detectable as the Security Exemplar, by walk-through metal detectors . . . ."); 18 U.S.C. § 922(p)(1)(B) (forbidding, *inter alia*, manufacture of firearms which contain "any major component . . . when subjected to inspection by the type of X-ray machines commonly used at airports, does not generate an image that accurately depicts the shape of the component."); 18 U.S.C. § 922(r) (forbidding assembly of semiautomatic rifles or shotguns prohibited from importation using imported parts).

Although, in addition to Delaware, a tiny minority of states [California (2016),[4] Connecticut (2019),[5] Hawaii (2020),[6] New Jersey (2018),[7] New York (2021),[8] Nevada (2021),[9] Rhode Island (2020),[10] and the District of Columbia (2020)[11]] have enacted anomalous laws regulating self-manufacturing of firearms, none are longstanding. Moreover, California and Connecticut do not outright prohibit SMFs—rather, these laws require individuals to obtain serial numbers for their SMFs from state authorities. Elsewhere in the United States, and at the federal level, there are no specific laws or regulations targeting SMFs built by law-abiding citizens for lawful purposes, including but not limited to self-defense. Even if, *arguendo*, serialization were

---

[4] Cal. Penal Code § 29180(b).

[5] Conn. Pub. Act No. 19-6.

[6] 2019 Hi. HB 2744.

[7] N.J. Stat. § 2C:39-9.

[8] N.Y. Legislation S.13A/A.2666A; S.14A/A.613A

[9] 2021 NV. AB 286, amending Title 15, Chapter 202.

[10] 2020 R.I. HB 7102.

[11] D.C. Code § 7-2502.02(a)(8).

4

longstanding (and it is not), HB 125 doesn't facilitate serialization of SMFs and NFOs, and therefore effectively bans them. There is absolutely no longstanding precedent for that.

Defendants offer a second (and equally unavailing) argument as to why the NFO Ban and the SMF Ban purportedly do not burden conduct protected by the Second Amendment—they assert that since HB 125 only regulates unserialized firearms and components, individuals can still acquire and use serialized firearms and thus exercise their right to keep and bear arms. Def. Br. at 8-9. Defendants further claim that there is no "evidence that self-assembling from unserialized components is necessary or superior for home defense." *Id*. at 8. These arguments badly distort the Supreme Court's holding in *Heller*. Under *Heller,* the legality of firearms is not determined by their necessity or their superiority to other firearms. The only relevant question is whether the firearms are commonly owned. *Miller v. Bonta*, 2021 U.S. Dist. LEXIS 105640, at *16 (S.D. Cal. June 4, 2021) ("*Heller* asks whether a law bans a firearm that is commonly owned by law-abiding citizens for lawful purposes. It is a hardware test."). Indeed, the *Heller* test is a hardware test— not a necessity test or a superiority test. Plaintiffs are not required to show that NFOs or SMFS are necessary or superior to serialized self-defense options. This is an imaginary (and unconstitutional) burden fabricated from whole cloth by Defendants.

Finally, Defendants offer the specious argument that under HB 125, "individual Plaintiffs are not stripped of an opportunity to self-manufacture and assemble firearms and constituent parts so long as they are serialized and traceable." Def. Br. at 9. This claim is nonsensical because HB 125 does not contain any provision for law-abiding citizens to obtain a serial number for their SMFs from the State of Delaware. This contrasts sharply with California, where a person can (and is required to) "[a]pply to the Department of Justice for a unique serial number or other mark of identification" prior to constructing a firearm. Cal. Penal Code § 29180(b)(1). Before the

Department issues the serial number to an applicant, it conducts a background check. Cal. Penal Code § 29182(b)(1). If the applicant is not disqualified, the Department "shall grant" such an application "in the form of serial numbers to . . . persons who wish to manufacture or assemble firearms pursuant . . . ." Cal. Penal Code § 29182(a)(1).

Similarly, in Connecticut,

> [n]ot later than thirty days after a person completes the manufacture of a firearm . . . such person shall notify the [Department of Emergency Services and Public Protection] of such manufacture and provide any identifying information . . . . Upon receiving a properly submitted request for a unique serial number or other mark of identification from a person who completes manufacture of a firearm, the department shall determine if such person is prohibited from purchasing a firearm and if not, shall issue to such person a unique serial number or other mark of identification immediately and in no instance more than three business days after the department receives such request.

Conn. Pub. Act No. 19-6(b). The NFO Ban and the SMF Ban plainly burden Plaintiffs' Second Amendment right to keep and bear arms, thus necessitating examination of Defendants' heightened scrutiny arguments.

**2. The NFO Ban and SMF Ban Are Neither Reasonably Fitted Nor Narrowly Tailored**

Defendants argue that even if HB 125 does burden Plaintiffs' Second Amendment right to keep and bear arms, that the law survives heightened scrutiny, whether intermediate or strict. Def. Br. at 9-11. Defendants claim an important government interest in banning SMFs (and NFOs used to assemble SMFs) on the basis that SMFs are purportedly "threats to public safety because they circumvent background checks and cannot be traced through law enforcement databases." Def. Br. at 10. They cite to the ATF's notice of proposed rulemaking that would expand the definition of "firearm" in order to subject unfinished receiver kits to background checks and unfinished receivers to serialization. *Id*. at 4 (citing Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722). Defendants conclude, therefore, that under intermediate

6

scrutiny, HB 125 "is a reasonable fit for achieving the State's objectives" of protecting public safety, and that under strict scrutiny, HB 125 is narrowly tailored. Def. Br. at 10-11.  However, in so arguing, Defendants inadvertently augment one of the main points made in Plaintiffs' Opening Brief—HB 125 is not narrowly tailored, and in fact, Delaware could have addressed the purported threat posed by SMFs and NFOs by any number of far less restrictive means short of outright bans. However, unlike California and Connecticut, Delaware provides no options other than destruction or dispossession of the forbidden items, or prosecution for possession of same.

      The lack of meaningful tailoring in this broad prohibition renders the NFO Ban and the SMF Ban unconstitutional even under intermediate scrutiny, because that test requires at least "a means narrowly tailored to achieve the desired objective." *Bd. of Trs .v. Fox*, 492 U.S. 469, 480 (1989). Here, the NFO Ban and the SMF Ban show no evidence of *any* tailoring, which alone is fatal under intermediate scrutiny. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 371 (3d Cir. 2016). Delaware must show, at the least, "that it considered different methods that other jurisdictions have found effective," such as California's or Connecticut's approach. *McCullen v. Coakley*, 573 U.S. 464, 494 (2014); *see also Drummond v. Robinson Twp*., 9 F.4th 217 (3d Cir. 2021).

      With respect to strict scrutiny, the analysis is similar and the outcome the same.  There must be an effort to tailor the law in question to minimize imposing unnecessary or overly broad restraints.  *Miller v. Johnson*, 515 U.S. 900, 920 (1995).  Since Delaware simply bans all conduct and possession *in toto*, the NFO Ban and SMF Ban also fail under strict scrutiny.

## II.    Plaintiffs are Likely to Succeed on the Merits of their Fifth and Fourteenth Amendment Claims

      Defendants argue, *inter alia*, that they need not compensate Plaintiffs for the taking of their NFOs and SMFs because HB 125 is a "valid exercise of the State's police power . . . ." Def. Br. at 12-13.  This argument stretches the police power well past its limits.  "[T]he police power, broad

7

as it is, cannot justify the passage of a law . . . which runs counter to the limitations of the federal Constitution." *Buchanan v. Warley*, 245 U.S. 60, 74 (1917).  There is no exception when the regulatory object is property.  *Id.*  The Supreme Court has repeatedly held that a state has a constitutional duty to compensate owners for the property it takes, even when it uses its police power to take the property.  *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425 (1982).

To be sure, public safety provisions like nuisance laws may be part of "the understandings of our citizens regarding the content of, and the State's power over, the 'bundle of rights' that they acquire when they obtain title to property," *Lucas*, 505 U.S. at 1027, and in certain circumstances this may mean that banning certain types of property will not implicate the Takings Clause.  But this is only when the provisions in question *predate acquisition*: "Any limitation so severe cannot be newly legislated or decreed (without compensation), but must inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership." *Id.* at 1029; *cf. Mugler v. Kansas*, 123 U.S. 623, 672 (1887).  No citizen, therefore, may be dispossessed of property that is entirely lawful under legal principles existing at the time of acquisition.

### III. Plaintiffs are Likely to Succeed on the Merits of their First Amendment Claims
#### A. The Instructions Ban is a Content-Based Speech Restriction

Defendants argue that the Instructions Ban is content-neutral because "[t]he files at issue are essentially blueprints that can be used with a three-dimensional printer to automatically generate firearms and firearms components." Def. Br. at 13.  They continue: "[t]he computer files subject to the Instructions Ban function to automatically produce such weapons or their counterparts." *Id*.  Defendants conclude, therefore, that "[w]hatever expressive value may exist in the theory of these files, they function to create a firearm." *Id*.

8

This argument strains credulity.  Defendants appear to suggest that the computer files themselves are simply "blueprints" that automatically generate firearms and firearms components, and therefore that they have no *bona fide* expressive value simply because they help individuals assemble a firearm.  Under this logic, the government could ban *any* computer files relating to *any* subject, simply because the files in question serve as an aid to create an end product.  In addition, even if the Court were to accept this deeply troubling argument, the process of assembling or self-manufacturing a firearm involves various levels of individual choice and customization, and application of individual skill, and is thus expressive.  *See generally* accompanying Reply Declaration of Rigby.[12]  Indeed, individuals who assemble or self-manufacture firearms do not merely follow blueprints in automatic fashion; rather, they use computer files as a guide for designing and implementing their own expressive ideas to the 3D-printed base products.[13]  *Id.*  Thus, despite Defendants' tortured logic, the fact of the matter is that the Instructions Ban *does* punish the *idea* intended to be communicated or conveyed—information relating to creation of a firearm, as Defendants concede, and is thus content-based.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Boos v. Barry*, 485 U.S. 312, 320-21 (1988).

### B.  The Instructions Ban is Overbroad

As Defendants concede, where the law in question is "so broad that it is incapable of any permissible application, courts may allow a party to bring a facial challenge to a statute because it threatens others not before the court."  Def. Br. at 16 (citing *N.Y. State Club Ass'n v. City of New*

---

[12] *See also* the Declaration of John Walker, an industry expert in computer-assisted design, attached as Exhibit 1 to the Declaration of Bradley P. Lehman being submitted contemporaneously herewith.  Mr. Walker's declaration was originally submitted in support of the plaintiffs' motion for a preliminary injunction in *Defense Distributed, et al. v. Grewal*, No. 3:19-cv-04753-AET-TJB (D.N.J.).

[13] Moreover, even if individuals were merely following "blueprints," it would not lessen the expressive content of the blueprints, which are entitled to copyright protection as "pictorial, graphic, and sculptural works" under the United States Copyright Act of 1976.  *See, e.g.*, 17 U.S.C. § 101, 102, and 113.

9

*York*, 487 U.S. 1, 14 (1987); *Broadrick v. Oklahoma*, 413 U.S. 601, 613).  That is precisely the case here.  Defendants fail to explain how the Instructions Ban is anything other than a broadside attack against the free speech rights of *all* Delaware citizens who would engage in the forbidden expression (distribution of firearms blueprints) but for the Instructions Ban, including Plaintiff Rigby.  Where an overbroad law—in this case, the Instructions Ban—"may deter constitutionally protected speech," the fact that it violates the rights of individuals other than one of the plaintiffs properly gives rise to an overbreadth challenge.  *See United States v. Stevens*, 559 U.S. 460, 484 (2010).

### C. The Instructions Ban is a Prior Restraint

Defendants attempt to portray the Instructions Ban solely as a punishment *after* the fact and thus not a prior restraint.  Def. Br. at 15.  Even if the punishment (criminal prosecution) occurs after the prohibited act (distribution of firearms blueprints), the Instructions Ban is still a prior restraint because it requires—in advance, and upon pain of criminal sanction—that Rigby and similarly situated Delaware citizens *never* distribute digital firearms information.

### IV. Plaintiffs Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction

Defendants have offered nothing concrete in their Answering Brief to meaningfully refute the fact that Plaintiffs face an ongoing deprivation of multiple constitutional rights, which constitutes irreparable harm.  *See, e.g., K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013).

### V. The Balance of the Equities Favors the Grant of Preliminary Injunctive Relief

It is well-settled that "the enforcement of an unconstitutional law vindicates no public interest."  *K.A. ex rel. Ayers*, 710 F.3d at 114.  Delaware's heavy-handed Bans are not needed to ensure public safety, particularly where less restrictive alternatives were and are available.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 8, 2021 | GELLERT SCALI BUSENKELL & BROWN LLC |
|  | */s/ Bradley P. Lehman* <br> Bradley P. Lehman (No. 5921) <br> 1201 N. Orange Street, Suite 300 <br> Wilmington, DE 19801 <br> P: (302) 425-5800 <br> E: blehman@gsbblaw.com |

OF COUNSEL:

JOSHPE MOONEY PALTZIK LLP
Edward Paltzik
1407 Broadway, Suite 4002
New York, NY 10018
P: (212) 344-8211
E: epaltzik@jmpllp.com
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

11