IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN RIGBY, ALAN KNIGHT, and      :
FIREARMS POLICY COALITION,      :    C.A. No. 1:21-cv-01523-MN
INC. ,      :
     :
    Plaintiffs,      :
     :
     v.      :
     :
JOHN C. CARNEY, Governor of Delaware;      :
KATHY JENNINGS, Attorney General of      :
Delaware      :

    Defendants.

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

STATE OF DELAWARE DEPARTMENT
OF JUSTICE

Patricia A. Davis (No. 3857)
Kenneth L. Wan (No. 5667)
Deputy Attorneys General
Carvel Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Email: PatriciaA.Davis@delaware.gov
Kenneth.Wan@delaware.gov

*Counsel for Defendants*

Date: December 9, 2021

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

SUMMARY OF THE ARGUMENT ........................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

    A. The Plaintiffs............................................................................................ 2

    B. Legal Overview........................................................................................ 2

        1.  Requirements under the Gun Control Act of 1968 ............................... 2

        2.  Unfinished receiver kits and ghost guns circumvent the requirements of the Gun Control Act and threaten public safety ............................................. 3

        3.  HB 125 responds to the threat posed by unfinished receiver kits and ghost guns ............................................................................................. 4

ARGUMENT ................................................................................................................ 5

I.    STANDARD OF REVIEW ................................................................................ 5

    A.  Standard of Review under 12(b)(1)........................................................... 5

    B.  Standard of Review under 12(b)(6)........................................................... 6

II.   PLAINTIFFS' CLAIMS AGAINST GOVERNOR CARNEY ARE BARRED BY SOVEREIGN IMMUNITY ................................................................................ 6

III.  HB 125 IS CONSTITUTIONAL AND PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6)................................... 10

    A.  HB 125 does not violate the Second Amendment..................................... 10

        1.  Plaintiffs' claims cannot survive the two-step analysis applied by the Third Circuit ......................................................................................... 10

        2.  HB 125 does not burden conduct protected by the Second Amendment because it is a longstanding, presumptively valid regulation that does not interfere with Delawareans' right to defend "hearth and home." ............. 11

        3.  In the alternative, HB 125 passes heightened scrutiny ........................... 12

i

B.   HB 125 does not violate the Fifth Amendment ...................................................14

   1.   No compensation is due for restrictions on personal property ...........................14

C.   HB 125 does not violate the First Amendment ..........................................................16

   1.   The Instructions Ban is not the publishing of an item of expressive speech ........16

   2.   The Instructions Ban is a valid, content-neutral regulation of Plaintiffs' conduct that does not infringe First Amendment Rights ........................................17

   3.   The Instructions Ban is not a facially unconstitutional prior restraint ..................18

   4.   The Instructions Ban is not unconstitutionally overbroad ....................................19

CONCLUSION ..........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                      <u>PAGE</u>

*1st Westco Corp. v. Sch. Dist. Of Phila.*, 6 F.3d 108 (3d Cir. 1993) ..........................................8, 9

*Abramski v. United States*, 573 U.S. 169 (2014) ......................................................................2, 3

*Adkins v. United States*, 82 Fed. Cl. 619 (2008) ...........................................................................16

*Alden v. Maine*, 527 U.S. 706 (1999) .............................................................................................7

*Alexander v. U.S.*, 509 U.S. 544 (1993)........................................................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................6

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ..........................................................................6

*Boler v. Earley*, 865 F.3d 391 (6th Cir. 2017) ............................................................................7, 8

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ..............................................................................19

*Brockett v. Spokane Arcades*, 472 U.S. 491 (1985).................................................................19, 20

*CFTC v. Cartuli*, 228 F.3d 94 (2d Cir. 2000) ...............................................................................17

*Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996) ...................9

*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988).........................................18, 19

*Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288 (1984)................................................17

*Clinton County Com'rs. v. U.S. Environmental Protection Agency*, 116 F.3d 1018 (3d Cir. 1997) ........................................................................................................................................7

*CSX Trans., Inc. v. Bd. of Public Works, State of West Virginia*, 138 F.3d 537 (4th Cir. 1998) ........................................................................................................................................8

*District of Columbia v. Heller*, 554 U.S. 570 (2008)........................................................10, 11, 12

*Ex Parte Young* 209 U.S. 123 (1908) .............................................................................................8

*Fahr v. City of San Diego*, 2021 WL 4895974 (S.D. Cal. Oct. 20, 2021) ..............................15, 16

*Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979) ...........................................................................16

*Freedom from Religion Found. v. Abbott*, 955 F.3d 417 (5th Cir. 2020)....................................7, 8

*Goldblatt v. Hempstead*, 369 U.S. 590 (1962)...........................................................................15

*Gould Elecs., Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000)....................................................6

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995)..............16, 17

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012) ...........................................................................................................................5

*Jackson v. City and Cty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ....................................13

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d. Cir. 1991) ............................................6

*Kleinman v. City of San Marcos*, 597 F.3d 323 (5th Cir. 2010) ....................................................18

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S 375 (1994)..............................................................7

*Lee v. Minner*, 369 F. Supp. 2d 527 (D. Del. 2005) .......................................................................9

*Lewis v. Rendell*, 501 F. Supp. 2d 671 (E.D. Pa. 2007).................................................................10

*McCutchen v. United States*, 145 Fed. Cl. 42 (2019), *aff'd* 14 F.4th 1355 (Fed. Cir. 2021).........15

*McDonald v. City of Chicago*, 561 U.S. 742 (2010).......................................................................11

*MCI Telecommunication Corp. v. Bell Atlantic Pennsylvania*, 271 F.3d 491 (3d Cir. 2001) .....7, 8

*Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356 (4th Cir. 2020).......................................................15

*Mugler v. Kansas*, 123 U.S. 623 (1887) ........................................................................................15

*NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389 (5th Cir. 2015).....................................................8

*NRA, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) ..........................................................................................................................11

*N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1 (1987)......................................................19

*Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct. 108 (2020)................................................................................................................14

*Rode v. Dellarciprete*, 845 F.3d 1195 (3d Cir. 1988) .....................................................................9

*Rupp v. Becerra*, Case No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138452 (C.D. Cal. May 9, 2018) ...........................................................................................................................16

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016), *cert. denied sub nom. Silvester v. Becerra*, 138 S. Ct. 945 (2018),..................................................................................12, 13

*Siwulec v. J.M. Adjustment Services, LLC*, 2012 WL 666649 (3d Cir. Mar. 1, 2012) ...................6

*Supreme Ct. of Va. v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980) .................10

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302 (2002)....................15

*Texas v. Johnson*, 491 U.S. 397 (1989) ...........................................................................................16

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994)....................................................................17

*United States v. Chi Mak*, 683 F.3d 1126 (9th Cir. 2012) ..............................................................20

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013).........................................................10, 13

*United States v. Hicks*, 980 F.2d 963 (5th Cir. 1992) ....................................................................19

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)................................................11, 12, 14

*United States v. O'Brien*, 391 U.S. 367 (1968) ..............................................................................18

*United States v. Salerno*, 481 U.S. 739 (1987) ..............................................................................14

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001).............................................17

*Victaulic Co. v. Tieman*, 499 F.3d 227 (3d Cir. 2007).....................................................................6

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ......................................................................17

*Warnock v. Pecos Cty.*, 88 F.3d 341 (5th Cir. 1996) ........................................................................7

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................................................19

*Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316 (4th Cir. 2001)................................................10

*Waterfront Commission on New York Harbor v. Governor of New Jersey*, 961 F.3d 234 (3d Cir. 2020).............................................................................................................7, 8

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)...................................................................8

*Women's Emergency Network v. Bush*, 323 F.3d 937 (11th Cir. 2003) ......................................9, 10

*Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021)..............................................................................11

## STATUTES, REGULATIONS, & OTHER AUTHORITIES

U.S. Const. Amend. I ...............................................................................1, 10, 16, 17, 18

U.S. Const. Amend. II ................................................................................... *passim*

U.S. Const. Amend. V.................................................................................10, 10, 14, 15

U.S. Const. Amend. XI .....................................................................................7, 9

U.S. Const. Amend. XIV..................................................................................1, 10, 11

Del. Const. Amend., Art. 3, § 1 .................................................................................8

18 U.S.C. § 921(a)(3) (2019) ...................................................................................3

18 U.S.C. § 922(k) (2015) ......................................................................................3

18 U.S.C. § 923(i) (2004) .....................................................................................2, 3

11 *Del. C.* § 222 .................................................................................................5

11 *Del. C.* § 1459A .............................................................................................4

11 *Del. C.* § 1462 .............................................................................................5

11 *Del. C.* § 1463 .............................................................................................5

Fed. R. Civ. P. 12(b)(1)........................................................................................5

Fed. R. Civ. P. 12(b)(6)........................................................................................6

HB 125, 151 Gen. Ass. (2021)................................................................... *passim*

27 C.F.R. § 478.11 (2019) .....................................................................................3

27 C.F.R. § 478.92(a) (2019)................................................................................2-3

27 C.F.R. § 479.11 (2019) .....................................................................................3

H.R. Rep. No. 116-88, at 2 (2019)...........................................................................3, 4

86 Fed. Reg. 27720-01 (2021) ...............................................................................3, 4

The Federalist No. 39 (James Madison) ........................................................................7

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed their Complaint against Governor John C. Carney and Attorney General Kathleen Jennings (collectively, the "Defendants") on October 27, 2021. D.I. 1. Plaintiffs' Complaint challenges the constitutionality of House Bill 125 ("HB 125" or the "Bill"). They allege that HB 125's restrictions on unserialized, untraceable, and undetectable firearms and firearms components violate their rights under the First, Second, Fifth, and Fourteenth Amendments to the U.S. Constitution.

On November 2, 2021, Plaintiffs filed a motion for a preliminary and permanent injunction. D.I. 5. As detailed in Plaintiffs' Opening Brief in Support of Plaintiffs' Motion for a Preliminary and Permanent Injunction, their motion seeks to enjoin Defendants' enforcement of HB 125. D.I. 6 (the "Opening Brief" or "Op. Br.") at 19. The Defendants filed their opposition to Plaintiffs' motion for a preliminary and permanent injunction on November 16, 2021. D.I. 11. That motion remains pending.

On November 17, 2021, the Court entered a stipulation and order providing, *inter alia*, that the Defendants had until December 9, 2021 to respond to the Complaint. D.I. 15. This is Defendants' opening brief in support of their Motion to Dismiss filed simultaneously herewith.

## SUMMARY OF THE ARGUMENT

1.  Sovereign immunity deprives this Court of jurisdiction to hear Plaintiffs' claims against Governor Carney.

2.  Plaintiffs have failed to state a claim for any violation of the Second Amendment.

3.  Plaintiffs have failed to state a Takings claim.

4.  Plaintiffs have failed to state a claim for any violation of the First Amendment.

1

## STATEMENT OF FACTS

**A.  The Plaintiffs.**

John Rigby, Alan Knight, and Firearms Policy Coalition, Inc. ("FPC" and, together with Messrs. Rigby and Knight, the "Plaintiffs") have initiated this lawsuit against Governor Carney and Attorney General Jennings.

Mr. Rigby alleges that he is a Delaware citizen and member of FPC. D.I. 7 at ¶¶ 3-4. He further alleges that he owns one untraceable, self-manufactured firearm—a self-manufactured Glock-compatible handgun—which he completed before the enactment of HB 125. *Id.* at ¶ 8. Because of HB 125, he claims that he has removed his self-manufactured handgun to a location outside of Delaware. *Id.* at ¶ 9. Mr. Rigby also allegedly owns and possesses in Delaware an unserialized receiver and associated components: in particular, a lower receiver suitable for the manufacture and assembly of an AR-15-design rifle. *Id.* at ¶ 12.

Mr. Knight also alleges that he is a Delaware citizen and member of FPC. D.I. 8 at ¶¶ 3-4. He further alleges that he owns two unserialized, unfinished receivers and associated components: two lower receivers suitable for the manufacture and assembly of an AR-15-design rifle. *Id.* at ¶ 10.

**B.  Legal Overview.**

**1.  Requirements under the Gun Control Act of 1968.**

"[F]or over [50] years [the Gun Control Act of 1968 has] regulated sales by licensed firearms dealers, principally to prevent guns from falling into the wrong hands." *Abramski v. United States*, 573 U.S. 169, 172 (2014). The Gun Control Act provides that "certain classes of people – felons, drug addicts, and the mentally ill, to list a few – may not purchase or possess any firearm." *Id.* The Gun Control Act further requires that each firearm built by a licensed manufacturer contain a serial number unique to that firearm. 18 U.S.C. § 923(i) (2004); 27 C.F.R.

§ 478.92(a) (2019). It is a crime to possess a firearm that has had its serial number removed. 18

U.S.C. § 922(k) (2015). The statute also imposes recordkeeping requirements on federal firearm

licensees so that a gun found on the street can be traced, through its serial number, to its point of

sale. *Abramski*, 573 U.S. at 173.

The serial number must be engraved or cast on the "frame or receiver" of the weapon

because that is the statutory "firearm." 18 U.S.C. § 923(i) (2004); 18 U.S.C § 921 (a)(3) (2019).

The "[f]rame or receiver" is the part of the firearm that receives the other essential components of

the gun, like the barrel and the firing pin. *See* 27 C.F.R § 478.11 (2019); 27 C.F.R. § 479.11 (2019).

That is, other gun components are attached to the receiver to create the complete gun.

### 2. Unfinished receiver kits and ghost guns circumvent the requirements of the Gun Control Act and threaten public safety.

"In recent years, individuals have been purchasing firearm part kits with incomplete frames

or receivers, commonly called '80% receivers,' either directly from manufacturers of the kits or

retailers, without background checks or recordkeeping." Definition of "Frame or Receiver" and

Identification of Firearms, 86 Fed. Reg. 27720-01, 27726 (2021). "Some of these parts kits contain

most or all of the components (finished or unfinished) necessary to complete a functional weapon

within a short period of time." *Id.*

Given that an unfinished receiver requires additional work before it can be used as a

functioning gun, it is not considered a "firearm" subject to the prescriptions and proscriptions of

the Gun Control Act. *Id.* Because they do not contain anything that qualifies as a firearm,

unfinished receiver kits can be sold without a background check and do not contain any serialized

components that can be used to trace the weapon. H.R. Rep. No. 116-88, at 2 (2019). Guns made

from these receivers and associated components are virtually untraceable if used in a crime, which

is why they are often referred to as "ghost guns." Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27720-01, 27722-23 (2021).

The U.S. House Committee on Homeland Security has concluded that "[g]host guns" present a "homeland security challenge." H.R. Rep. No. 116-88, at 2. "Ghost guns not only pose a challenge on the front end, enabling prohibited buyers to purchase deadly weapons with just a few clicks online, but also on the back end, hamstringing law enforcement's ability to investigate crimes committed with untraceable weapons." *Id.* The ATF likewise identified ghost guns as a threat to public safety. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722.

Law enforcement recovered nearly 24,000 ghost guns at crime scenes between 2016 and 2020. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722. To curtail the proliferation of ghost guns, the ATF has issued a notice of proposed rulemaking. If promulgated, the new rule will expand the definition of "firearm" to include unfinished receivers that are "designed to or may readily be converted to" fire projectiles. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726. That means the sale of unfinished receiver kits will be subject to background checks and unfinished receivers will be serialized. Definition of "Frame or Receiver" and Identification

### 3. HB 125 responds to the threat posed by unfinished receiver kits and ghost guns.

HB 125 addresses the threat posed by unserialized firearms and firearm components, as well as untraceable firearms. First, HB 125 prohibits the "[p]ossession of an unfinished firearm frame or receiver with no serial number." 11 *Del. C.* § 1459A. HB 125 also prohibits knowingly transporting, shipping, transferring, or selling an unfinished firearm frame or receiver unless: (1) the person is a federally licensed gun dealer or manufacturer; (2) the name of the manufacturer

4

and an individual serial number are conspicuously placed on the unfinished firearm frame or receiver; and (3) the person maintains records for the unfinished firearm frame or receiver. *Id.*

In addition, HB 125 prohibits the possession or manufacturing of a covert or undetectable firearm. 11 *Del. C.* § 1462. A "covert firearm" is defined as any firearm that is constructed in a shape or configuration such that it does not resemble a firearm. 11 *Del. C.* § 222. An "undetectable firearm" is defined as a firearm constructed entirely of non-metal substances or is not detectable by walkthrough metal detectors. *Id.*

HB 125 further prohibits the possession, manufacture, or distribution of an untraceable firearm. 11 *Del. C.* § 1463. Distribution of an untraceable firearm includes distribution, "by any means, including the internet, to a person who is not licensed as a manufacturer, instructions in the form of computer aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver or major component of a firearm" (the "Instructions Ban"). *Id.*

HB 125 is necessary to eliminate unserialized, untraceable, and undetectable firearms, thereby promoting and protecting the public health, safety, and general welfare of the citizens of the State of Delaware.

## ARGUMENT

### I.   Standard of Review

#### A.  Standard of Review Under 12(b)(1).

Under Fed. R. Civ. P. 12(b)(1), "a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion and convince the court it has

jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d. Cir. 1991)**.**

### B.  Standard of Review Under 12(b)(6).

Dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) when a party's complaint fails to state a claim upon which relief can be granted. "While a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations, it must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Siwulec v. J.M. Adjustment Services, LLC*, 2012 WL 666649, at *2 (3d Cir. Mar. 1, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" *Siwulec*, at *2 (quoting *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)); *see also Twombly*, 550 U.S. at 555. "Accordingly, to satisfy the plausibility standard, the complaint must indicate that a defendant's liability is more than 'a sheer possibility.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). Though a complaint need not contain detailed factual allegations, it must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555. The U.S. Supreme Court has stated that "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (citing *Twombly*, 550 U.S. at 556).

## II.  Plaintiffs' Claims Against Governor Carney Are Barred by Sovereign Immunity

First and foremost, Plaintiffs' claims against Governor Carney should be dismissed for lack of subject matter jurisdiction.

It is well-settled that federal courts are courts of limited jurisdiction and plaintiffs may invoke

the federal court's jurisdiction only under a specific statutory grant. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S 375, 377 (1994); *Clinton County Com'rs. v. U.S. Environmental Protection Agency*, 116 F.3d 1018, 1021 (3d Cir. 1997). Moreover, the immunity of states and their officials "from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today except as altered by the plan of the Convention or certain constitutional Amendments." *Alden v. Maine*, 527 U.S. 706, 713 (1999); *see also Waterfront Commission on New York Harbor v. Governor of New Jersey*, 961 F.3d 234, 238 (3d Cir. 2020) ("State sovereign immunity dates back to our Nation's Founding, and is deeply rooted in English law. Assurances that State would remain immune from federal suit – absent their consent – were instrumental in securing sufficient support for the Constitution's adoption."); The Federalist No. 39 (James Madison) (explaining that, under the Constitution, the states would retain "a residuary and inviolable sovereignty"). This sovereign immunity of the states was enshrined by the Eleventh Amendment of the U.S. Constitution, which provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In most cases, sovereign immunity deprives federal courts of jurisdiction to hear private suits against states and their officials. *Waterfront Commission on New York Harbor*, 961 F.3d at 238; *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020) (citing *Warnock v. Pecos Cty.*, 88 F.3d 341, 342 (5th Cir. 1996)).

The Supreme Court of the United States has recognized only three limited exceptions to sovereign immunity. *MCI Telecommunication Corp. v. Bell Atlantic Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001); *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). A state may, for example, elect to waive its sovereign immunity and, in some circumstances, "Congress may abrogate it by appropriate legislation." *Freedom from Religion Found.*, 955 F.3d at 424; *Boler*, 865 F.3d at 410.

7

Neither exception applies here.[1]

The third exception, commonly referred to as the *Ex Parte Young* doctrine, holds that a state official is "stripped of his official or representative character" and deprived of sovereign immunity when he commits an "ongoing violation of federal law." *Waterfront Commission on New York Harbor*, 961 F.3d at 238 (citing *Ex Parte Young* 209 U.S. 123 (1908)); *see also Freedom from Religion Found.*, 955 F.3d at 424 (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394-95 (5th Cir. 2015). It applies only in circumstances where the government official is alleged to *have a connection or special relationship* to the statute in question. *Young*, 209 U.S. at 157. This exception is founded on the notion that an official who performs his duties in a way that contravenes the Constitution does so outside the cloak of state authority. *CSX Trans., Inc. v. Bd. of Public Works, State of West Virginia*, 138 F.3d 537 (4th Cir. 1998). *Young* does not apply when the named official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute. *1st Westco Corp. v. Sch. Dist. Of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993), or where, although the action is nominally against individual officers, the state is the real, substantial party in interest and the suit in fact is against the state. *MCI Telecomm. Corp.*, 271 F.3d at 508.

Here, the Complaint is devoid of any allegations that the Governor has a connection or special relationship to the law in question. Other than recognizing that he signed the bill as governor, Plaintiffs' allegations against Governor Carney are limited to the following:

> Defendant Carney is Governor of the State of Delaware and vested with the "supreme executive power" of the State. As the governor, Del. Const., Art. 3, Sec. 1, Defendant Carney is required under the Delaware Constitution to "take care that the laws are faithfully executed" . . . .

Comp. at ¶ 14. General authority to enforce the laws of the state – as Plaintiffs allege here – has

---

[1] Section 1983 does not abrogate sovereign immunity. *Boler,* 865 F. 3d at 410 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

never been deemed sufficient to allow suit to be brought against the government official in federal court. To the contrary, federal courts – including the Third Circuit – have recognized that to expand the law in this fashion would extend *Ex parte Young* "beyond what the Supreme Court intended and held." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (citations omitted).

In *1st Westco Corp. v. Sch. Dist. Of Phila.*, the Third Circuit held that though state officials generally have a duty to "uphold and defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction," an official needs a concrete connection to the statute and claim at issue to be held accountable for declaratory or injunctive relief. 6 F.3d at 114. To name a public official as a defendant in a challenge to the constitutionality of a statute, there must be a "real, not ephemeral, likelihood or realistic potential that the [public official's] connection [to the statute at issue] will be employed against the plaintiff's interests." *Id.* (quoting *Rode v. Dellarciprete*, 845 F.3d 1195, 1208 (3d Cir. 1988)). The Third Circuit further warned that, "[i]f we were to allow [plaintiffs] to join . . . [state officials] in this lawsuit based on their general obligation to enforce the laws . . . , we would quickly approach the nadir of the slippery slope; each state's high policy officials would be subject to defend every suit challenging the constitutionality of any state statute, no matter how attenuated his or her connection to it." *Id.* at 112-13, 116.

Delaware governors, as well as the governors of other states, have had claims against them dismissed on this very basis. *Lee v. Minner*, 369 F. Supp. 2d 527, 538 (D. Del. 2005) (finding claims against the Governor precluded by the Eleventh Amendment); *see Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003) ("Where the enforcement of a statute is the responsibility of parties other than the governor . . . ., the governor's general executive power

9

is insufficient to confer jurisdiction."); *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 330-31 (4th Cir. 2001) (holding that mere fact that the governor of Virginia is under general duty to enforce state laws "does not make him a proper defendant in every action attacking the constitutionality of a state statute"); *Lewis v. Rendell*, 501 F. Supp. 2d 671 (E.D. Pa. 2007).

Aside from his general executive power, Plaintiffs also observe that Governor Carney signed HB 125. Under the doctrine of absolute legislative immunity, however, a governor cannot be sued for signing a bill into law. *Women's Emergency Network*, 323 F.3d at 949-50 (citing *Supreme Ct. of Va. v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731-344 (1980)).

In this case, HB 125 is neither enforced nor administered by the Governor. Accordingly, Plaintiffs' claims against Governor Carney must be dismissed.

## III.  HB 125 Is Constitutional and Plaintiffs' Claims Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)

Plaintiffs assert a claim based on the Second Amendment and a claim alleging an unconstitutional taking under the Fifth and Fourteenth Amendments. Plaintiffs also assert a claim based on the First Amendment. Because they have failed to state any claims upon which relief can be granted, the claims against both Defendants should be dismissed in their entirety.

### A.  HB 125 does not violate the Second Amendment.

#### 1.  Plaintiffs' claims cannot survive the two-step analysis applied by the Third Circuit.

The Second Amendment expressly states, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. "[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'"  *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). "Like most rights, the right secured by the Second Amendment is not unlimited" and, historically

speaking, "the right is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. The Second Amendment is fully applicable to the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 790-91 (2010).

As Plaintiffs acknowledge, the Third Circuit has established a two-step framework to evaluate Second Amendment claims. Op. Br. at 8-9 (quoting *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). First, the plaintiff must show that the law burdens conduct protected by the Second Amendment. *Marzzarella*, 614 F.3d at 89. If the law burdens protected Second Amendment conduct, then the second step requires determining the appropriate level of scrutiny and applying it to the challenged law. *Id.* Other Circuits have similarly adopted this framework. *See Young v. Hawaii*, 992 F.3d 765, 783-84 (9th Cir. 2021) (en banc). Applying this Second Amendment analysis demonstrates that HB 125 is constitutional.

> ### 2. HB 125 does not burden conduct protected by the Second Amendment because it is a longstanding, presumptively valid regulation that does not interfere with Delawareans' right to defend "hearth and home."

Plaintiffs' challenge fails at step one because HB 125 does not burden Second Amendment protected conduct. The law's serialization requirements are properly classified as "longstanding" gun-control measures that are "presumptively lawful" and thus do not burden the Second Amendment. *Heller*, 554 U.S. at 635. Laws tracking and restricting the possession of firearms date back to colonial times. *See NRA, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 200 (5th Cir. 2012). Moreover, "a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." *NRA*, 700 F.3d at 196-97. For example, *Heller's* exemplars of "longstanding" regulations – a ban on firearms possession by felons and the mentally ill – did not have precise founding-era analogs. *Id.* Serialization dates to the same period as *Heller's* examples and should also be considered a longstanding and presumptively valid measure.

11

Plaintiffs' challenge fails at step one for an additional reason. HB 125 only regulates unserialized, untraceable, and undetectable firearms and unserialized, unfinished firearm components – the law therefore does not interfere with the core right to "defense of hearth and home" because the individual Plaintiffs' ability to use any serialized firearms to defend their homes remains unchanged by HB 125. *Id.* Moreover, none of the individual Plaintiffs alleged that if they dispose of their unserialized, untraceable firearms and unfinished frames and receivers, they will lack the firearms necessary to defend their homes. Because HB 125 does not interfere with the core right of the Second Amendment, Plaintiffs' challenge fails at step one of the analysis.

Plaintiffs argue that HB 125 burdens their right to "self-manufacture" firearms. D.I. 6 at 3. They fail to present evidence that self-assembling from unserialized components is necessary or superior for home defense. Nor do they cite caselaw finding that the Second Amendment extends to assembling – as opposed to keeping and bearing – firearms. In addition, individual Plaintiffs are not stripped of an opportunity to self-manufacture and assemble firearms and constituent parts so long as they are serialized and traceable.

Accordingly, HB 125 does not burden constitutionally protected activity.

### 3.   In the alternative, HB 125 passes heightened scrutiny.

Under *Marzzarella*, this Court need not reach step two of the analysis because HB 125 does not burden constitutionally protected activity. *Marzzarella*, 614 F.3d at 89. If the Court does reach step two, however, it should apply intermediate scrutiny and uphold HB 125.

Intermediate scrutiny is the proper level of scrutiny for Second Amendment cases such as this. *See Silvester v. Harris*, 843 F.3d 816, 822-23 (9th Cir. 2016) (collecting cases), *cert. denied sub nom. Silvester v. Becerra*, 138 S. Ct. 945 (2018). "[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment

right, [courts] may apply intermediate scrutiny." *Jackson v. City and Cty. of San Francisco*, 746 F.3d 953, 960-61 (9th Cir. 2014). Strict scrutiny should only be applied in the rare case where a measure "implicates the core of the Second Amendment right and severely burdens that right." *Silvester*, 843 F.3d at 821.

As previously explained, HB 125 does not implicate the core Second Amendment right of home defense. HB 125 regulates unserialized, untraceable, and undetectable firearms – the law therefore does not interfere with the right to defense of hearth and home because the individual Plaintiffs' ability to use any serialized, traceable firearms to defend their homes remains unchanged. Nor does the law implicate any purported right to self-manufacture firearms. Plaintiffs are not stripped of an opportunity to self-manufacture and assemble firearms and constituent parts so long as they are serialized or fall within an exception.

Intermediate Scrutiny: A statute is constitutional under intermediate scrutiny as long as (1) the government's stated goal is "significant, substantial, or important" and (2) there is a "reasonable fit" between the statute and the government's goal. *Silvester*, 843 F.3d at 821-22. Intermediate scrutiny is not a strict test, and it does not require that the government select "the least restrictive means of furthering a given end." *Id.* at 827.

Ghost gun kits and unserialized, untraceable, and undetectable firearms are threats to public safety because they circumvent background checks and cannot be traced through law enforcement databases. "It is self-evident" that public safety is an important government interest. *Chovan*, 725 F.3d at 1139; *see also Jackson*, 746 F.3d at 965. Additionally, other courts have previously recognized that "preserving the ability of law enforcement to conduct serial number tracing – effectuated by limiting the availability of untraceable firearms – constitutes a substantial or

important interest." *Pena v. Lindley*, 898 f.3d 969, 982 (9th Cir. 2018), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct. 108 (2020). Thus, HB 125 satisfies the first prong of intermediate scrutiny.

Because HB 125 only targets unserialized firearms that are not within a categorical exception, that bypass background checks by virtue of self-assembly, and that are untraceable without a serial number, it is a reasonable fit for achieving the State's objectives of decreasing the threat that unserialized firearms pose to public safety and preserving law enforcement's ability to trace firearms. *See Marzzarella*, 614 F.3d 85, 99 (3d Cir. 2010) (holding that "[r]egulating the possession of un[serialized] firearms" fits "closely with the interest in ensuring the traceability of weapons"). HB 125 "reaches only conduct creating a substantial risk of rendering a firearm untraceable." *Id.* at 98. It does not prevent any Delaware citizen who is legally permitted to obtain a firearm from purchasing a serialized firearm for home defense.

Strict Scrutiny: Even under strict scrutiny, HB 125 is constitutional. A firearms law passes strict scrutiny if it is "narrowly tailored to serve a compelling state interest." *Id.* at 99. Crime prevention and investigating gun violence are compelling interests. *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 749 (1987)).

HB 125 was narrowly tailored to serve the State's compelling interest because it leaves intact Plaintiffs' ability to use any serialized firearms to defend their homes while concurrently making it harder for prohibited persons to obtain firearms, and by proscribing possession of a firearm that would be untraceable if used in a crime.

**B. HB 125 does not violate the Fifth Amendment.**

**1. No compensation is due for restrictions on personal property.**

Plaintiffs' takings claim fails on the merits because neither a physical, nor regulatory taking has occurred.

Physical Taking: HB 125 does not effect a physical taking. The Takings Clause expressly prohibits the taking of "private property . . . *for public use, without just compensation*." U.S. Const. Amend. V (emphasis added). A physical taking of property occurs only "[w]hen the government physically takes possession of an interest in the property for some public purpose." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). HB 125 is a prohibition against unserialized and untraceable firearms and unserialized, unfinished receivers and firearms frames. It does not transfer title of the unfinished receivers or unserialized firearms to the government, nor is there any indication that the State of Delaware intends to put the devices to its own use. Federal courts have already rejected the takings argument made by plaintiffs in other cases challenging similar regulations on unserialized firearms as well as in connection with bump-stock bans. *Fahr v. City of San Diego*, 2021 WL 4895974, at *12 (S.D. Cal. Oct. 20, 2021); *Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 366 (4th Cir. 2020); *McCutchen v. United States*, 145 Fed. Cl. 42, 54 (2019), *aff'd* 14 F.4th 1355 (Fed. Cir. 2021). Because Plaintiffs' property is not being commandeered for public use, there is no physical taking.

Regulatory Taking: A government does not need to compensate owners when it prohibits a type of personal property through a valid law. *Md. Shall Issue*, *Inc.*, 963 F.3d at 366-67. The police power exception of the Takings Clause provides that "[a] prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking." *Mugler v. Kansas*, 123 U.S. 623, 668 (1887). "If [a law] is otherwise a valid exercise of the [government's] police powers, the fact that it deprives the property of its most beneficial uses does not render it unconstitutional." *Goldblatt v. Hempstead*, 369 U.S. 590, 592 (1962) (citations omitted). HB 125 seeks to regulate

ghost guns to eliminate unserialized, untraceable firearms, thereby promoting and protecting the public health, safety, and general welfare of the citizens of the State of Delaware.

Several other courts analyzing firearms restrictions in the context of the police power exception to the Takings Clause have reached similar conclusions. *See Fahr*, 2021 WL 4895974, at *13 (holding that prohibition on unserialized firearms and firearms components did not constitute a physical or regulatory taking); *Adkins v. United States*, 82 Fed. Cl. 619, 623-24 (2008) (holding that prohibition on the sale of machine guns to anyone other than law enforcement agencies did not constitute a physical or regulatory taking); *Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979) (holding that a statue requiring machine guns denied registration be sold, surrendered, or disposed, was a valid exercise of police power thereby not a taking); *Rupp v. Becerra*, Case No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138452, *8-*9 (C.D. Cal. May 9, 2018) (dismissing a takings claim on the grounds that a California prohibition on certain weapons represented an exercise of police power and not a taking).

HB 125 represents a valid exercise of the State's police power and, accordingly, Plaintiffs' Takings Claim should be dismissed.

### C.  HB 125 does not violate the First Amendment.

#### 1.  The Instructions Ban is not the publishing of an item of expressive speech.

Although "speech" under the First Amendment is not limited to written or spoken words, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995), the Supreme Court has made clear that the First Amendment does not encompass all types of conduct. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989) ("[W]e have rejected the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" (quotations omitted)). At a minimum, conduct must be

16

sufficiently expressive and communicative to other persons to qualify for protection under the First

Amendment. *See Hurley*, 515 U.S. at 569.

The Instructions Ban does not prohibit the mere publication or distribution of ideas. The

files at issue are essentially blueprints that can be used with a three-dimensional printer to

automatically generate firearms and firearms components.  While Plaintiffs rely on *Universal City*

*Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001), a Second Circuit decision holding that

computer code and computer programs can qualify for First Amendment protection, *Corley*

expressly distinguished the facts of that case from *CFTC v. Cartuli*, 228 F.3d 94, 111 (2d Cir.

2000), which had previously held that computer instructions that "induce action without the

intercession of the mind or the will of the recipient" are not constitutionally protected speech.

Similarly, the files subject to the Instructions Ban are not constitutionally protected. Op. Br. at 13.

### 2.  The Instructions Ban is a valid, content-neutral regulation of Plaintiffs' conduct that does not infringe First Amendment Rights.

Plaintiffs contend that the Instructions Ban is a content-based speech restriction subject to

strict scrutiny, but this argument is in error. "[R]egulations that are unrelated to the content of

speech" receive less demanding First Amendment scrutiny because they ordinarily "pose a less

substantial risk of excising certain ideas or viewpoints from the public dialogue." *Turner Broad.*

*Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). Where the government's purpose in imposing a

regulation is "justified without reference to the content of the regulated speech," such regulation

is content-neutral. *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984). It is the

State's purpose, not other factors, that is the "controlling consideration" in this determination.

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

HB 125 regulates the conduct of distributing untraceable firearms for the purpose of

advancing public safety. The computer files subject to the Instructions Ban function to

automatically produce such weapons or their components. Whatever expressive value may exist in the theory of these files, they function to create a firearm. Thus, the State may restrict their distribution on the basis of their functionality to create untraceable firearms. HB 125 is not the product of government hostility toward the spread of ideas about 3D printing of firearms, but rather against the means to easily do so.

Accordingly, HB 125 is not directed at the content of expression. For this reason, strict scrutiny does not apply to a First Amendment analysis of the Instructions ban.

Under intermediate scrutiny, the State's regulation of "'speech' and 'non-speech' elements [] united in a course of conduct" must be sustained if it is "within the constitutional power of the government, it furthers an important or substantial government interest, the government interest is unrelated to the suppression of free expression, and the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Kleinman v. City of San Marcos*, 597 F.3d 323, 328 (5th Cir. 2010) (quoting *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968)). As set forth above, these standards are met by HB 125.

Accordingly, even if subjected to a heightened standard of review under the First Amendment, the Instructions Ban is constitutional.

### 3. The Instructions Ban is not a facially unconstitutional prior restraint.

Plaintiffs also have no likelihood of success on the merits of their theory that the Instructions Ban constitutes an unlawful prior restraint on speech. Op. Br. at 17. "The doctrine of prior restraint originated in the common law of England, where prior restraints of the press were not permitted, but punishment after publication was." *Alexander v. U.S.*, 509 U.S. 544, 553 (1993). The classic administrative prior restraint is what is often described as a licensing scheme for speech, where the plaintiff's right to speak is conditioned on a prior approval from the government. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988). Such a prior restraint

is contrasted with prohibitions on certain speech enforced by punishment *after* the fact, which is not a prior restraint. *See id.* at 764. The Instructions Ban does not represent a licensing scheme or a prior restraint. Nor is HB 125 directed at expressive speech, but instead is directed to addressing the act of distributing untraceable firearms and related technical data, a category of conduct that is not characteristically expressive.

### 4.   The Instructions Ban is not unconstitutionally overbroad.

Plaintiffs also raise an "overbreadth" challenge to the Instructions Ban.  Op. Br. at 15-16. Overbreadth is an exception to the prudential standing requirement that a plaintiff may only "assert his own legal rights and interests." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). In circumstances where a regulation is alleged to be so broad that it is incapable of any permissible application, courts may allow a party to bring a facial challenge to a statute because it threatens others not before the court. *See N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1987); *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). Overbreadth is "strong medicine" to be used "sparingly and only as a last resort," *Broadrick*, 413 U.S. at 613, and plaintiffs must show that the alleged "overbreadth of a statute [is] not only [] real, but substantial . . . judged in relation to the statute's plainly legitimate sweep." *Id.* at 615.

Here, Plaintiffs' overbreadth claim cannot meet these standards. First, "[c]ourts need not entertain an overbreadth challenge 'where the parties challenging the statute are those who desire to engage in protected speech that the overbroad statute purports to punish.'" *U.S. v. Hicks*, 980 F.2d 963, 969 (5th Cir. 1992) (quoting *Brockett v. Spokane Arcades*, 472 U.S. 491, 504 (1985)). Thus, no overbreadth challenge is "appropriate if the first amendment rights asserted" on behalf of third parties are "essentially coterminous" with those asserted by the plaintiffs themselves. *Id.* Here, as the Supreme Court observed in *Brockett*, Plaintiffs do not allege any "want of a proper

party to challenge the [statute], no concern that the attack on the [statute] will be unduly delayed or protected speech discouraged." 472 U.S. at 504.

Second, even if the merits of Plaintiffs' overbreadth claim are reached, the Instructions Ban has a substantially permissible purpose. It serves the vital purpose of ensuring public safety. Accordingly, no substantial overbreadth exists here, and Plaintiffs are not likely to succeed on this claim. *See U.S. v. Chi Mak*, 683 F.3d 1126, 1136 (9th Cir. 2012) (rejecting overbreadth challenge).

Accordingly, Plaintiffs' First Amendment claim should be dismissed

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that this Honorable Court dismiss Plaintiffs' Complaint for failure to state a claim and grant them such further relief as this Court deems just and proper.

STATE OF DELAWARE DEPARTMENT
OF JUSTICE

*/s/ Kenneth L. Wan*
Patricia A. Davis (No. 3857)
Kenneth L. Wan (No. 5667)
Deputy Attorney General
Carvel Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Email: PatriciaA.Davis@delaware.gov
Kenneth.wan@delaware.gov

*Counsel for Defendants*

December 9, 2021

20