IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN RIGBY, ALAN KNIGHT, and FIREARMS POLICY COALITION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> KATHY JENNINGS, Attorney General of Delaware, <br><br> Defendant. | : <br> : <br> : C.A. No. 1:21-cv-01523-MN <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Patricia A. Davis (No. 3857)
Kenneth L. Wan (No. 5667)
Deputy Attorneys General
Carvel Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Email: PatriciaA.Davis@delaware.gov
Kenneth.wan@delaware.gov

*Counsel for Defendant*

Date: January 10, 2022

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

RESTATED STANDARD OF REVIEW ............................................................................ 1

ARGUMENT ....................................................................................................................... 2

    I.  HB 125 does not violate the Second Amendment ................................................... 2

        A.  HB 125 does not burden conduct protected by the Second Amendment ........ 3

        B.  If HB 125 does burden Second Amendment conduct, HB 125 passes
            intermediate scrutiny ............................................................................................ 3

    II.  HB 125 does not violate the Fifth Amendment takings clause .............................. 6

    III. HB 125 does not violate the First Amendment ...................................................... 8

        A.  The Instructions Ban is a valid, content-neutral regulation of Plaintiffs'
            conduct that does not infringe First Amendment Rights ................................ 8

        B.  The Instructions Ban is not a facially unconstitutional prior restraint ........... 9

        C.  The Instructions Ban is not unconstitutionally overbroad ........................... 10

CONCLUSION .................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                             **PAGE**

*Adkins v. United States*, 82 Fed. Cl. 619 (2008) ................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................1, 2

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................................2

*Brockett v. Spokane Arcades*, 472 U.S. 491 (1985) ..........................................................10

*CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000) .....................................................................8

*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988) .....................................9

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................................2

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .........................................................3

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ......................................................2

*Fahr v. City of San Diego*, 2021 WL 4895974 (S.D. Cal. Oct. 20, 2021) ......................6, 7

*Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979) .............................................................6, 7

*Goldblatt v. Hempstead*, 369 U.S. 590 (1962) ...................................................................7

*Guedes v. ATF*, 2021 WL 663183 (D.D.C. Feb. 19, 2021) .................................................6

*Hamilton v. Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146 (1919) .....................6

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995) .......8

*Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ...................4

*Kleinman v. City of San Marcos*, 597 F.3d 323 (5th Cir. 2010) ........................................9

*McCutchen v. United States*, 145 Fed. Cl. 42 (2019), *aff'd* 14 F.4th 1355 (Fed. Cir. 2021) ...........6

*Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356 (4th Cir. 2020), *cert. denied,* No. 20-855
    2021 WL 1725174 (2021) ..............................................................................................6, 7

*Mugler v. Kansas*, 123 U.S. 623 (1887) .............................................................................7

*Palmer v. Sisolak,* C.A. No. 3:21-cv-00268-MMD-WGC (D. Nev. Jul. 26, 2021) .....4, 5, 6

*Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct. 108 (2020) ................................................................................................4, 5

*Rupp v. Becerra*, 2018 WL 2138452 (C.D. Cal. May 9, 2018) ......................................................7

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016), *cert. denied sub nom. Silvester v. Becerra*, 138 S. Ct. 945 (2018) ............................................................................... 3-4, 5

*Siwulec v. J.M. Adjustment Services, LLC*, 2012 WL 666649 (3d Cir. Mar. 1, 2012) .....................1

*Texas v. Johnson*, 491 U.S. 397 (1989) .........................................................................................8

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) ................................................................2

*United States v. Chi Mak*, 683 F.3d 1126 (9th Cir. 2012) ...........................................................10

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ..........................................................3, 4

*United States v. Hicks*, 980 F.2d 963 (5th Cir. 1992) ..................................................................10

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ..............................................2, 3, 4, 5

*United States v. O'Brien*, 391 U.S. 367 (1968) .............................................................................9

*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010) .................................................................2

*United States v. Salerno*, 481 U.S. 739 (1987) .............................................................................5

*Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) ............................................................................2

**STATUTES, REGULATIONS & OTHER AUTHORITIES**

U.S. CONST. AMEND. I .........................................................................................................1, 8, 9

U.S. CONST. AMEND. II .........................................................................................................1, 2, 3

U.S. CONST. AMEND. V ..............................................................................................................1

Fed. R. Civ. P. 12(b)(6) .............................................................................................................1, 2

HB 125, 151 Gen. Ass. (2021) ............................................................................................ *passim*

86 Fed. Reg. 27722 (2021) ...........................................................................................................5

Andrew W. Eichner, *Crime in the Age of Printable Guns: Methodologies & Obstacles to Prosecuting Federal Offenses Involving 3D-Printed Firearms*, 45 VT. L. REV. 189, 216 (2020) ................................................................................................... 5

## INTRODUCTION

This Court should dismiss Plaintiffs' Complaint with prejudice. House Bill 125 ("HB 125") prohibits unserialized, untraceable, and undetectable firearms and firearms components — commonly called ghost guns. Plaintiffs cannot, and do not, argue that HB 125 violates the Second Amendment's core right to possess a firearm for defense of hearth and home because HB 125 does not interfere with that right. Plaintiffs do not dispute the State or federal government's ability to require serial numbers on manufactured firearms. Nor do Plaintiffs dispute that they have every ability to legally purchase a firearm with a serial number for home defense. Instead, HB 125 is a lawfully enacted statute with the important and necessary government objective of preventing and prosecuting gun crime by preserving the ability of law enforcement to conduct firearm tracing by limiting the availability of non-traceable firearms. No precedent support Plaintiffs' views to the contrary. HB 125 is constitutional.

Plaintiffs' takings claim also fails as the Fifth Amendment's takings clause does not prevent Delaware's traditional power to regulate and prohibit dangerous private property. Federal courts have consistently held that bans of dangerous firearm components did not implicate the Takings Clause. Further, the First Amendment claim fails as the Instructions Ban does not prohibit expressive speech, is not a prior restraint, and is not overbroad. Thus, Plaintiffs' Complaint should be dismissed with prejudice.

## RESTATED STANDARD OF REVIEW

Dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) when a party's complaint fails to state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Siwulec v. J.M. Adjustment Services, LLC*, 2012 WL 666649, at *2 (3d Cir. Mar. 1, 2012). To survive a motion to dismiss a complaint must include "more than labels and

1

conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and the Court need not accept a complaint's legal conclusions. *Iqbal*, 556 U.S. at 678.

Plaintiffs argue for the Court to adopt a more lenient standard which their complaint would survive a Rule 12(b)(6) motion "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Dismiss at 4, D.I. 21 ("Ans. Br. at __"). Plaintiffs' argument relies on *Conley v. Gibson*, 355 U.S. 41 (1957), which is no longer good law and has been expressly overturned in the Supreme Court of the United States. *See Twombly*, 550 U.S. 544; *Iqbal*, 556 U.S. 662. To survive a motion to dismiss, Plaintiffs must satisfy the more stringent plausibility standard.

## ARGUMENT

### I. HB 125 does not violate the Second Amendment.

Plaintiffs dispute and largely ignore the established two-step framework for evaluating Second Amendment claims. *See* Ans. Br. at 4-6. First, if a challenged law does not "burden conduct protected by the Second Amendment," the inquiry ends and the law is constitutional. *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). If the law burdens protected Second Amendment conduct, then the law is evaluated under the appropriate level of scrutiny. *Id.*; *see also Young v. Hawaii*, 992 F.3d 765, 783-84 (9th Cir. 2021); *Ezell v. City of Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010). In the instant case, HB 125 does not burden protected conduct and, to the extent that it did, the law passes intermediate scrutiny. Apply this framework, HB 125 does not violate the Second Amendment and is constitutional.

### A. HB 125 does not burden conduct protected by the Second Amendment.

HB 125 does not burden protected Second Amendment conduct as it does not interfere with a Delawarean's ability to protect their hearth and home. *See Marzzarella*, 614 F.3d at 89; *see also United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). Nothing in Plaintiffs' Complaint indicates that Plaintiffs or any Delawarean legally entitled to purchase a firearm will have difficulty obtaining firearms with serial numbers and using such firearms for home defense following the passage of HB 125. Moreover, nothing in Plaintiffs' Complaint asserts that serialized handguns, AR-15s and other firearms are ineffective for home defense.

Instead of focusing on the well-established Second Amendment conduct—the ability to own firearms to protect one's hearth and home, Plaintiffs argue they have a right to self-manufacture firearms. This "right" is not supported or mentioned in any Second Amendment case law and Plaintiffs fail to cite to any support for this novel position. Contrary to their argument, unserialized, self-assembled firearms are not necessary to the realization of the Second Amendment's core right. Plaintiffs continue to have the ability to purchase serialized firearms in stores across Delaware and can own self-assembled guns so long as the underlying receiver is serialized. Accordingly, HB 125 does not burden constitutionally protected activity.

### B. If HB 125 does burden Second Amendment conduct, HB 125 passes intermediate scrutiny.

If the Court determines that HB 125 burdens protected Second Amendment conduct, which it should not, the Court should apply intermediate scrutiny and uphold HB 125. A statute regulating firearms passes intermediate scrutiny if the government's objective is "significant, substantial, or important" and there is a "reasonable fit between the challenged regulation and the asserted objective." *Silvester v. Harris*, 843 F.3d 816, 821-23 (9th Cir. 2016) (collecting cases),

*cert. denied sub nom. Silvester v. Becerra*, 138 S. Ct. 945 (2018). "The test is not a strict one," and it does not require that the government select "the least restrictive means of furthering a given end." *Id.* at 827.

Ghost gun kits and unserialized, untraceable, and undetectable firearms are threats to public safety because they circumvent background checks and cannot be traced through law enforcement databases. *Marzzarella*, 614 F.3d at 98 (recognizing that the prevalence of unserialized firearms "makes it more difficult for law enforcement to gather information on firearms recovered in crimes"). "It is self-evident" that public safety is an important government interest. *Chovan*, 725 F.3d at 1139; *see also Jackson v. City and County of San Francisco*, 746 F.3d 953, 965 (9th Cir. 2014). Additionally, other courts have previously recognized that "preserving the ability of law enforcement to conduct serial number tracing – effectuated by limiting the availability of untraceable firearms – constitutes a substantial or important interest." *Palmer v. Sisolak,* C.A. No. 3:21-cv-00268-MMD-WGC (D. Nev. Jul. 26, 2021); *Pena v. Lindley*, 898 F.3d 969, 982 (9th Cir. 2018), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct. 108 (2020). Thus, HB 125 satisfies the first prong of intermediate scrutiny.

Because HB 125 only targets unserialized firearms that are not within a categorical exception, that bypass background checks by virtue of self-assembly, and that are untraceable without a serial number, it is a reasonable fit for achieving the State's objectives of decreasing the threat that unserialized firearms pose to public safety and preserving law enforcement's ability to trace firearms. *See Marzzarella*, 614 F.3d 85, 99 (3d Cir. 2010) (holding that "[r]egulating the possession of un[serialized] firearms" fits "closely with the interest in ensuring the traceability of weapons"). HB 125 "reaches only conduct creating a substantial risk of rendering a firearm

4

untraceable." *Id.* at 98.  It does not prevent any Delaware citizen who is legally permitted to obtain a firearm from purchasing a serialized firearm for home defense.

Plaintiffs argue that California and Connecticut have adopted different measures to regulate ghost guns and, because other states adopted measures that Plaintiffs apparently prefer, HB 125 must be unconstitutional.  Ans. Br. at 9.  Not so.  Plaintiffs cite to no case law to support their argument that Delaware is required to adopt Plaintiffs' preferred regulatory scheme.  *See Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018) (holding the court "must allow the government to select among reasonable alternatives in its policy decisions"), *cert. denied sub nom. Pena v. Haron*, 141 S. Ct. 108 (2020).  That other states implemented different regulatory schemes to address the widespread issues that ghost guns create does not change the fact that HB 125 is a reasonable fit with its important objective.

HB 125 is tailored to the problem of ghost guns – it targets unserialized, untraceable, and undetectable firearms that bypass background checks by the virtue of self-assembly, and that are untraceable without a serial number.  *See also Palmer v. Sisolak,* C.A. No. 3:21-cv-00268-MMD-WGC (D. Nev. Jul. 26, 2021) (holding that regulating ghost guns is a "reasonable fit for achieving the government's objectives of decreasing the threat that unserialized firearms pose to public safety and preserving law enforcement's ability to trace firearms related to violent crimes").  HB 125 meets intermediate scrutiny and is constitutional.[1]

---

[1] Without identifying what core of the Second Amendment is severely burdened by HB 125, *see Silvester v. Harris*, 843 F.3d at 821, Plaintiffs argue that strict scrutiny is required.  Ans. Br. at 10-11.  Even under strict scrutiny, HB 125 is constitutional. A firearms law passes strict scrutiny if it is "narrowly tailored to serve a compelling state interest." *Marzzarella*, 614 F.3d at 99.  Crime prevention and investigating gun violence are compelling interests.  *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 749 (1987)); *see also* Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722 (the ATF recognizing that unserialized ghost guns present a real threat); Andrew W. Eichner, *Crime in the Age of Printable Guns: Methodologies & Obstacles to Prosecuting Federal Offenses Involving 3D-Printed Firearms*, 45 VT. L. REV. 189, 216 (2020)

## II. HB 125 does not violate the Fifth Amendment takings clause.

HB 125 does not appropriate Plaintiffs' property nor is it a per se taking, thus HB 125 does not violate the Fifth Amendment takings clause. Courts have regularly found that state laws that require dispossession, but not appropriation by the state, of person property are not compensatory takings. *See Hamilton v. Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146 (1919); *Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979). Recently, federal courts have concluded that the ATF did not effect a taking when it banned bump-stocks, requiring citizens to sell their bump-stocks or move them to a different state. *Guedes v. ATF*, 2021 WL 663183, at *2 (D.D.C. Feb. 19, 2021) (collecting cases). Federal courts have already rejected the takings argument made by plaintiffs in other cases challenging similar regulations on unserialized firearms as well as in connection with bump-stock bans. *Palmer v. Sisolak,* C.A. No. 3:21-cv-00268-MMD-WGC (D. Nev. Jul. 26, 2021); *Fahr v. City of San Diego*, 2021 WL 4895974, at *12 (S.D. Cal. Oct. 20, 2021); *Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 366 (4th Cir. 2020); *McCutchen v. United States*, 145 Fed. Cl. 42, 54 (2019), *aff'd* 14 F.4th 1355 (Fed. Cir. 2021). In the instant case, HB 125 does not appropriate unserialized ghost guns by the state but instead requires Plaintiffs to dispossess or more their unserialized guns out of state. Such measure does not constitute a taking under the Fifth Amendment.

Likewise, a government does not need to compensate owners when it prohibits a type of personal property through a valid law. *Md. Shall Issue*, *Inc.*, 963 F.3d at 366-67 (rejecting an

---

("Firearms tracing has become a critical tool for modern firearms investigations and prosecutions," which the prevalence of ghost guns threatens to upend). HB 125 was narrowly tailored to serve the State's compelling interest because it leaves intact Plaintiffs' ability to use any and all serialized firearms to defend their homes while concurrently making it harder for prohibited persons to obtain firearms, and by proscribing possession of a firearm that would be untraceable if used in a crime.

attempt to extend this form of categorical takings to a firearm regulation), *cert. denied,* No. 20-855 2021 WL 1725174 (2021). The police power exception of the Takings Clause provides that "[a] prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking." *Mugler v. Kansas*, 123 U.S. 623, 668 (1887). "If [a law] is otherwise a valid exercise of the [government's] police powers, the fact that it deprives the property of its most beneficial uses does not render it unconstitutional." *Goldblatt v. Hempstead*, 369 U.S. 590, 592 (1962) (citations omitted). HB 125 seeks to regulate ghost guns to eliminate unserialized, untraceable firearms, thereby promoting and protecting the public health, safety, and general welfare of the citizens of the State of Delaware.

Several other courts analyzing firearms restrictions in the context of the police power exception to the Takings Clause have reached similar conclusions. *See Fahr*, 2021 WL 4895974, at *13 (holding that prohibition on unserialized firearms and firearms components did not constitute a physical or regulatory taking); *Adkins v. United States*, 82 Fed. Cl. 619, 623-24 (2008) (holding that prohibition on the sale of machine guns to anyone other than law enforcement agencies did not constitute a physical or regulatory taking); *Fesjian*, 399 A.2d 861 (holding that a statue requiring machine guns denied registration be sold, surrendered, or disposed, was a valid exercise of police power thereby not a taking); *Rupp v. Becerra*, 2018 WL 2138452, *8-9 (C.D. Cal. May 9, 2018) (dismissing a takings claim on the grounds that a California prohibition on certain weapons represented an exercise of police power and not a taking).

HB 125 is a valid exercise of the State's police power and does not constitute a taking. Therefore, Plaintiffs' Fifth Amendment takings clause claim should be dismissed.

7

### III. HB 125 does not violate the First Amendment.

Although "speech" under the First Amendment is not limited to written or spoken words, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995), the Supreme Court has made clear that the First Amendment does not encompass all types of conduct. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989) ("[W]e have rejected the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" (quotations omitted)). At a minimum, conduct must be sufficiently expressive and communicative to other persons to qualify for protection under the First Amendment. *See Hurley*, 515 U.S. at 569. Here, the Instructions Ban does not ban distribution of ideas or speech. Instead, the Instructions Ban criminalizes a computer code that performs a rote function which requires no human interaction or involvement. This type of computer code does not qualify as constitutionally protected speech. *See CFTC v. Vartuli*, 228 F.3d 94, 111 (2d Cir. 2000) (holding that an automated system which "induce[d] action without the intercession of the mind or the will of the recipient" was not constitutionally protected speech). The critical question is whether the files subject to the Instructions Ban advance the "values served by the First Amendment." *Vartuli*, 228 F.3d at 111. In the instant case, the files subject to the Instructions Ban do not. Instead, the files subject to the Instruction Ban disseminate a computer code which runs an automatic function to build a firearm via a three-dimensional computer. Thus, the files subject to the Instructions Ban are not constitutionally protected.

### A. The Instructions Ban is a valid, content-neutral regulation of Plaintiffs' conduct that does not infringe First Amendment Rights.

The Instructions Ban is a content-neutral speech restriction that regulates the conduct of distributing untraceable firearms for the purpose of advancing public safety. The computer files subject to the Instructions Ban function to automatically produce such weapons or their

components. Whatever expressive value may exist in the theory of these files, they function to create a firearm. Thus, the State may restrict their distribution on the basis of their functionality to create untraceable firearms. HB 125 is not the product of government hostility toward the spread of ideas about 3D printing of firearms, but rather against the means to easily do so. Accordingly, HB 125 is not directed at the content of expression. For this reason, strict scrutiny does not apply to a First Amendment analysis of the Instructions ban.

Under intermediate scrutiny, the State's regulation of "'speech' and 'non-speech' elements [] united in a course of conduct" must be sustained if it is "within the constitutional power of the government, it furthers an important or substantial government interest, the government interest is unrelated to the suppression of free expression, and the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Kleinman v. City of San Marcos*, 597 F.3d 323, 328 (5th Cir. 2010) (quoting *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968)). As set forth above, these standards are met by HB 125.

### B. The Instructions Ban is not a facially unconstitutional prior restraint.

The Instructions Ban does not constitute an unlawful prior restraint on speech despite Plaintiffs' arguments to the contrary. The classic administrative prior restraint is what is often described as a licensing scheme for speech, where the plaintiff's right to speak is conditioned on a prior approval from the government. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988). Such a prior restraint is contrasted with prohibitions on certain speech enforced by punishment *after* the fact, which is not a prior restraint. *See id.* at 764. The Instructions Ban does not represent a licensing scheme or a prior restraint. Nor is HB 125 directed at expressive speech, but instead is directed to addressing the act of distributing untraceable firearms and related technical data, a category of conduct that is not characteristically expressive.

### C. The Instructions Ban is not unconstitutionally overbroad.

Plaintiffs' overbreadth claim cannot meet the overbreadth standards. First, "[c]ourts need not entertain an overbreadth challenge 'where the parties challenging the statute are those who desire to engage in protected speech that the overbroad statute purports to punish.'" *U.S. v. Hicks*, 980 F.2d 963, 969 (5th Cir. 1992) (quoting *Brockett v. Spokane Arcades*, 472 U.S. 491, 504 (1985)). Thus, no overbreadth challenge is "appropriate if the first amendment rights asserted" on behalf of third parties are "essentially coterminous" with those asserted by the plaintiffs themselves. *Id.* Here, as the Supreme Court observed in *Brockett*, Plaintiffs do not allege any "want of a proper party to challenge the [statute], no concern that the attack on the [statute] will be unduly delayed or protected speech discouraged." 472 U.S. at 504.

Second, even if the merits of Plaintiffs' overbreadth claim are reached, the Instructions Ban has a substantially permissible purpose. It serves the vital purpose of ensuring public safety. Accordingly, no substantial overbreadth exists here, and Plaintiffs are not likely to succeed on this claim. *See U.S. v. Chi Mak*, 683 F.3d 1126, 1136 (9th Cir. 2012) (rejecting overbreadth challenge).

Accordingly, Plaintiffs' First Amendment claim should be dismissed.

### CONCLUSION

WHEREFORE, Defendants respectfully request that this Honorable Court dismiss Plaintiffs' Complaint for failure to state a claim and grant them such further relief as this Court deems just and proper.

    STATE OF DELAWARE
    DEPARTMENT OF JUSTICE

    */s/ Kenneth L. Wan*
    Patricia A. Davis (No. 3857)
    Kenneth L. Wan (No. 5667)
    Deputy Attorneys General
    Carvel Building
    820 N. French Street, 6th Floor

|  |  |
|---|---|
|  | Wilmington, DE 19801 <br> (302) 577-8400 <br> Email: PatriciaA.Davis@delaware.gov <br> Kenneth.wan@delaware.gov |
|  | *Counsel for Defendant* |
| Date: January 10, 2022 |  |