

*Bradley P. Lehman, Esq.*
*302-416-3344*
*blehman@gsbblaw.com*

February 14, 2022

**Via CM/ECF**
The Honorable Maryellen Noreika
United States District Court, District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 19 Room 4324
Wilmington, DE 19801

      RE:    *Rigby, et al., v. Jennings*
               C.A. No. 1:21-cv-1523-MN

Dear Judge Noreika:

      We represent the Plaintiffs in the above-referenced action. Pursuant to Your Honor's Order dated February 8, 2022 (D.I. 29), granting Plaintiffs' Motion for Leave to Supplement Reply in Support of Motion for Preliminary Injunction (D.I. 28), please allow this letter to serve as Plaintiffs' supplemental letter brief in response to the letter of Defendant Attorney General Kathy Jennings ("Defendant") dated February 4, 2022, with attached Exhibit A (D.I. 27, 27-1) and Defendant's letter dated February 10, 2022 (D.I. 30). Your Honor's Order dated January 27, 2022 (D.I. 26), required "that, if Defendant intends to introduce evidence related to whether the challenged provisions pass constitutional muster, it shall inform the Court and submit any such evidence (or a proffer of evidence that may be adduced at a hearing) . . . ."

      Defendant's counsel, in the February 4 letter responding to Your Honor's Order, characterized Defendant's Exhibit A (D.I. 27-1; "Exhibit A") as "data collected by the Delaware State Police demonstrating the rise in 'ghost gun' cases over the last few years" (*see* D.I. 27). However, as discussed at length below, this purported "data" is nothing more than a haphazard, unverified collection of anecdotes devoid of probative value, statistical merit, and context. Moreover, from an empirical standpoint, Exhibit A, far from demonstrating a rising public safety problem in need of a legislative solution, actually provides valuable evidence that the existence of self-manufactured firearms (SMFs)—referred to as "ghost guns" by Defendant—is *not* a problem in need of a legislative solution, especially not a "solution" that categorically and indiscriminately bans an entire class of commonly-owned, and thus constitutionally-protected, firearms.

1201 N. ORANGE STREET
SUITE 300
WILMINGTON, DELAWARE 19801
P: 302. 425. 5800 | F: 302. 425. 5814

www.GSBBLAW.com

8 PENN CENTER
1628 JOHN F. KENNEDY BLVD, SUITE 1901
PHILADELPHIA, PENNSYLVANIA 19103
P: 215. 238. 0010 | F: 215. 238. 0016

Judge Noreika
February 14, 2022
Page 2

In that same February 4 letter, Defendant's counsel also "proffer[ed] that, at a hearing, it is anticipated that research, reports, and/or statistics relied upon by the Delaware Legislature in developing HB 125 would be submitted as evidence." (D.I. 27). In response to this ambitious "proffer," Your Honor ordered that "[o]n or before 2/10/2022, Defendant shall submit any such reports or other evidence on which she intends to rely so that Plaintiffs may have a fair opportunity to respond." (*See* D.I. 29). In her letter of February 10, Defendant indicated that she "is not submitting additional evidence and will rely on the evidence previously submitted on February 4, 2022." (D.I. 30). Defendant's striking failure to submit *anything* to back up her proffer of "research, reports, and/or statistics" is telling—this is a clear indication that Defendant simply does not have any evidence sufficient to meet the State's burden of justification under heightened scrutiny. *See Hassan v. City of New York*, 804 F.3d 277, 305 (3d Cir. 2015) (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)) (cited by this Court in D.I. 26) ("[T]he burden of justification under both intermediate and strict scrutiny 'is demanding and . . . rests entirely on the state[.]'").

Accordingly, and for the reasons set forth below, the purported evidence contained in Exhibit A only confirms that the challenged provisions of HB 125 (11 *Del. C.* § 1459A; 11 D*el. C.* §§ 1463(a), (b), and (c)(1); and 11 *Del. C.* § 1463(c)(2)) are unconstitutional.

### Response to Defendant's February 4, 2021, Submission

Exhibit A contains 57 separate instances in which Delaware law enforcement officers purportedly documented the presence of an SMF. The key points revealed from this data are as follows:

> •**No instance in which the presence or absence of a serial number was material:** In *none* of the 57 instances is there any evidence that law enforcement was hindered or frustrated by the lack of a serial number on an SMF. In the only instance involving a defaced firearm, officers recovered a "handgun with an obliterated serial number" (January 2021). Thus, the presence or absence of a serial number was totally immaterial in *every* instance in Exhibit A.
>
> •**No alleged crimes of any kind involving the *use* of an SMF:** Of the 57 instances, 28 involved alleged or possible criminal activity other than illegal *possession* of a firearm (23 instances of alleged drug-related crime, 4 instances of investigated or reported assaults, and 1 investigation into an alleged shooting), but *none* of these 28 instances involved the *use* of an SMF in the commission of any alleged crime, violent or otherwise.[1] In one of the four instances of investigated or reported assault, the assault was apparently committed using a serialized firearm, but the documented SMF was legally possessed by the *victim*

---

[1] One instance (April 2020) references an "investigation into a shooting" which led "to the recovery of a Polymer 80 handgun," although it is unknown from the data presented whether the Polymer 80 was used in the alleged shooting.

(October 2020); in the other three instances of alleged assault, there is no indication that an SMF was used in the assault. There is also no indication that an SMF was used in the investigated shooting. In addition, of the 57 instances described in Exhibit A, 28 involved individuals disqualified from possessing *any* firearm, whether serialized or unserialized— 23 instances involving individuals categorized only as "prohibited persons," three instances involving individuals specifically identified as felons, one instance involving an underage individual, and one instance involving an individual who had been involuntarily committed. Moreover, of the 57 instances, four involved possession of stolen firearms, but *none* of those stolen firearms were SMFs.

•**Multiple instances clearly involving *no* criminal activity at all:** Defendant pads the total number of instances with the inclusion of numerous unequivocally non-criminal episodes. Indeed, five of the 57 instances clearly involved no criminal activity: (January 2020 ["During a traffic stop officers located a privately made firearm in the center console of a vehicle. No crime associated."]; (February 2020 ["During a call for assistance, officers located a Polymer 80/.22 LR. The possessor was not a person prohibited and no crime occurred."]; (August 2020) ["During an emergency call at a residence, officers recovered a Polymer 80 .22 LR privately made firearm. No crime associated with the recovery."]; (September 2020) ["During a verbal domestic officers located a privately made firearm. No crimes associated."]; and (December 2020) ["During a traffic stop, officers located a privately made .556 rifle within the vehicle. Possessor was not a prohibited person."].

•**No link between SMFs and fatalities:** Only *one* of the 57 instances in Exhibit A involved a death (a suicide). No specific cause of death is provided. Thus, it is unknown whether an SMF, or any firearm for that matter, was actually used in connection with the suicide. (October 2020).

•**No statistically significant link between SMFs and injuries:** Only *one* of the 57 instances explicitly involved an injury inflicted by an individual's use of an SMF, and that one instance involved an accidental discharge (a self-inflicted hand wound by a 19-year-old man). (August 2018). Five other instances involved possible injuries (a shooting investigation in April 2020 and the aforementioned assault investigations [two in October 2020, one in December 2020, and one in January 2021]), but for each of these five instances, there is no indication as to what—if any— injuries were sustained, and no indication as to whether any injuries were inflicted by use of an SMF.

•**No evidence that any crimes or investigative problems for law enforcement would have been prevented if HB 125 had been enacted earlier:** Exhibit A reveals that no crimes were committed using an SMF, no investigations were impeded by the existence of SMFs, law enforcement did not encounter any problems unique to SMFs, and "prohibited persons" were already in violation of the law by possessing *any* firearm. In summary, the State has failed to demonstrate that the bans contained in HB 125 would have prevented *any* crimes committed prior to the enactment of HB 125.

- **No mention of 3D printing at all:** Notably, nowhere in Exhibit A is the concept of 3D printing mentioned at all, and none of the incidents described therein is alleged to involve a firearm constructed in Delaware with the aid of a 3D printer. Accordingly, Defendant has submitted absolutely no evidence that could conceivably justify the Instructions Ban.

Exhibit A is also plagued by multiple problems from an evidentiary standpoint. First, Defendant vaguely describes Exhibit A as "data collected by the Delaware State Police . . . ." However, none of the 57 instances described in Exhibit A contains any indication as to which law enforcement agency was involved in the particular instance (*i.e.*, Delaware State Police, New Castle County Police Department, any of Delaware's 37 municipal police departments, or any of Delaware's various other law enforcement bodies).

Second, Exhibit A is largely anecdotal in nature—it is devoid of any information regarding criminal convictions relating to SMFs and almost devoid of any information regarding arrests[2] relating to SMFs. Instead of more concrete data regarding arrests or convictions, Exhibit A consists of vague descriptions without information about the ultimate outcome of each instance: for example, "traffic stops" (17 instances), "investigations" (14 instances), responses to "calls" (4 such instances), and "pedestrian stops" (3 instances).

Third, consistent with Exhibit A's anecdotal nature, there is no indication as to who, or what agency, prepared each of the incident descriptions, or where each of the descriptions was originally sourced. Thus, there is no assurance of the accuracy of the descriptions in each instance.

Fourth, further calling into question the accuracy of the "data" in Exhibit A, there are no specific dates provided for any of these anecdotes, only months.

Fifth, Defendant claims that Exhibit A, which begins with anecdotes starting in August 2018, demonstrates a "*rise* in 'ghost gun' cases over the last few years." (D.I. 27) (emphasis added). Notably, Defendant does not provide any evidence regarding the number of "ghost guns" observed or recovered in Delaware *prior* to August 2018. Thus, Defendant's claim that there has been a "rise" in "ghost gun cases" is pure, self-serving conjecture.

### Response to Defendant's February 10, 2021, Submission

In her letter of February 10, Defendant indicated that she "is not submitting additional evidence and will rely on the evidence previously submitted on February 4, 2022." (D.I. 30). This failure to submit *any* additional evidence—after explicitly claiming that "research, reports, and/or statistics relied upon by the Delaware Legislature in developing HB 125" would be made available in the event of a hearing—confirms that there was no articulable State interest behind the enactment of HB 125, and thus the challenged bans cannot withstand heightened scrutiny. In other

---

[2] Exhibit A contains one instance in which a subject was "interviewed after being arrested in possession of two firearms as a prohibited person for a domestic assault conviction."

words, the State of Delaware enacted the challenged bans merely because it wanted to, not because there was any basis to do so. Indeed, Exhibit A—the State's only "evidence"—is nothing more than a list of anecdotes cobbled together after the fact, reflecting the reality that in passing HB 125 the State was not seeking to solve an actual problem that it took any time to study, but instead hastily enacted the challenged bans in response to a non-existent public safety bogeyman.

In addition to the numerous empirical and evidentiary problems that plague Exhibit A, Defendant has failed to identify any link between Exhibit A and the Delaware legislature's lawmaking process. Indeed, Defendant has provided no indication that the General Assembly was even aware of or considered the incidents described in Exhibit A. The State cannot attempt to justify the challenged bans post-enactment using a list of anecdotal incidents without providing any evidence as to whether the legislature considered these incidents prior to the enactment of HB 125.

In summary, Defendant's inability to present any empirical research, reports, or statistics to supplement Exhibit A should be fatal to her defense of HB 125.

## Conclusion

In light of the foregoing, Defendant cannot credibly claim that the challenged bans contained in HB 125 serve an important government interest in public safety. While Defendant has established that SMFs exist, which is not in dispute, Defendant has utterly failed to show that SMFs present any particular or heightened risk to public safety that could justify the bans contained in HB 125.

Plaintiffs do not believe that Defendant has presented any evidence which requires a hearing; however, Plaintiffs stand ready to present should the Court be inclined to hear oral argument on the pending motions.

Respectfully submitted,

GELLERT SCALI BUSENKELL & BROWN LLC

*/s/ Bradley P. Lehman*
Bradley P. Lehman (No. 5921)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
P: (302) 425-5800
E: blehman@gsbblaw.com

*Attorneys for Plaintiffs*

Judge Noreika<br>
February 14, 2022<br>
Page 6

OF COUNSEL:

JOSHPE MOONEY PALTZIK LLP
Edward Paltzik
1407 Broadway, Suite 4002
New York, NY 10018
P: (212) 344-8211
E: epaltzik@jmpllp.com
*Admitted Pro Hac Vice*


Cc: Patricia A. Davis, Esq. (via ECF)
    Kenneth L. Wan. Esq. (via ECF)