

**KATHLEEN JENNINGS**
ATTORNEY GENERAL

**DEPARTMENT OF JUSTICE**
NEW CASTLE COUNTY
820 NORTH FRENCH STREET
WILMINGTON, DELAWARE 19801

CIVIL DIVISION (302) 577-8400
FAX: (302) 577-6630

July 1, 2022

<u>**Via CM/ECF**</u>
The Honorable Maryellen Noreika
United States District Court, District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 19 Room 4324
Wilmington, DE 19801

      RE:    *Rigby, et al., v. Jennings*
                C.A. No. 1:21-cv-1523-MN

Dear Judge Noreika:

      Pursuant to Your Honor's Order dated June 23, 2022, ordering the Parties to submit additional briefing regarding the effect of the Supreme Court's decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen* ("*Bruen*") No. 20-843, 2022 WL 2251305 (U.S. June 23, 2022), on the outstanding motions, Defendant, by and through the undersigned counsel submits the following:

      First, it is important to note that, while the New York law that was declared unconstitutional in *Bruen* prohibited most law-abiding citizens from carrying legally owned handguns in public for self-defense purposes, the Delaware law at issue here does not, in any way, prohibit law-abiding citizens from carrying legally owned handguns in public for self-defense.

      The Defendant's position is that *Bruen* simplifies the analysis here and strengthens Defendant's contention that the Second Amendment does not protect ghost guns or ghost gun components. The *Bruen* opinion simplifies the analysis by eliminating the two-part test that the Courts of Appeals have been using to analyze Second Amendment challenges to firearm regulations. The Court's analysis in *Bruen* strengthens Defendant's contention that the manufacturing and possession of ghost guns and the components of ghost guns are not protected by the Second Amendment by making clear that the Second Amendment only protects guns that are in common use and for lawful purposes at the time of the law or regulation in question. *Bruen* provides that laws regulating guns not in common use are supported by historical tradition.

1

Additionally, *Bruen* repeats that States can impose regulations concerning who can own a gun and what type of gun can be owned, and the Court provides examples of regulations that are allowed. For these types of regulations to work, Defendant contends that it is necessary for guns to be recorded, documented, and traceable.

In *Bruen*, the Court begins its analysis by recounting that in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, *Ill.*, 561 U.S. 742 (2010) it "held that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." *Bruen*, 2022 WL 2251305, *7.

*Bruen* holds that the Second Amendment extends to self-defense outside the home, subject to certain reasonable, well-defined restrictions. *Id.* at *33.

In addition, *Bruen* rejects the two-step analysis created by the Courts of Appeals. *Id.* at **7-8. Therefore, the two-step analysis discussed in the pending motions in the instant case is no longer applicable. *See* D.I. 20, at 12-14.

*Bruen* clarifies the proper framework for analyzing Second Amendment challenges to regulations as established in *Heller*:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 2022 WL 2251305, at *8.

*Bruen* explains that its textual analysis of the Second Amendment suggests that the "normal and ordinary" meaning of the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at *9. The Court further explains that "individual self-defense is 'the central component' of the Second Amendment right." *Id.* at *13.

Important to the instant case, the plain text of the Second Amendment does not discuss the self-manufacturing of firearms. Nor does the Supreme Court's interpretation of the Second Amendment suggest that the Second Amendment's plain text covers the activity of self-manufacturing guns or gun components. And Plaintiffs do not point to any case law holding that the plain text of the Second Amendment covers the self-manufacturing of guns or gun components.

Moreover, *Bruen* reiterates that the Second Amendment does not prohibit qualifications on the commercial sale of firearms. *Id.* at *39. As Defendant mentions in the Opening Brief in Support of the Motion to Dismiss, the Court in *Heller* recognized longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms

in sensitive places such as schools and government buildings, or *laws imposing conditions and qualifications on the commercial sale of arms*." *Heller*, 554 U.S. at 626-27 (emphasis added). The *Heller* Court identified these as "presumptively lawful regulatory measures…" *Id.* at 627 n.26. In his concurrence in *Bruen*, Justice Kavanaugh, with the Chief Justice joining, reiterates this point by stating that nothing in the *Bruen* opinion should be taken to cast doubt on the "laws imposing conditions and qualifications on the commercial sale of arms." *Bruen*, 2022 WL 2251305, at *39. Justice Kavanaugh includes, in the text, the footnote from *Heller* referring to such laws as "presumptively lawful regulatory measures…" *Id.*

Furthermore, *Bruen* firmly establishes that the Second Amendment does not extend to guns that are not in common use and typically possessed by law-abiding citizens for lawful purposes. The *Bruen* opinion states that "the Second Amendment protects only the carrying of weapons that are those 'in common use at the time'…" *Id.* at *22. In his concurrence, Justice Kavanaugh, joined by the Chief Justice, also explains that the types of weapons protected by the Second Amendment are "those in common use at the time." *Id.* at *39. In *Heller*, which the *Bruen* Court reaffirms, the Court recognizes that the "Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625.

Justice Kavanaugh, in his concurring opinion, joined by the Chief Justice, further states that the limitation on guns not in common use "is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Bruen*, 2022 WL 2251305, at *39. And in the main opinion, Justice Thomas also notes that the Court has found that the interpretation that the Second Amendment protects the possession and use of weapons that are "in common use at the time" is supported by this historical tradition. *Id.* at *9.

Therefore, under the reasoning in *Bruen*, if 'ghost guns' are not in common use and typically possessed by law-abiding citizens for lawful purposes today the Second Amendment does not protect them, and such a regulation would be supported by historical tradition. Plaintiffs allege no facts demonstrating that self-manufactured or self-assembled, unserialized and untraceable guns are in "common use" and typically owned for lawful purposes today.

Indeed, 3D printing is a new and developing technology and general awareness of the possibility of 3D-printed firearms is a recent development. For example, Plaintiffs cite a source that shows that in 2018 some Members of Congress expressed concern that untraceable AR-15s could proliferate with the "growing availability of 3D printer technology." *See* WILLIAM J. KROUSE, GUN CONTROL: 3D-PRINTED AR-15 LOWER RECEIVERS, Cong. Res. Serv. Insight, 2 (Aug. 22, 2018), https://fas.org/sgp/crs/misc/IN10957.pdf (source cited by Plaintiffs in D.I. 21, at p. 12). The study also states that "[t]he possibility that criminals could use three dimensional-printing (3D-printing) technology to produce 'untraceable' firearms, including AR-15s, is an issue of growing concern for some lawmakers." *Id.*

Moreover, Courts have recognized that firearms without serial numbers are not typically possessed by law-abiding citizens but are instead commonly desired and used by criminals. *See United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010) ("Because a firearm with a serial number is equally effective as a firearm without one, there would appear to be no compelling reason why a law-abiding citizen would prefer an unmarked firearm. These weapons would then

3

have value primarily for persons seeking to use them for illicit purposes."); *Pena v. Lindley*, 898 F.3d 969, 982 (9th Cir. 2018) ("Serial number tracing 'enabl[es] law enforcement to gather vital information about recovered firearms.'"); *United States v. Carter*, 421 F.3d 909, 910 (9th Cir. 2005) (lower court noting that untraceable weapons "have a greater street value ... or a greater flexibility to be utilized in [il]licit activities."); *Palmer v. Sisolak*, 2022 WL 960594, at *5 (D. Nev. Mar. 29, 2022) (noting that the Nevada Assemblywoman who sponsored a bill concerning unserialized guns "echoed Congress' concerns when she stated that unserialized firearms are a threat to public safety because they circumvent background checks, and they are untraceable if used in a crime."); *Fahr v. City of San Diego*, 2021 WL 4895974, at *2 (S.D. Cal. Oct. 20, 2021) ("[T]he seizure and recovery of ghost guns by law enforcement from individuals unauthorized to possess firearms has risen sharpy in recent years, as reflected by City and ATF statistics."); *Yukutake v. Conners*, 554 F. Supp. 3d 1074, 1089 n. 15 (D. Haw. 2021) (noting that a review of legislative history revealed that the Hawaii State legislature amended a statute because it "was concerned because 'individuals who are otherwise prohibited from owning or possessing firearms under state law can assemble these 'ghost guns,' thereby bypassing background checks, registration, and other legal requirements.'").

Here, Plaintiffs contend that the Second Amendment protects their unserialized and untraceable firearms. But Plaintiffs do not explain why a law-abiding citizen would prefer an unserialized and untraceable firearm, nor do they provide any lawful purpose for possessing unserialized and untraceable firearms, when serialized and traceable firearms have long been the norm and are widely available. The regulation prohibiting ghost guns is, therefore, according to the reasoning in *Bruen*, supported by the historical tradition of prohibiting dangerous and unusual weapons, *i.e.,* guns not in common use at the time of the regulation. *See Bruen*, 2022 WL 2251305, at *39 (Justice Kavanaugh explaining that this limitation "is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons.").

Finally, *Bruen* endorses the right of states to impose regulations on guns that are only possible if guns are documented, serialized, and traceable. Justice Thomas notes that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at *10. He repeats that, "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose…" *Id.* Justice Kavanaugh, joined by the Chief Justice, in a concurring opinion, states that "the Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." *Id.* at *38. Justice Kavanaugh explains that 43 States employ objective shall-issue licensing regimes that "may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* at *39. Justice Kavanaugh notes that these types of laws are acceptable, explaining that "the Second Amendment allows a 'variety' of gun regulations." *Id.* And laws prohibiting the possession of firearms by felons and the mentally ill are presumptively lawful regulatory measures. *Id.* Justice Alito, in his concurring opinion also notes that the decision "does not expand the categories of people who may lawfully possess a gun," noting federal law that forbids the possession of a handgun by a person under the age of 18. *Id.* at *35.

Ghost guns, which are unrecorded, unserialized, and untraceable, render these Supreme

Court-approved laws and regulations ineffective and pointless. For example, makers and possessors of ghost guns could evade regulations requiring background checks, laws against felons possessing guns, laws prohibiting people under 18 from possessing guns, and laws prohibiting the mentally ill from possessing guns.

Respectfully,

/s/ *Andrew R. Fletcher*
Andrew R. Fletcher (6612)
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Andrew.Fletcher@delaware.gov
Attorney for Defendant