## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| JOHN RIGBY, ALAN KNIGHT, and FIREARMS POLICY COALITION, INC., | : : : | C.A. No. 1:21-cv-01523-MN |
|  | : : |  |
| Plaintiffs, | : : |  |
| v. | : : |  |
| KATHY JENNINGS, Attorney General of Delaware, | : : : |  |
| Defendant. | : : |  |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**
Patricia A. Davis (#3857)
Kenneth L. Wan (#5667)
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
*Attorneys for Defendant*

Date: April 15, 2024

**TABLE OF CONTENTS**

**PAGE**

TABLE OF CITATIONS ..................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................. 1

STATEMENT OF FACTS ............................................................................................. 2

ARGUMENT ................................................................................................................... 2

  I.   PLAINTIFFS FAILED TO DEMONSTRATE THAT THE GHOST GUNS AND GHOST FRAMES BANS VIOLATE THE SECOND AMENDMENT ..................................... 3

      A.  THE SECOND AMENDMENT STANDARD ........................................................... 3

      B.  PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THE BANNED ITEMS ARE COVERED UNDER THE SECOND AMENDMENT .................... 4

      C.  PLAINTIFFS' ATTACKS ON A.G. JENNINGS'S EXPERTS FAIL .................. 8

      D.  PLAINTIFFS' NON-*BRUEN* RELATED ARGUMENTS FAIL TO SUPPORT THEIR MOTION FOR SUMMARY JUDGMENT ............................................. 12

  II.  HB 125 DOES NOT VIOLATE THE FIRST AMENDMENT ......................................... 13

      A.  THE INSTRUCTIONS BAN IS NOT THE PUBLISHING OF AN ITEM OF EXPRESSIVE SPEECH ......................................................................................... 13

      B.  THE INSTRUCTIONS BAN IS A VALID, CONTENT-NEUTRAL REGULATION OF PLAINTIFFS' CONDUCT THAT DOES NOT INFRINGE FIRST AMENDMENT RIGHTS ......................................................................... 13

      C.  THE INSTRUCTIONS BAN IS NOT UNCONSTITUTIONALLY OVERBROAD ......................................................................................................... 15

  III.  PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR FIFTH AND FOURTEENTH AMENDMENTS CLAIMS .................................................... 17

  IV.  PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM ........................... 18

  V.  THE BALANCE OF THE EQUITIES DISFAVORS A PERMANENT INJUNCTION... 19

CONCLUSION ................................................................................................................. 19

i

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                      <u>PAGE</u>

*Akins v. United States*,
82 Fed. Cl. 619 (2008) ................................................................................................17

*Anderson  v. Liberty Lobby, Inc.*,
477 U.S.  242 (1986).....................................................................................................3

*Betts v. New Castle Youth Dev. Ctr.*,
621 F.3d 249 (3d Cir. 2010) .......................................................................................17

*Bevis v. City of Naperville, Illinois*,
85 F.4th 1175 (7th Cir. 2023) .....................................................................................4

*City of Chicago v. Morales*,
527 U.S. 41 (1999) .....................................................................................................15

*Clark v. Cmty. For Creative Non-Violence*,
468 U.S. 288 (1984).....................................................................................................13

*Cunningham v. M & T Bank Corp.*,
814 F.3d 156 (3d Cir. 2016) .........................................................................................2

*D.C. v. Heller*,
554 U.S. 570 (2008) ...........................................................................................3, 4, 5, 6

*Def. Distributed v. Platkin*,
2023 WL 6389744 (D.N.J. Sept. 29, 2023) ...............................................................13

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*,
664 F. Supp. 3d 584 (D. Del. 2023) .................................................................3, 4, 18

*Fahr v. City of San Diego*,
2021 WL 4895974 (S.D. Cal. Oct. 20, 2021) .....................................................12, 17

*Friedman v. City of Highland Park, Ill.*,
577 U.S. 1039 (2015) ...................................................................................................6

*Gibson v. Mayor & Council of City of Wilmington*,
355 F.3d 215 (3d Cir. 2004) .......................................................................................16

*Hohe v. Casey*,
868 F.2d 69 (3d Cir. 1989)...........................................................................................18

*Knopick v. Connelly*,
639 F.3d 600 (3d Cir. 2011) ............................................................................................. 3

*Maryland v. King*,
567 U.S. 1301 (2012) ...................................................................................................... 19

*Maryland Shall Issue, Inc. v. Moore*,
86 F.4th 1038 (4th Cir. 2023),
*reh'g en banc granted,* 2024 WL 124290 (4th Cir. Jan. 11, 2024) ............................... 4

*Miller v. Bonta*,
2023 WL 6929336 (S.D. Cal. Oct. 19, 2023) .................................................................. 6

*Nat'l Ass'n for Gun Rts. v. Lamont*,
2023 WL 4975979 (D. Conn. Aug. 3, 2023) ................................................................... 4

*New York v. Arm or Ally, LLC*,
2024 WL 756474 (S.D.N.Y. Feb. 23, 2024) ............................................................... 6, 7

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
142 S. Ct. 2111 (2022) ............................................................................................ *passim*

*Ocean State Tactical, LLC v. Rhode Island*,
646 F. Supp. 3d 368 (D.R.I. 2022), *aff'd*, 2024 WL 980633 (1st Cir. Mar. 7, 2024) .................... 4

*Opera Sols., LLC v. Schwan's Home Serv., Inc.*,
243 F. Supp. 3d 515 (D. Del. 2017) ............................................................................ 6, 9

*Oregon Firearms Fed'n, Inc. v. Brown*,
644 F. Supp. 3d 782 (D. Or. 2022) ................................................................................. 4

*Palmer v. Sisolak*,
594 F. Supp. 3d 1215 (D. Nev. 2022) ........................................................................... 17

*Rocky Mountain Gun Owners v. Polis*,
2023 WL 5017253 (D. Colo. Aug. 7, 2023) .................................................................... 4

*Rupp, v. Bonta*,
2024 WL 1142061 (C.D. Cal. Mar. 15, 2024) ................................................................ 4

*Rupp v. Becerra*,
2018 WL 2138452 (C.D. Cal. May 9, 2018) ................................................................. 17

*Staples v. United States*,
511 U.S. 600 (1994) ........................................................................................................ 6

*TD Bank N.A. v. Hill*,
928 F.3d 259 (3d Cir. 2019) ........................................................................................ 18

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994) ............................................................................................... 13, 14

*United States v. Dangleben*,
2023 WL 6441977 (D.V.I. Oct. 3, 2023) ..................................................................... 5, 7

*United States v. Matusiewicz*,
84 F. Supp. 3d 363 (D. Del. 2015),
*aff'd sub nom. United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018) ................. 15, 16

*United States v. O'Brien*,
391 U.S. 367 (1968) ...................................................................................................... 14

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001) .......................................................................................... 13

*Virginia v. Hicks*,
539 U.S. 113 (2003) ...................................................................................................... 16

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) ...................................................................................................... 14

*Waters Corp. v. Agilent Techs. Inc.*,
410 F. Supp. 3d 702 (D. Del. 2019) .............................................................................. 19

## STATUTES

11 *Del. C.* § 1459A ......................................................................................................... 1

11 *Del. C.* § 1463 ............................................................................................................ 1

## OTHER RULES AND AUTHORITIES                                          PAGE

Fed. R. Civ. P. 56 ............................................................................................................ 2

U.S. CONST. Amend. II .................................................................................................... 3

87 Federal Register 24652, April 26, 2022 ............................................................... 12, 13

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs John Rigby, Alan Knight, and Firearms Policy Coalition, Inc. (collectively, "Plaintiffs") filed their Complaint against Governor John C. Carney ("Governor") and Attorney General Kathleen Jennings ("A.G. Jennings") on October 27, 2021. D.I. 1. Plaintiffs' Complaint challenges the constitutionality of House Bill 125 ("HB 125"). They allege that HB 125 violates their rights under the First, Second, Fifth, and Fourteenth Amendments to the U.S. Constitution. *Id.* at 26-38. Specifically, Plaintiffs claim that 11 *Del. C.* § 1459A ("Ghost Frame Ban") and 11 *Del. C.* § 1463(a), (b), and (c)(1) ("Ghost Guns Ban") (collectively, "Bans") violate their Second, Fifth, and Fourteenth Amendments rights, and 11 *Del. C.* § 1463(c)(2) ("Instructions Ban") violates their First and Fourteenth Amendments rights. *Id.* On December 30, 2021, the Parties stipulated to the dismissal of the Governor, leaving A.G. Jennings as the sole remaining Defendant. D.I. 23, 24.

On November 2, 2021, Plaintiffs filed a motion for a preliminary and permanent injunction. D.I. 5. On September 23, 2022, the Court granted the motion for a preliminary injunction in part, and denied the motion for a permanent injunction. D.I. 6, 11, 16, 39. On March 1, 2023, the Court issued a scheduling order. D.I. 45. The only discovery that occurred is A.G. Jennings's production of three expert declarations. D.I. 48. Plaintiffs provided no discovery. Discovery is now closed. Both Plaintiffs and A.G. Jennings filed Motions for Summary Judgment. D.I. 57-60. This is A.G. Jennings's Opposition to Plaintiff's Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

1. Plaintiffs are not entitled to summary judgment on their Second Amendment claim because they failed to establish that untraceable firearms or unserialized privately-made firearms

("ghost guns"), or unserialized firearm frames and receivers ("ghost frames") are covered under the Second Amendment.

2. Even if ghost guns and ghost frames were covered under the Second Amendment, Plaintiffs are not entitled to summary judgment on their Second Amendment claim because the regulations on ghost guns and ghost frames are consistent with this Nation's historical tradition of firearm regulation.

3. Plaintiffs are not entitled to summary judgment on their First Amendment claim because the Instructions Ban does not regulate speech, but even if it did, it survives First Amendment scrutiny.

4. Plaintiffs are not entitled to summary judgment on their Fifth Amendment claim because HB 125 is valid.

5. Plaintiffs are not entitled to summary judgment on their Fourteenth Amendment claim because no such claim exists.

## STATEMENT OF FACTS

A.G. Jennings incorporates the statement of facts in her Opening Brief in Support of her Motion for Summary Judgment ("Opening Brief") (D.I. 58 at 2-8)[1] by reference as if fully stated herein.

## ARGUMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016).

---

[1] Pagination references to the original page numbers located at the bottom of the page.

To defeat summary judgment, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986). In considering summary judgment, the Court "must view the record and draw inferences in a light most favorable to the non-moving party." *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (citation and internal quotations omitted). Plaintiffs are not entitled to summary judgment on any of their claims.

I.     **Plaintiffs failed to demonstrate that the Ghost Guns and Ghost Frames Bans violate the Second Amendment.**

A.  **The Second Amendment Standard.**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. "Like most rights, the right secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2128 (2022) (quoting *Heller I*, 554 U.S. at 626).

*Bruen* sets the standard for Second Amendment challenges. Under *Bruen*, the Court must first determine if the plain text of the Second Amendment covers the individual's conduct. *Id.* at 2129-30. If not, "then the Second Amendment does not apply, and the regulation is constitutional." *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 664 F. Supp. 3d 584, 590 (D. Del. 2023) (interpreting *Bruen*). If the conduct is covered under the Second Amendment, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

**B. Plaintiffs have failed to demonstrate that the banned items are covered under the Second Amendment.**

As discussed in A.G. Jennings's Opening Brief (D.I. 58 at 10-11), Plaintiff bears the burden of demonstrating that their conduct is covered by the Second Amendment. *Delaware State Sportsmen's Ass'n, Inc.* 664 F. Supp. 3d at 590; *see also Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1194 (7th Cir. 2023) (holding that plaintiffs bear the burden of showing that a weapon is eligible for Second Amendment coverage); *Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 388 (D.R.I. 2022), *aff'd*, 2024 WL 980633 (1st Cir. Mar. 7, 2024) (holding that plaintiff bore the burden of showing large capacity magazines were covered under Second Amendment); *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1042 (4th Cir. 2023), *reh'g en banc granted,* 2024 WL 124290 (4th Cir. Jan. 11, 2024) (finding that plaintiffs bore the burden to show that their conduct was covered under the Second Amendment); *Nat''l Ass'n for Gun Rts. v. Lamont*, 2023 WL 4975979, at *15 (D. Conn. Aug. 3, 2023) (holding that "*Bruen* and *Heller* make clear that [p]laintiffs have the burden of making the initial showing that they are seeking to possess or carry firearms that are in common use today for self-defense and are typically possessed by law-abiding citizens for that purpose." (internal quotations omitted)); *Rupp v. Bonta*, 2024 WL 1142061, at *9 (C.D. Cal. Mar. 15, 2024) (finding "the burden on Plaintiffs to make a showing that would bring them within the ambit of Second Amendment."); *Rocky Mountain Gun Owners v. Polis*, 2023 WL 5017253, at *9 (D. Colo. Aug. 7, 2023) ("plaintiffs must show their conduct is covered by the Second Amendment.") *Oregon Firearms Fed'n, Inc. v. Brown*, 644 F. Supp. 3d 782, 799 (D. Or. 2022) (finding that plaintiff had the burden to show the ban items were "in common use today for self-defense and thereby covered by the plain text of the Second Amendment." (internal quotations omitted)).

Only if plaintiffs show that "the Second Amendment's plain text covers an individual's conduct, [will] the Constitution presumptively protect[ ] that conduct." *Bruen*, 142 S. Ct. at 2129-30.  To meet this threshold burden, plaintiffs must demonstrate that the "textual elements" of the Second Amendment's operative clause apply to the conduct being restricted.  *Id.* at 2134 (quoting *Heller I*, 554 U.S. at 592).  Thus, plaintiffs must show that that the regulated item fits within the category of "bearable arms," *id.* at 2132, and that it is "commonly used" for self-defense purposes, *id.* at 2138.  *See, e.g.*, *id.* at 2134-35 (citation omitted) (before determining whether restriction was "consistent with this Nation's historical tradition of firearm regulation," Supreme Court confirmed that plaintiffs were "part of 'the People' whom the Second Amendment protects" and that "handguns are weapons 'in common use' today for self-defense"). The relevant question is whether the arm is "in 'common use' for self-defense today."  *Bruen,* 142 S. Ct. at 2143 (citing *Heller I*, 554 U.S. at 627).

Plaintiffs attempt to argue that A.G. Jennings bears the burden of proving that the banned items are not in common use. D.I. 60 at 9. However, as demonstrated above, this very Court, along with the United States Court of Appeal for the First, Fourth, and Seventh Circuits, as well as the United State District Court for the District of Connecticut, Central District of California, District of Colorado, and District of Oregon, have interpreted *Bruen* and found that the burden lies with Plaintiffs to demonstrate that ghost guns and ghost frames are covered by the Second Amendment. *See also United States v. Dangleben*, 2023 WL 6441977, at *3 (D.V.I. Oct. 3, 2023) (Challenger of a law that prohibited the possession of a firearm with an obliterated serial number bears the burden of demonstrating that the conduct is covered by the Second Amendment).  Plaintiffs' citation to *Bruen* is unavailing as it mentions nothing about which party bears the burden of demonstrating that an item is covered under the Second Amendment.

Despite Plaintiffs' assertion that A.G. Jennings bears the burden of showing the banned items are not in common use, Plaintiffs still attempt to demonstrate that ghost guns are in common use for self-defense. D.I. 10-11. These arguments are unavailing. The declarations of Plaintiffs Rigby and Knight do nothing to show that ghost guns or ghost frames are in commons use. Rather, they only show those particular individuals desire to possess them.

Further, Plaintiffs' various citations to case law for the propositions that handguns and AR-15s are in common use are likewise unavailing because they lack a critical distinction: they do not establish that *unserialized* handguns and AR-15s are in common use for self-defense. (emphasis added). Plaintiffs cite to *Heller*, as well as *Miller v. Bonta*, 2023 WL 6929336 (S.D. Cal. Oct. 19, 2023), the dissent in *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015), and *Staples v. United States*, 511 U.S. 600 (1994). (D.I. 60 at 11). But none of these cases even mention ghost guns or ghost frame, much less establish that those items are in common use for self-defense.

Finally, to the extent Plaintiffs attempt to rely on evidence not produced in discovery (the articles listed as "other authority" in the table of authorities), that evidence should not be considered. *See Opera Sols., LLC v. Schwan's Home Serv., Inc.*, 243 F. Supp. 3d 515, 521, n. 2 (D. Del. 2017) (a party cannot rely on evidence not produced during discovery to support summary judgment). As a result, Plaintiffs failed to establish that ghost guns and ghost frames are covered by the Second Amendment.

Indeed, ghost guns and ghost frames are not covered by the Second Amendment. As discussed in A.G. Jennings's Opening Brief (D.I. 58 at 12), a ban on unfinished firearm frames or receivers with no serial number are not covered under the Second Amendment because they do not "prohibit people legally entitled to bear arms from purchasing a firearm or, for that matter,

from buying unfinished frames and receivers and then making them into fully functional firearms; they must simply buy serialized parts from a licensed dealer after undergoing the same background check as any other firearms purchaser." *New York v. Arm or Ally, LLC*, 2024 WL 756474, at *13 (S.D.N.Y. Feb. 23, 2024).

Furthermore, in *Dangleben*, a criminal defendant challenged the constitutionality of a law prohibiting possession of firearms with obliterated serial numbers, claiming it regulated the mere possession of a firearm. 2023 WL 6441977 at *4. Initially, the court noted that the challenger's argument "impermissibly overgeneralizes the regulated conduct," and found that "the regulated conduct at issue here is not the mere possession of any firearm but rather the possession of a firearm with a removed, obliterated, or altered serial number." *Id.* at *4-5. The court then found the law did not even infringe on the challenger's Second Amendment rights because it "merely prohibits a person from possessing a gun with an altered, removed, or obliterated serial number… [and] does not modify or in any way affect the function, utility, or effectiveness of an individual's firearm. *Id.* at *5. Importantly, the Court noted that "because a person can defend themselves just as effectively with a serialized or deserialized firearm," the law does not "limit[] an individual's right to bear arms and defend oneself in the case of confrontation." *Id.* The court further stated that "[a]ny suggestion that deserialized firearms are the types of commonly used weapons covered under the Second Amendment is antithetical to an originalist understanding of the amendment." *Id.* at *7.

In the instant case, ghost guns and ghost frames are likewise not covered by the Second Amendment. The same logic of *Arm or Ally, LLC* and *Dangleben* applies here: requiring a serial number on a firearm or a specific component does not affect a law-abiding person's ability to defend themselves with a firearm. Plaintiffs are not completely prohibiting from obtaining firearms

7

or firearm frames or receivers. Rather, they simply must obtain serialized versions, which requires a background check and allows for the tracing of the firearm. From these frames and receivers, Plaintiffs can freely assemble firearms. Therefore, ghost guns and ghost frames are not covered by the Second Amendment.

### C.  Plaintiffs' attacks on A.G. Jennings's experts fail.

Plaintiffs argue that A.G. Jennings failed to identify any proper historical analogues to satisfy *Bruen*. D.I. 60 at 13.  Plaintiffs make this claim solely by attempting to discredit A.G. Jennings's experts. Notably, Plaintiffs failed to provide any historical evidence in response. Plaintiffs' argument fails because the expert declarations establish that, under *Bruen*, the Bans are consistent with this Nation's historical tradition of firearm regulation.

In *Bruen*, the Supreme Court explained that "history guide[s] our consideration of modern ['arms'] regulations that were unimaginable at the founding." *142* S. Ct. at 2132.  "[C]ases implicating unprecedented societal concerns or dramatic technological changes," like the instant case, "may require a more nuanced approach." *Id*.  The historical inquiry should be guided by "reasoning by analogy." *Id.* at 2133. *Bruen* makes clear that it does not require a historical "twin." *Bruen*, 142 S. Ct. at 2133.  Rather, "analogical reasoning requires only …. a well-established and representative historical *analogue*." *Id.* (cleaned up and emphasis in original).  As such, "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*[2]  "[W]hether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are '*relevantly similar*.'" *Id.* at 2132 (emphasis added).  *Bruen* identifies two central" "metrics":

---

[2] Analogical reasoning "is neither a regulatory straightjacket nor a regulatory blank check." *Bruen*, 142 S. Ct. at 2133 (Kavanaugh, J., concurring).

"[1] whether modern and historical regulations impose a comparable burden on the right of armed self-defense and [2] whether that burden is comparably justified." *Id.* at 2133 (cleaned up). In conducting this historical inquiry, "[c]ourts are … entitled to decide a case based on the historical record compiled by the parties." *Id.* at 2130 n.6.

A.G. Jennings properly identified historical analogues that dealt with concerns analogous to the modern-day concerns raised by ghost guns and ghost frames. D.I. 58 at 12-15. As an initial matter, this Court, pursuant to *Bruen*, should conduct the historical analysis based on the record in this case. Because Plaintiffs provided no discovery, the record consists solely of A.G. Jennings's expert declaration. Any evidence Plaintiffs provide in their briefing should be ignored as it was not produced in discovery. *See Opera Sols., LLC,* 243 F. Supp. 3d at 521, n. 2 (a party cannot rely on evidence not produced during discovery to support summary judgment). Further, in this posture, as Plaintiffs are moving for summary judgment, the facts and evidence are viewed in the light most favorable to A.G. Jennings. Therefore, all expert declarations are viewed in the light most favorable to A.G. Jennings.

Plaintiffs point out that Professor Spitzer indicated that the presence or absence of a serial number does not affect the guns functionality. D.I. 60 at 12. This fact favors A.G. Jennings because, as discussed above, the inclusion of a serial number does not affect the firearm's usability in self-defense. Therefore, requiring a serial number on firearms and certain firearm components does not restrict a law-abiding citizen's ability to defend themselves. As a result, ghost guns and ghost frames are not entitled to any Second Amendment protection.

Plaintiffs attempt to argue that the historical analogues identified by Professor Spitzer do not satisfy *Bruen* because they were not bans on arms in common use. D.I. 60 at 13. Plaintiffs misunderstand *Bruen* in a number of ways. First, as discussed *supra*, *Bruen* first requires that

9

Plaintiffs show that Ghost Guns and Ghost Frames are in common use for self-defense to even gain Second Amendment protection. 142 S. Ct. at 2132, 2138. Only then does the burden shift to the government to identify historical analogues. *Id.* at 2130. Plaintiffs conflate *Bruen*'s standard.

Further, nothing in *Bruen* restricts the historical analysis in such a way. In *Bruen*, the Supreme Court explained that "history guide[s] our consideration of modern ['arms'] regulations that were unimaginable at the founding." *Id.* at 2132. "[C]ases implicating unprecedented societal concerns or dramatic technological changes," like the instant case, "may require a more nuanced approach." *Id.* Under *Bruen*, this Court's historical inquiry into the Statutes should be guided by "historical inquiry" and "reasoning by analogy." *Id.* at 2133. *Bruen* does not require a historical "twin." Rather, "analogical reasoning requires only …. a well-established and representative historical *analogue*." *Id.* (cleaned up and emphasis in original). "[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*

 "[W]hether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are '*relevantly similar*.'" *Bruen*, 142 S. Ct. at 2132 (emphasis added). *Bruen* identifies two "central" "metrics": "[1] whether modern and historical regulations impose a comparable burden on the right of armed self-defense and [2] whether that burden is comparably justified." *Id.* at 2133 (cleaned up).

Plaintiffs' own authority notes that, with regard to ghost guns and ghost frames, "only in the past few years has technology advanced to allow individuals to quickly and easily make their own firearms for personal use from parts kits or 3D printers." 87 Fed. Reg. at 24701. Given the dramatic technological change, *Bruen* authorizes a nuanced approached, rather than Plaintiffs' overly simplistic suggestion. As discussed in greater detail in A.G. Jennings's Opening Brief, the

historical analogues identified by Professor Spitzer satisfy *Bruen*. D.I. 58 at 12-15. For example, the regulations on the Bowie Knife are analogous to the Bans because they both regulated weapons linked to criminal activity and violence. D.I. 58 at 13-14. Likewise, the regulations on gunpowder are also similar to the Bans in that they place conditions on access and ownership. D.I. 58 at 15.

Plaintiffs also ask the Court to disregard Professor Webster's declaration because it can only be considered for means-end scrutiny. D.I. 60 at 12. Not so. Professor Webster's declaration demonstrates the societal concerns linked with ghost guns to aid in the historical analysis under *Bruen*. As time and technology progresses, firearms (and weapons in general) will differ than those that historically existed. Therefore, a more nuanced approached is required under *Bruen*. Professor Webster demonstrates, *inter alia*, that violence and criminality are linked with ghost guns today. Thus, historical arms regulations that dealt with similar concerns during that time would be historical analogues. Professor Webster aids the Court in providing the proper context for *Bruen*'s historical analysis.

Professor DeLay also aids in providing the proper context for the *Bruen* historical analysis. Because self-made firearms were historically a rarity, it follows that there likely would not be historical laws directly regulating such activity. Plaintiffs contend that Professor DeLay "muddies the waters" by making a distinction between professional and amateur gunsmiths. D.I. 60 at 14. However, that distinction is important. In a historical context, that distinction is significant because, as Professor Webster demonstrates, there is no historical tradition of amateur self-made firearms, which is where HB125 applies. HB125 provides exceptions for professional, licensed dealers, who, as discussed *infra*, are subject to their own regulations.

Plaintiffs also contend that Professor DeLay's information regarding the difficulties of assembling firearms in colonial America is irrelevant, and that Professor Delay suggests that the

Second Amendment does not apply to any modern firearms. D.I. 60 at 14-15. Neither is correct. Professor DeLay's information about the difficulties of assembling firearms in early America, compared to the ease of assembly today, demonstrates a dramatic technological change that requires a nuanced approach to the historical analysis. Further, Professor Delay does not take such a position as Plaintiffs suggest. Rather, he suggests that HB125 is consistent with this Nation's history of firearm regulation.

Ultimately, there are numerous historical analogues to establish that the ban on ghost guns and unfinished frames and receivers with no serial numbers are consistent with this Nation's historical tradition of firearm regulation. Therefore, the Bans do not violate the Second Amendment.

### D. Plaintiffs' non-*Bruen* related arguments fail to support their motion for summary judgment.

Plaintiffs also take issue that HB125 does not allow them to obtain serial numbers for ghost guns and ghost frames they owned before HB125's enaction. D.I. 60 at 12-13. However, that fact is irrelevant to any part of the *Bruen* analysis because it neither establishes that ghost guns or ghost frames are commonly used in self-defense, nor does it speak to historical analogues. Further, such a system would be contrary to HB125's goals because the "system would be based on the honor system." *Fahr v. City of San Diego*, 2021 WL 4895974, at *2 (S.D. Cal. Oct. 20, 2021). Given its voluntary nature, it would do little in keeping firearms out of the hands of those forbidden to possess them.

Plaintiffs also claim, citing the Federal Register, that federal law only requires importers and manufacturers to serialize ghost guns and ghost frames. D.I. 60 at 8. Again, as an initial matter, this point is not relevant because it does not go into any part of the *Bruen* analysis. Also, federal law also requires gun dealers to serialize ghost guns and ghost frames taken into inventory. 87 Fed.

12

Reg. at 24664, 24669, 24732. Further, the federal laws governing ghost guns and ghost frames are implemented "to assist State and local jurisdictions to control the traffic of firearms within their own borders through the exercise of their police power" with the ultimate goal of "prevent[ing] prohibited persons from acquiring" such items. *Id.* at 24669. Therefore, HB125 is wholly consistent with the law cited by Plaintiffs.

## II.     HB 125 does not violate the First Amendment.

### A.  The Instructions Ban is not the publishing of an item of expressive speech.

"[W]here a programmer communicates through code with a machine or computer, such speech is never protected." *Def. Distributed v. Platkin*, 2023 WL 6389744, at *7 (D.N.J. Sept. 29, 2023) (citing *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 449 (2d Cir. 2001)). Here, because the Instructions Ban regulates code directed to a printer, the speech is not protected. Indeed, this Court was skeptical that the Instructions Ban even implicated the First Amendment. D.I. 38 at 16, n. 15. As a result, Plaintiffs' First Amendment claim fails from the start.

### B.  The Instructions Ban is a valid, content-neutral regulation of Plaintiffs' conduct that does not infringe First Amendment Rights.

Even if the Instructions Ban were entitled to some degree of First Amendment protection, it is still constitutional. As discussed in A.G. Jennings Opening Brief, (D.I. 58 at 17) the Instructions Ban is not a content-based speech restriction subject to strict scrutiny. "[R]egulations that are unrelated to the content of speech" receive less demanding First Amendment scrutiny because they "pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). When the purpose of imposing a regulation is "justified without reference to the content of the regulated speech," the regulation is content-neutral. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

13

It is the State's purpose, not other factors, that is the "controlling consideration" in this determination. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

HB 125 regulates the conduct of distributing ghost guns and ghost frames for the purpose of advancing public safety. The computer files subject to the Instructions Ban function to automatically produce such weapons or their components. Whatever expressive value may exist in the theory of these files, they function to create a firearm. Thus, the State may restrict their distribution on the basis of their functionality to create ghost guns and ghost frames. HB 125 is not the product of government hostility toward the spread of ideas about 3D printing of firearms, but rather against the means to easily do so. Accordingly, HB 125 is not directed at the content of expression and strict scrutiny does not apply to a First Amendment analysis of the Instructions ban. Indeed, this Court also found strict scrutiny inapplicable here. D.I. 38 at 18. Thus, intermediate scrutiny applies.

Under intermediate scrutiny, a law will be upheld if "'[1] it furthers an important or substantial governmental interest; [2] if the governmental interest is unrelated to the suppression of free expression; and [3] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Turner Broad. Sys., Inc.,* 512 U.S. at 622 (quoting *United States v. O'Brien,* 391 U.S. 367, 377 (1968)). To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing the Government's interests. *Id.* Instead, the law passes scrutiny as long as it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* (citation and internal quotations omitted).

The Instructions Ban passes constitution muster because it meets all the necessary requirements under intermediate scrutiny. Indeed, this Court has already found that the Instructions

14

Ban survives intermediate scrutiny because it furthers a substantial and important government interest in public safety, only regulates the code used to communicate with a machine, and leaves other ample channels to communicate regarding the use of a 3D-printer to make a firearm or firearm component. D.I. 38 at 19. The Court's reasoning applies in this instance as well.

Plaintiffs attempt to argue that the Instructions Ban does not pass constitutional muster because firearms can be traced via ballistics data. D.I. 60 at 16. This argument fails on multiple fronts. First, as discussed *supra*, a regulation does not have to be the least restrictive means. Though it is unclear how ballistics data is less restrictive than serialization, Plaintiffs cannot invalidate the Instructions Ban by merely identifying an alternative. Further, as mentioned previously, Plaintiffs should not be allowed to insert evidence not produced in discovery. Therefore, they should not be able to rely on the cited article regarding ballistics data.

Plaintiffs also argue that A.G. Jennings has not demonstrated that 3-D printed firearms pose a greater threat to the public than conventional firearms. D.I. 60 at 16. Plaintiff ignores the provided expert testimony demonstrating how unserialized firearms are linked to illegal gun possession, criminality, and violence. Webster Dec. at 4-7, 8-12; Spitzer Dec. at 4-5. 3-D printed firearms are a type of unserialized firearm. Thus, Plaintiffs' argument fails.

### C.  The Instructions Ban is not unconstitutionally overbroad.

 "The overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *United States v. Matusiewicz*, 84 F. Supp. 3d 363, 367 (D. Del. 2015), *aff'd sub nom. United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018) (citing *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999)) (internal quotations omitted). "Striking down a statute that also has legitimate applications because of its potential to punish or chill

protected expression is a drastic remedy" that should be used "sparingly and only as a last resort." *Id.* (citation and internal quotations omitted). "The burden to establish the overbreadth of a statute rests on the party challenging it." *Id.* (citing *Virginia v. Hicks*, 539 U.S. 113, 122 (2003)).

In determining whether a law is overbroad, Courts generally look at 4 factors: "[1] the number of valid applications, [2] the historic or likely frequency of conceivably impermissible applications, [3] the nature of the activity or conduct sought to be regulated, and [4] the nature of the state interest underlying the regulation." *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 226 (3d Cir. 2004) (citation omitted). The first factors are viewed in tandem as they are comparisons. *Id.*

At the outset, Plaintiffs failed to meet their burden because they failed to address any of the applicable factors. Plaintiffs failed to put forth any argument or evidence demonstrating that any of the factors weigh in their favor. Plaintiffs' overbreadth claim should be rejected on this alone.

Further, all factors weigh in favor of the Instructions Ban's validity. In comparing the first two factors, the number of valid applications far outweigh impermissible applications. A. G. Jennings has provided ample evidence that untraceable firearms are linked with violence and criminality, and the lack of traceability provides no utility to the law-abiding gun owner. Webster Dec. at 4-7, 8-12; Spitzer Dec. at 4-5. Plaintiffs fail to offer any evidence or realistic scenarios of impermissible application. The third factor also weighs in favor of validity because it seeks to regulate conduct linked with unlawful firearm possession. Finally, the fourth factor also weighs in favor of validity as there is a significant state interest in keeping firearms out of the hands of prohibited individuals and having traceable firearms. Indeed, this Court already found that the

16

Instructions Ban is not overbroad. D.I. 38 at 20. Nothing has changed in this regard as Plaintiffs did not produce a single piece of evidence in discovery.

### III.    Plaintiffs are not entitled to summary judgment on their Fifth and Fourteenth Amendments claims.

Plaintiffs' claim that the challenged laws are takings under the Fifth and Fourteenth Amendments. D.I. 60 at 18-19. Both claims fail and Plaintiff is not entitled to summary judgment.

Regarding the Fourteenth Amendment claim, when "a constitutional claim is covered by a specific constitutional provision … the claim must be analyzed under the standard appropriate to that specific provision, not under" the Fourteenth Amendment. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (citation omitted). Because a takings claim is properly brought under the Fifth Amendment, Plaintiffs' do not have separate Fourteenth Amendment takings claim.

Regarding Plaintiffs' Fifth Amendment, A.G. Jennings demonstrated in her Opening Brief that the Ghost Guns and Ghost Frames Bans are neither Regulatory nor Physical Takings. D.I. 58 at 15-17.  A.G. Jennings incorporates those arguments here. Plaintiff merely argues that because the Bans dispose citizens of Ghost Guns and Ghost Frames, a taking is established. D.I. 60 at 19. It is, however, unclear whether Plaintiffs are alleging a physical or regulatory taking. In any event, their claim fails because "the Takings Clause does not restrict the government's traditional power to regulate and prohibit dangerous private property." *Palmer v. Sisolak*, 594 F. Supp. 3d 1215, 1225–26 (D. Nev. 2022); *see also Rupp v. Becerra*, 2018 WL 2138452, at *8 (C.D. Cal. May 9, 2018) (*citing Akins v. United States*, 82 Fed. Cl. 619, 623-24 (2008) ("there is no taking where the government regulates the sale and manufacture of firearms"). In *Fahr*, the court found that a law banning ghost guns and ghost frames was neither a physical nor regulatory taking. 2021 WL 4895974, at *12. The same logic applies here.

17

## IV.     Plaintiffs have not established irreparable harm.

"To obtain a permanent injunction, a moving party must show that it will suffer irreparable harm." *TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019) (citation omitted). A deprivation of a constitutional right does not always amount to irreparable harm. *Delaware State Sportsmen's Ass'n, Inc.*, 664 F. Supp. 3d at 603. Indeed, "an alleged deprivation of a Second Amendment right does not automatically constitute irreparable harm." *Id.* at 604. In *Delaware State Sportsmen's Ass'n, Inc.*, plaintiffs claimed that they suffered irreparable harm due to a ban on assault weapons and large capacity magazines because it prevented them from obtaining the items for self-defense. *Id.* Plaintiffs also claimed a loss of business because the ban in that case limited their ability to sell assault weapons and large capacity magazines. *Id.* The Court rejected the first argument because the plaintiffs were able to defend themselves with other available firearms and magazines. *Id.* The Court rejected the second argument because there is no standalone Second Amendment right to sell firearms, and in any event, plaintiffs failed to provide any evidence about the loss of business. *Id.*

In the instant case, Plaintiffs failed to demonstrate irreparable harm regarding the Ghost Gun Ban and Ghost Frame Ban because they are solely relying on a Second Amendment deprivation. This Court already rejected that argument. The Plaintiffs in the instant case did even less than those in *Delaware State Sportsmen's Ass'n, Inc.* They provide no evidence of actual irreparable harm. Plaintiffs do not allege that the banned items are necessary for their self-defense, or any other irreparable harm. Thus, their argument fails.

"[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury." *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989). Here, Plaintiffs also fail to demonstrate irreparable harm regarding the Instructions Ban because, like above, they failed to

produce any evidence regarding same. Plaintiffs merely assert that the constitutional deprivation alone is enough to show irreparable harm. Because that argument fails, Plaintiffs cannot demonstrate irreparable harm.

**V.     The balance of the equities disfavors a permanent injunction.**

In balancing the equities, "the Court looks at the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Waters Corp. v. Agilent Techs. Inc.*, 410 F. Supp. 3d 702, 717 (D. Del. 2019) (citation and internal quotations omitted) "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (citation omitted).  Here, Plaintiffs failed to demonstrate any injury. Conversely, A.G. Jennings has demonstrated, through expert testimony, the dangers associated with ghost guns and ghost frames. Therefore, the balance of equities weighs against a permanent injunction.

## CONCLUSION

WHEREFORE, A.G. Jennings respectfully requests that this Honorable Court deny Plaintiffs' Motion for Summary Judgment.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Kenneth L. Wan*
Patricia A. Davis (No. 3857)
Kenneth L. Wan (No. 5667)
Deputy Attorneys General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
*Attorneys for Defendant*

Date: April 15, 2024

19