# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN RIGBY, ALAN KNIGHT, and FIREARMS POLICY COALITION, INC., | : : : : |
| Plaintiffs, | : : |
| v. | : : |
| KATHY JENNINGS, Attorney General of Delaware, | : : : |
| Defendant. | : |

C.A. No. 1:21-cv-01523-MN

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

 

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**
Patricia A. Davis (#3857)
Kenneth L. Wan (#5667)
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
*Attorneys for Defendant*

Date: April 26, 2024

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .......................................................................................................................... 1

   I.   PLAINTIFFS FAIL TO DEMONSTRATE THAT THE GHOST GUNS AND GHOST FRAMES ARE COVERED UNDER THE SECOND AMENDMENT ............................... 1

   II.   EVEN IF THE BANS IMPLICATED THE SECOND AMENDMENT, THEY ARE CONSTITUTIONAL BECAUSE THEY ARE CONSISTENT WITH THIS NATION'S HISTORICAL TRADITION OF FIREARM REGULATION ............................................ 5

   III.   PLAINTIFFS' AUXILIARY SECOND AMENDMENT ARGUMENTS ARE NOT PERSUASIVE ................................................................................................................ 8

   IV.   A.G. JENNINGS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FIRST AMENDMENT CLAIM ................................................................................................. 9

   V.   HB 125 DOES NOT VIOLATE THE FIFTH AMENDMENT .......................................... 10

   VI.   PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS FAIL ...................................... 10

   VII.   IRREPARABLE HARM AND BALANCE OF THE EQUITES ...................................... 10

   CONCLUSION .................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Betts v. New Castle Youth Dev. Ctr.*,
621 F.3d 249 (3d Cir. 2010) .................................................................................................. 10

*Bevis v. City of Naperville, Illinois*,
85 F.4th 1175 (7th Cir. 2023) ................................................................................................. 1

*D.C. v. Heller*,
554 U.S. 570 (2008) ................................................................................................................ 3

*Def. Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) ................................................................................................ 10

*Def. Distributed v. Platkin*,
2023 WL 6389744 (D.N.J. Sept. 29, 2023) ............................................................................ 9

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*,
664 F. Supp. 3d 584 (D. Del. 2023) ................................................................................ *passim*

*Downey v. Pa. Dep't of Corr*,
968 F.3d 299 (3d Cir. 2020) .................................................................................................... 2

*Friedman v. City of Highland Park, Ill.*,
577 U.S. 1039 (2015) ............................................................................................................... 3

*Gibson v. Mayor & Council of City of Wilmington*,
355 F.3d 215 (3d Cir. 2004) .................................................................................................... 9

*Miller v. Bonta*,
2023 WL 6929336 (S.D. Cal. Oct. 19, 2023) .......................................................................... 3

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
142 S. Ct. 2111 (2022) ..................................................................................................... *passim*

*New York v. Arm or Ally, LLC*,
2024 WL 756474 (S.D.N.Y. Feb. 23, 2024) ........................................................................... 4

*Opera Sols., LLC v. Schwan's Home Serv., Inc.*,
243 F. Supp. 3d 515 (D. Del. 2017) ........................................................................................ 7

*Oregon Firearms Fed'n, Inc. v. Kotek*,
2023 WL 4541027 (D. Or. July 14, 2023) ......................................................................... 3, 8

*Palmer v. Sisolak*,
594 F. Supp. 3d 1215 (D. Nev. 2022) ....................................................................................... 3, 4

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ...................................................................................................................... 9

*Staples v. United States*,
511 U.S. 600 (1994) ...................................................................................................................... 3

*U. S. v. Berger*,
2024 WL 449247 (E.D. Pa. Feb. 6, 2024) ................................................................................. 2, 3

*U.S. v. Hicks*,
980 F.2d 963 (5th Cir. 1992) ................................................................................................. 9, 10

**ARGUMENT**

I.  **Plaintiffs fail to demonstrate that the Ghost Guns[1] and Ghost Frames are covered under the Second Amendment.**

The *Bruen* analysis is clear. Under *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Court must first determine if the plain text of the Second Amendment covers the individual's conduct. 142 S. Ct. at 2129-30. If not, "then the Second Amendment does not apply, and the regulation is constitutional." *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 664 F. Supp. 3d 584, 590 (D. Del. 2023) (interpreting *Bruen*). If the Second Amendment covers the conduct, then the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

As an initial matter, Plaintiffs conflate the *Bruen* standard by mixing the two steps together, arguing that A.G. Jennings must show that a regulation is consistent with the Nation's historical tradition of firearm regulation to establish that there is no Second Amendment coverage. D.I. 62 at 6. This is incorrect. *Bruen*, and cases interpreting *Bruen*, clearly delineate the two-step process. For example, in *Delaware State Sportsmen's Ass'n, Inc*, ("*DSSA*") this Court stated that:

> [The Court] must first determine whether the Second Amendment's plain text covers an individual's conduct. If the answer is no, then the Second Amendment does not apply, and the regulation is constitutional. But if the answer is yes, then the Constitution presumptively protects that conduct and it is the government's burden to then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

664 F. Supp. 3d at 590 (D. Del. 2023); *see also Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1191 (7th Cir. 2023).

---

[1] Capitalized terms not otherwise defined herein have the same meaning as set forth A.G. Jennings's Opening Brief in Support of her Motion for Summary Judgment. D.I. 58.

Plaintiffs also misinterpret caselaw. Plaintiffs cite *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 308 n.8 (3d Cir. 2020) for the proposition that "[i]f the government cannot make that showing because the firearms at issue are in common use, any further examination of history and tradition is not necessary or appropriate, because the Supreme Court has already done the analysis, and its conclusions are binding." D.I. 62 at 6. However, *Downey* has nothing to do with the Second Amendment. Rather, it concerned a delay in medical treatment for an inmate. *Id.* at. 302.

Substantively, Plaintiffs fail to meet their burden of demonstrating that Ghost Guns and Ghost Frames are covered under the Second Amendment. As discussed in A.G. Jennings's Opening Brief in Support of her Motion for Summary Judgment ("Opening Brief") Plaintiffs bear the burden of showing that Ghost Guns and Ghost Frames are covered by the Second Amendment. D.I. 58 at 10-11. If they cannot do so, "then the Second Amendment does not apply, and the regulation is constitutional." *DSSA*, 664 F. Supp. 3d at 590.

Plaintiff attempt to argue that Ghost Guns and Ghosts Frames are in common use for lawful purposes and thus cannot be banned. D.I. 62 at 8, 16. As threshold matter, as discussed *supra*, establishing that an item is in common use only satisfies their initial burden. Further, Plaintiffs failed to demonstrate Ghost Guns and Ghost Frames are in common use for self-defense or any other lawful purpose. Plaintiffs rely on the declarations of Plaintiffs Rigby and Knight. D.I. 62 at 9. That merely establishes that these two particular individuals seek to possess Ghost Guns and Ghost Frames. Plaintiff FPC claims it represents Delaware residents who wish to possess those items, but fails to quantify how many. Therefore, at best, Plaintiffs have established two people would possess Ghost Guns and Ghost Frames. That is not nearly enough.

While the methodology regarding whether an item is common use for self-defense under *Bruen* greatly varies among courts, it is clear that two is not enough. *U. S. v. Berger*, 2024 WL

449247, at *10-11 (E.D. Pa. Feb. 6, 2024). In *Berger*, the court found that machineguns were not in common use for self-defense despite indications that 740,000 were lawfully owned.[2] If 740,000 was not enough for machine guns, certainly two Ghost Guns cannot be enough to establish common use, much less common use for self-defense.[3]

Plaintiffs also argue that Ghost Guns cannot be banned because handguns are in common use for self-defense, and AR-15 rifles are commonly owned. D.I. 62 at 9-10. This argument fails because the cited cases they do not establish that *unserialized* handguns and AR-15s are in common use for self-defense. (emphasis added). Plaintiffs cite to *D.C.* v *Heller* 554 U.S. 570 (2008), *Miller v. Bonta*, 2023 WL 6929336 (S.D. Cal. Oct. 19, 2023), the dissent in *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015), and *Staples v. United States*, 511 U.S. 600 (1994). (D.I. 60 at 11). None of these cases even mention Ghost Guns or Ghost Frames, much less establish that those items are in common use for self-defense.

Indeed, Ghost Guns are not in common use for self-defense. *Palmer v. Sisolak*, 594 F. Supp. 3d 1215, 1221 (D. Nev. 2022). In *Palmer*, the Court, interpreting *Heller,* found that a law banning Ghost Guns did not target firearms in common use for self-defense because the law "regulates firearms not imprinted with serial numbers—the law therefore does not interfere with the right to defense of hearth and home because Plaintiffs' ability to use any and all serialized firearms to defend their homes remains unchanged." *Id.* (internal quotation omitted).[4]

---

[2] This Court recognized that it is actually closer to 176,000. *DSSA*, 664 F.Supp.3d at 593 n. 8.

[3] Indeed, Plaintiffs cannot meet their burden with numerosity alone. *Oregon Firearms Fed'n, Inc. v. Kotek*, 2023 WL 4541027, at *28-29 (D. Or. July 14, 2023). However, as Plaintiffs do not even have the numbers, any further analysis is unnecessary.

[4] While *Palmer* was decided before *Bruen*, it is still persuasive as *Bruen*'s decision is based upon *Heller*.

Plaintiffs also appear to argue that Ghost Guns and Ghost Frames are covered under the Second Amendment because they have right to manufacturer firearms. D.I. 62 at 2 This argument misses the mark. Again, as discussed in greater detail in the Opening Brief (D.I. 58 at 12), a ban on Ghost Guns and Ghost Frames does not "prohibit people…from buying unfinished frames and receivers and then making them into fully functional firearms; they must simply buy serialized parts from a licensed dealer after undergoing the same background check as any other firearms purchaser." *New York v. Arm or Ally, LLC*, 2024 WL 756474, at *13 (S.D.N.Y. Feb. 23, 2024); *see also Palmer*, 594 F. Supp. 3d 1215, 1221 (D. Nev. 2022) (A law banning unserialized firearms "does not interfere with the right to defense of hearth and home because [p]laintiffs' ability to use any and all serialized firearms to defend their homes remains unchanged." (citation and internal quotations omitted)).

In the instant case, Plaintiffs are not prohibited from making their own firearms. Rather, they must simply obtain a serialized frame or receiver. Requiring serialized parts prevents unlawful access to firearms by prohibited persons via mechanisms such as background checks. Webster Dec. at 11-12. Such regulations have been deemed proper by the U.S. Supreme Court. *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (emphasizing that the Second Amendment does not foreclose regulations that require "fingerprinting, *a background check.*") (emphasis added).

Plaintiffs, somewhat contradictorily, also argue that A.G. Jennings bears the burden of showing Ghost Guns and Ghost Frames are not in common use for self-defense. D.I. 62 at 7. Plaintiffs provide little support for their argument. A.G. Jennings, however, provided case law citations to this Court, along with the United States Court of Appeal for the First, Fourth, and Seventh Circuits, as well as the United State District Court for the District of Connecticut, Central District of California, District of Colorado, and District of Oregon, interpreting *Bruen* and holding

that Plaintiffs bear the burden of showing an item in is common use for self-defense to establish Second Amendment Coverage. D.I. 58 at 10-11. It is clear that Plaintiffs bear the burden of demonstrating that Ghost Guns and Ghost Frames are in common use to even establish that the items are covered by the Second Amendment. Plaintiffs fail to do so. Therefore, Ghost Guns and Ghost Frames are not entitled to any Second Amendment protection, and the Bans are valid.

II. **Even if the Bans implicated the Second Amendment, they are constitutional because they are consistent with this Nation's historical tradition of firearm regulation.**

First, it is unclear if Plaintiffs take issue regarding the relevant time period for historical regulations. At first, they argue that "1791 is the key date" as opposed to 1868, but in the same paragraph argue that the debate between 1971 or 1868 "need not be resolved" because the understanding of the Second Amendment was the same during those time periods. D.I. 62 at 16. Plaintiffs also claim that *Bruen*'s mention of "unprecedented societal concerns or dramatic technological changes" was to expand the coverage of the Second Amendment. D.I. 62 at 14.

Both arguments have been rejected by this Court. To the extent Plaintiffs argue that regulations after 1868 cannot be considered, this Court rejected that argument. In *DSSA*, this Court found that regulations "in temporal proximity to 1791 *and* 1868 are the most relevant." 664 F.Supp.3d at 598. (emphasis added). The Court further explained that those were "not the only relevant historical evidence" and subsequent history can also be considered. *Id.* Only when a contradiction exists is little weight afforded to later history. *Id.* Further, the Court found that *Bruen*'s statement that "cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach" went to how the Court conducted the historical analysis. *Id.* at 598-599.

Indeed, the historical analysis in *DSSA* is instructive. In *DSSA*, the court first found that assault weapons and large capacity magazines ("LCMs") implicated both dramatic technological changes and unprecedented societal concerns. *Id.* It found dramatic technological changes because assault weapons and LCMs were recent advances in technology. *Id.* at 598. The Court also found "that assault weapons and LCMs implicate unprecedented societal concerns" because record evidence indicated a rise in the yearly rate of public mass shootings over the last forty years, and mass shooting often involved assault weapons equipped with LCMs. *Id.* at 599. The Court also took note that in an examination of two hundred mass shootings, nearly twenty-five percent involved assault weapons, a majority involved LCMs, and "that mass shootings involving assault weapons and LCMs result in more fatalities and injuries than those that do not." *Id.*

With that in mind, the Court reviewed, *inter alia*, regulations enacted from 1837 through 1934, finding them relevant historical analogues. *Id.* at 600-603. For example, the Court found regulations on Bowie knifes enacted between 1837 and 1925 were proper historical analogues. *Id.* at 600, 602-603. Those regulations were made because Bowie knifes had widespread use in criminal activity and violent crime. *Id.* at 600. The Court found those regulations analogous because the regulation on assault weapons and LCMs, like the Bowie knife regulations, were both "enacted in response to pressing public safety concerns regarding weapons determined to be dangerous." *Id.* at 603. In making that determination, the Court rejected the argument that considering those concerns amounted to means-end scrutiny, finding that *Bruen* instructs Courts to consider how and why the regulations burden the right to self-defense. *Id.* The Court also found that the ban on assault weapons and LCMs, like Bowie knife regulations, were similar in their justified burdens on the right to self-defense. *Id.* at 602. It noted that the ban on LCMs was a slight

6

burden because having more than 17 rounds was unnecessary for self-defense, and that assault weapons were rarely used in self-defense. *Id.*

In the instant case, the ban on Ghost Guns and Ghost Frames can be supported by the historical analogues identified by A.G. Jennings's experts. Like in *DSSA*, the Bowie knife regulations cited in this case are analogous to the ban on Ghost Guns and Ghost Frames because they both were enacted to regulate weapons connected with violence and criminal activity. Further, the Bans are a slight burden on the right to self-defense because they only ban unserialized firearms and components. The requirement of a serial number does not affect Plaintiffs' ability to exercise their right to self-defense given their access to all other serialized firearms and components.

Plaintiffs argue that the historical regulations are not relevant because the regulated items were not in common use. D.I. 62 at 16. Again, as discussed *supra*, the common use analysis is to determine whether an item is even covered by the Second Amendment. See *Bruen*, 142 S. Ct. at 2143 ("[T]he Second Amendment protects only the carrying of weapons that are those in common use at the time as opposed to those that are highly unusual in society at large." (citiation and internal quotations omitted)); *DSSA*, 664 F. Supp. 3d at 591 (D. Del. 2023) (finding that the common use analysis is used to determine if an item is proliferated in civil society even covered under the Second Amendment). Further, this Court found that Bowie knifes "proliferated in civil society" before their regulation. *Id.* at 602. Plaintiffs' argument fails.

Further, Plaintiffs provide no evidence for that assertion. They produced no discovery. In fact, this Court should not consider any evidence that Plaintiffs failed to produce in discovery; namely, the articles they purport to be "other authority." *See Opera Sols., LLC v. Schwan's Home Serv., Inc.*, 243 F. Supp. 3d 515, 521, n. 2 (D. Del. 2017) (holding that a party cannot rely on evidence not produced during discovery to support summary judgment).

Likewise, gunpowder storage regulations are analogous to the Bans because both do not completely prohibit the possession; they merely regulate it. *See, e.g., Kotek*, 2023 WL 4541027, at *40. The Bans do not prohibit possession of firearms or components; they only require serialization. Similarly, the gunpowder laws did not prevent possession of gunpowder; it promulgated storage laws and quantity restrictions for safety concerns. Further, the *Kotek* court found regulations on trap guns and blunt objects, like the ones identified by A.G. Jennings, to be proper historical analogues. *Id.* at 39-40.

Ultimately, even if Plaintiffs were able to demonstrate that Ghost Guns and Ghost Frames were covered by the Second Amendment, the historical analogues identified by A.G. Jennings demonstrate that the Bans are consistent with this Nation's historical tradition of firearm regulation.

### III. Plaintiffs' auxiliary Second Amendment arguments are not persuasive.

Plaintiffs raise a number of additional arguments but fail to indicate where in the *Bruen* analysis they fit. In any event, none of these arguments are availing.

Plaintiffs claim that A.G. Jennings argues that the Bans "survive strict scrutiny" under a Second Amendment analysis. D.I. 62 at 2. Not so. A.G. Jennings does not even mention strict scrutiny in the *Bruen* analysis. See D.I. 58 at 9-15. Nor could such an argument be made because *Bruen* rejected means-end scrutiny. 142 S. Ct. at 2127. A.G. Jennings only raised strict scrutiny, properly, in her First Amendment analysis. D.I. 58 at 17. Plaintiffs misread the Opening Brief.

Plaintiffs claim that A.G. Jennings attempts to argue that Ghost Guns are not covered under the Second Amendment by relying on the Professor Delay's historical analysis. D.I. 4 at 4. Incorrect. Professor Delay's analysis provides the helpful context in the second step of the *Bruen* analysis (to the extent the Court finds it necessary to reach it), not the first, by showing that because

8

self-made firearms were historically a rarity, it follows that there likely would not be historical laws directly regulating such activity. This furthers a nuanced historical analysis.

### IV. A.G. Jennings is entitled to summary judgment on Plaintiffs' First Amendment claim.

Plaintiffs fail to show that the Instructions Ban even implicates the First Amendment. Plaintiffs argue *Sorrell v. IMS Health Inc.* is on point. D.I. 62 at 17. It is not. *Sorrell* found that prescriber-identifying information is speech. 564 U.S. 552, 570 (2011). *Def. Distributed v. Platkin* is on point. ([W]here a programmer communicates through code with a machine or computer, such speech is never protected.") 2023 WL 6389744, at *7 (D.N.J. Sept. 29, 2023) (citation omitted) Unlike *Sorrell*, *Def. Distributed* actually concerns computer code for 3-D printers to make guns.

Plaintiffs also argue that the Instructions Ban fails intermediate scrutiny as there is no evidence that it furthers public safety. D.I. 62 at 18. Plaintiffs, however, admit that there is evidence showing Ghost Guns are used for illegal purposes. *Id.* Plaintiffs also argue that there is no evidence 3-D printed guns are a greater threat to public safety than normal components. *Id.* However, expert testimony demonstrates how unserialized firearms are linked to illegal gun possession, criminality, and violence. Webster Dec. at 4-7, 8-12; Spitzer Dec. at 4-5. 3-D printed firearms are a type of unserialized firearm. Thus, Plaintiffs' argument fails.

Plaintiffs also claim that the Instructions Ban is overbroad because it is not integral to criminal conduct. D.I. 62 at 18. That is not the standard. Courts look at 4 factors to determine overbreadth: "the number of valid applications, the historic or likely frequency of conceivably impermissible applications, the nature of the activity or conduct sought to be regulated, and the nature of the state interest underlying the regulation." *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 226 (3d Cir. 2004) (citation omitted). Plaintiffs do not address a single factor. Plaintiffs also cannot claim overbreadth "where the parties challenging the statute are those

9

who desire to engage in protected speech that the overbroad statute purports to punish.'" *U.S. v. Hicks*, 980 F.2d 963, 969 (5th Cir. 1992) (citation omitted). Such is the case here. Finally, Plaintiffs' citation to *Def. Distributed v. Grewal*, (D.I. 62 at 19), is irrelevant as that case only ruled on a jurisdiction issue. 971 F.3d 485, 488 (5th Cir. 2020).

### V. HB 125 does not violate the Fifth Amendment.

Plaintiffs' takings claim fails because neither a physical nor regulatory taking has occurred. Plaintiffs argue they prevail based on the arguments raised in their brief in support of their motion for summary judgment. D.I. 62 at 20. They merely argue the Bans are takings because they are unconstitutional. D.I. 60 at 19. A.G. Jennings has demonstrated that the Bans are constitutional, and that neither type of taking has occurred. Indeed, A.G. Jennings previously identified multiple cases demonstrating that there are no valid takings claims in banning Ghost Guns and Ghost Frames. D.I. 58 at 16-17. Plaintiffs fail to even address those cases.

### VI. Plaintiffs' Fourteenth Amendment claims fail.

Plaintiffs' Fourteenth Amendment claims fail because no Fourteenth Amendment claim exists when "a constitutional claim is covered by a specific constitutional provision." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (citation omitted).

### VII. Irreparable harm and balance of the equities.

All of Plaintiffs' claims fail, and therefore the Court need not consider irreparable harm or the balance of the equities. However, to the extent necessary, A.G. Jennings incorporates her arguments in her opposition to Plaintiff's Motion for Summary Judgment. D.I. 63 at 18-19.

### CONCLUSION

WHEREFORE, A.G. Jennings respectfully requests that this Honorable Court grant her Motion for Summary Judgment and enter judgment in her favor.

                                      **STATE OF DELAWARE**
                                      **DEPARTMENT OF JUSTICE**

                                      */s/ Kenneth L. Wan*
                                      Patricia A. Davis (#3857)
                                      Kenneth L. Wan (#5667)
                                      Deputy Attorneys General
                                      Carvel State Office Building
                                      820 N. French Street, 6th Floor
                                      Wilmington, Delaware 19801
                                      (302) 577-8400
                                      *Attorneys for Defendant*

Date: April 26, 2024