# Exhibit A

567 P.3d 348
Supreme Court of Nevada.

Samuel William COCKING, Appellant,
v.
The STATE of Nevada, Respondent.

No. 88563
|
Filed April 24, 2025

**Synopsis**
**Background:** Following denial of motion to dismiss, defendant pleaded no contest in the District Court, Carson City, Kristin Luis, J., to involuntary manslaughter, carrying a concealed firearm without a permit, and possession of a firearm not imprinted with a serial number, and was sentenced to consecutive prison terms totaling 43-108 months in the aggregate. Defendant appealed.

**Holdings:** The Supreme Court, Parraguirre, J., held that:

[1] statute prohibiting carrying of concealed weapon in public without a permit does not infringe upon Second Amendment right to publicly carry firearms for self-defense;

[2] statute prohibiting possession of firearm not imprinted with a serial number does not regulate conduct protected by the Second Amendment;

[3] sentencing court did not rely on impalpable or highly suspect evidence related to defendant's juvenile history;

[4] defendant failed to demonstrate that sentencing court abused its discretion by relying on impalpable or highly suspect evidence related to his violent rap lyrics; and

[5] sentencing court made reasonable inference that defendant had a chance to walk away from confrontation and, thus, did not rely on impalpable or highly suspect evidence.

Affirmed.

**Procedural Posture(s):** Appellate Review; Pre-Trial Hearing Motion.

West Headnotes (16)

[1] **Weapons** ⟵ Right to bear arms in general
The Second Amendment right to keep and bear arms is not absolute. U.S. Const. Amend. 2.

1 Case that cites this headnote

[2] **Weapons** ⟵ Violation of right to bear arms
When faced with a constitutional challenge to a statute regulating firearms, the court must determine (1) whether the regulated conduct is covered under the plain text of the Second Amendment's protections, and if so, (2) whether the regulation is consistent with America's historical tradition of gun regulation. U.S. Const. Amend. 2.

[3] **Criminal Law** ⟵ Amendments and rulings as to indictment or pleas
Typically, the Supreme Court reviews the district court's decision not to dismiss a criminal information for an abuse of discretion.

[4] **Criminal Law** ⟵ Review De Novo
Whether a statute is constitutional is reviewed de novo.

[5] **Weapons** ⟵ Violation of right to bear arms
**Weapons** ⟵ Concealment
Statute prohibiting the carrying of a concealed weapon in public without a permit does not infringe upon the Second Amendment right to publicly carry firearms for self-defense; statute only prohibited the carrying of concealed weapons, and no state law prevented a person from openly carrying a firearm. U.S. Const. Amend. 2; Nev. Rev. St. § 202.350(1)(d)(3).

[6] **Weapons** ⟵ What guns are allowed
The Second Amendment, as understood at its implementation, did not protect the possession of any firearm but only firearms typically possessed by law-abiding citizens for lawful purposes. U.S. Const. Amend. 2.

[7] **Weapons** ⟵ Violation of right to bear arms
**Weapons** ⟵ Modified weapons

Weapons  Possession and Carrying in General

Statute prohibiting the possession of a firearm not imprinted with a serial number does not regulate conduct protected by the Second Amendment because it does not infringe on a law-abiding citizen's right to keep and bear arms for self-defense and other lawful purposes. U.S. Const. Amend. 2; Nev. Rev. St. § 202.364(1).

[8]   Criminal Law  Sentencing

Sentencing decisions are reviewed for an abuse of discretion.

[9]   Criminal Law  Sentencing

An abuse of discretion at sentencing will be found only when the record demonstrates prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence.

[10]   Criminal Law  Sentencing and Punishment

In determining if relief is warranted for abuse of discretion at sentencing, the appellate court must determine (1) whether the district court relied on facts founded on impalpable or highly suspect evidence, and (2) if so, whether prejudice resulted.

[11]   Sentencing and Punishment  Juvenile record

A district court may consider a defendant's juvenile record when making a sentencing determination.

[12]   Sentencing and Punishment  Other offenses, charges, misconduct

A court has discretion to hear evidence of uncharged facts at sentencing.

[13]   Sentencing and Punishment  Juvenile record

Sentencing court did not rely on impalpable or highly suspect evidence related to defendant's juvenile history at sentencing for involuntary manslaughter and related firearm offenses; while defendant was never adjudicated of certain robberies allegedly committed in another state, sentencing court did not mention the facts of those robberies as recounted by State, but instead simply noted the uncontested fact that defendant had a prior history with the juvenile system.

[14]   Sentencing and Punishment  Applicability of rules of evidence in general

A sentencing court may consider facts and circumstances that would not be admissible at trial.

[15]   Sentencing and Punishment  Other offender-related considerations

Defendant failed to demonstrate that sentencing court abused its discretion at sentencing for involuntary manslaughter and related firearm offenses by relying on impalpable or highly suspect evidence related to his violent rap lyrics as proof of bad character; court carefully stated its specific considerations in making sentencing determination, and list of reasons made no mention of rap lyrics or defendant's character.

[16]   Sentencing and Punishment  Nature, degree or seriousness of offense

Sentencing court made reasonable inference that defendant had a chance to walk away from confrontation and, thus, did not rely on impalpable or highly suspect evidence related to the facts of the crime at sentencing for involuntary manslaughter and related firearm offenses; witnesses testified that after minors initially taunted defendant after he tripped, defendant turned and approached them, at which point they tried to instigate a fight.

**\*350** Appeal from a judgment of conviction, pursuant to a plea of no contest, of involuntary manslaughter, carrying a concealed firearm without a permit, and possession of a firearm not imprinted with a serial number. First Judicial District Court, Carson City; Kristin Luis, Judge.

**Attorneys and Law Firms**

Orrin Johnson Law and Orrin J. H. Johnson, Reno, for Appellant.

Aaron D. Ford, Attorney General, Carson City; Garrit S. Pruyt, District Attorney, and Melanie A. Brantingham,

Supervising Deputy District Attorney, Carson City, for Respondent.

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

## OPINION

By the Court, PARRAGUIRRE, J.:

This appeal challenges the constitutionality of two Nevada statutes regulating the carrying and possessing of guns, following the United States Supreme Court's clarification of the standard for reviewing Second Amendment challenges announced in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022). Applying *Bruen*, we conclude that the statutes appellant challenges do not violate the Second Amendment right to keep and bear arms. We further conclude that the district court did not abuse its discretion by relying on impalpable or highly suspect evidence at sentencing. We therefore affirm the judgment of conviction.

## FACTS

On December 28, 2022, 19-year-old appellant Samuel Cocking was skateboarding down a Carson City street with a gun concealed in his waistband. The gun was not imprinted with a serial number. Cocking tripped, and a group of minors nearby began to ridicule him. Cocking turned to the group of minors and got into a verbal altercation with them. Seeing the confrontation, the minors' father, Philip Eubanks, approached Cocking to see why he was yelling at the minors. As Eubanks approached, Cocking pulled out his gun and shot Eubanks in the chest, killing him.

Cocking was arrested and charged by criminal complaint with open murder with the use of a deadly weapon, carrying a concealed firearm without a permit, and possession of a firearm not imprinted with a serial number. The district court denied his motion to dismiss the gun charges on the grounds that the statutes violated his Second Amendment right to keep and bear arms. Cocking reached an agreement with the State whereby he pleaded no contest to count I, involuntary manslaughter; count II, carrying a concealed firearm without a permit; and count III, possession of a firearm not imprinted with a serial number. In entering the plea, he reserved his right to challenge the constitutionality ***351** of the relevant statutes in counts II and III on appeal. The district court sentenced Cocking to serve consecutive prison terms totaling 43-108 months in the aggregate.

On appeal, Cocking claims that the district court erred by denying his motion to dismiss counts II and III, arguing that the statutes at issue are unconstitutional. He also claims that the district court abused its discretion at sentencing by relying on impalpable or highly suspect evidence. We disagree and affirm the judgment of conviction.

## DISCUSSION

*Cooking's Second Amendment arguments*

[1] The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The United States Supreme Court has held that the amendment guarantees an individual's right to carry arms in public for self-defense. *Bruen,* 597 U.S. at 12, 142 S.Ct. 2111. But the right to keep and bear arms is not absolute. *Id.* at 21, 142 S.Ct. 2111. "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* (quoting *District of Columbia v. Heller,* 554 U.S. 570, 626, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)).

> The Second Amendment guaranteed to all Americans the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions. Those restrictions, for example, limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms ....

*Id.* at 62, 142 S.Ct. 2111 (citation and internal quotation marks omitted).

[2] In determining whether a firearm regulation runs afoul of the Second Amendment's guarantees, the Supreme Court explained, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution

presumptively protects that conduct." *Id.* at 17, 142 S.Ct. 2111. "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24, 142 S.Ct. 2111. Accordingly, when faced with a constitutional challenge to a statute regulating firearms, this court must determine (1) whether the regulated conduct is covered under the plain text of the Second Amendment's protections, and if so, (2) whether the regulation is consistent with America's historical tradition of gun regulation.

[3] [4] Here, Cocking appeals the district court's denial of his motion to dismiss his two gun charges, arguing that the convictions violate his Second Amendment right to keep and bear arms.[1] "Typically, this court reviews the district court's decision not to dismiss [a criminal] information for an abuse of discretion." *Martinez v. State,* 140 Nev. ——, ——, 558 P.3d 346, 354 (2024). But whether a statute is constitutional is reviewed de novo. *Silvar v. Eighth Jud. Dist. Ct.,* 122 Nev. 289, 292, 129 P.3d 682, 684 (2006). Accordingly, we proceed to analyze de novo whether Cocking's convictions violate his Second Amendment rights under the framework outlined in *Bruen*.

*Count II—carrying a concealed firearm without a permit*
Cocking was convicted in count II of violating NRS 202.350(1)(d)(3), which states, in relevant part, that "a person within this State shall not ... [c]arry concealed upon his or her person any ... [p]istol, revolver or other firearm" without a permit. NRS 202.3657 sets forth criteria for the granting of a concealed carry permit. Relevant here, NRS 202.3657(3)(a)(1) states that an applicant must be "[t]wenty-one years of age or older" to obtain a concealed carry permit. As *352 Cocking was 19 years old at the time of the offense, the age restriction was the only requirement preventing him from obtaining a concealed carry permit. Cocking argues that this requirement, as applied to him, violates his right to keep and bear arms. His argument implicates two questions: whether the opportunity to obtain a concealed carry permit is protected under the plain text of the Second Amendment, and if so, whether restrictions on individuals under the age of 21 are consistent with historical firearm regulation.

Under *Bruen*'s first prong, the State argues that *concealed* carry is not covered under the plain text of the Second Amendment and is not presumptively protected. Therefore, the State argues, this court need not determine whether the age restriction in Nevada's licensing scheme is consistent with historical gun regulation in determining whether NRS 202.350(1)(d)(3) is constitutional. Some courts have held that the carrying of a concealed firearm is not covered under the plain text of the Second Amendment. *See, e.g., Peruta v. County of San Diego,* 824 F.3d 919, 929 (9th Cir. 2016) (stating "[t]he right of a member of the general public to carry a concealed firearm in public is not, and never has been, protected by the Second Amendment"), *abrogated on other grounds by Bruen,* 597 U.S. 1, 142 S.Ct. 2111.

In *Bruen*, the Court noted some historical prohibitions on concealed carry, commenting that early courts did not consider these restrictions to violate the Second Amendment.

> In the early to mid-19th century, some States began enacting laws that proscribed the concealed carry of pistols and other small weapons. As we recognized in *Heller*, "the majority of the 19th-century courts to consider the question held that [these] prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues."

*Bruen,* 597 U.S. at 52, 142 S.Ct. 2111 (alteration in original) (quoting *Heller,* 554 U.S. at 626, 128 S.Ct. 2783). The cases cited in *Heller* provide some insight into what early courts believed regarding the Second Amendment's applicability to concealed-carry restrictions.

> We are of the opinion, then, that so far as the act of 1837 seeks to suppress the practice of carrying certain weapons *secretly,* that it is valid, inasmuch as it does not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear arms. But that so much of it, as contains a prohibition against bearing arms *openly,* is in conflict with the Constitution and *void* ....

*Nunn v. State,* 1 Ga. 243, 251 (1846), *overruled in part by Hertz v. Bennett,* 294 Ga. 62, 751 S.E.2d 90, 95-96 (2013).

> [The gun restriction] interfered with no man's right to carry arms (to use its own words) in full open view, which places men upon an equality. This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country,

without any tendency to secret advantages and unmanly assassinations.

*State v. Chandler,* 5 La. Ann. 489, 490 (1850) (internal quotation marks omitted). As noted in *Bruen*, these cases provide evidence that while early courts believed that the Second Amendment protects an individual's right to carry firearms in public, they believed concealed carry to be outside the scope of the amendment's guarantees.

*Bruen* summarized historical evidence, stating that the evidence "does demonstrate that *the manner* of public carry was subject to reasonable regulation." 597 U.S. at 59, 142 S.Ct. 2111. Specifically, "[s]tates could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly." *Id.* The Court noted that challenges to "shall-issue" concealed carry licensing regimes may still violate the amendment if the regime "den[ies] ordinary citizens their right to public[ly] carry." *Id.* at 38 n.9, 142 S.Ct. 2111. Therefore, it appears the Court's understanding of the Second Amendment is that it protects the right to publicly carry, but not necessarily the preference to carry in a concealed manner.

[5] We conclude that because NRS 202.350(1)(d)(3) prohibits only the carrying of a *concealed* weapon in public without a permit, it does not infringe upon the Second ***353** Amendment right to publicly carry firearms for self-defense. It is notable that no law in the State of Nevada would have prevented Cocking from *openly* carrying a firearm. It cannot be said then that the age restriction in Nevada's concealed carry licensing regime denied Cocking his right to public carry. Therefore, we need not address whether the age-based restriction is consistent with the nation's historical tradition of gun regulation. We conclude that the district court did not err in denying Cocking's motion to dismiss count II.

*Count III—possession of a firearm not imprinted with a serial number*

Cocking was convicted in count III of violating NRS 202.364(1), which states that "[a] person shall not possess ... a firearm that is not imprinted with a serial number issued by a firearms importer or manufacturer in accordance with federal law and any regulations adopted thereunder." Once again, Cocking asserts that his conviction under this statute deprived him of his right to keep and bear arms because the possession of unserialized firearms is protected under the Second Amendment and because serial number requirements, being a relatively new invention, are inconsistent with this nation's historical tradition of firearm regulation.

[6] Cocking seems to argue that the first step of *Bruen*'s two-part inquiry requires a strict reading of the Second Amendment's plain text, and the amendment presumptively protects the possession of any type of weapon. Therefore, he argues the district court erred by failing to consider *Bruen*'s second prong and address his proffered evidence that serial numbers were not historically required. But such a reading of *Bruen* is inconsistent with how the Supreme Court has interpreted the Second Amendment. Federal courts have repeatedly stated that the Second Amendment, as understood at its implementation, did not protect the possession of any firearm but only firearms "typically possessed by law-abiding citizens for lawful purposes." *See, e.g., Heller,* 554 U.S. at 625-27, 128 S.Ct. 2783 (stating the Second Amendment only protects the carrying of weapons that are in common use for lawful purposes); *see also United States v. Reyna,* No. 3:21-CR-41 RLM-MGG, 2022 WL 17714376, at *4 (N.D. Ind. Dec. 15, 2022) ("For [*Bruen's*] Step One to have any meaning, the regulated conduct must be defined specifically enough that it can meaningfully compare to the Second Amendment's plain text—a plain text that is more complex than mere possession. To do otherwise would be to compare the regulated conduct to the Second Amendment's bare and oversimplified text—keeping and bearing arms, without the original public meaning emphasized in *Heller* and [*Bruen*]."); *United States v. Price,* 111 F.4th 392, 398 (4th Cir. 2024) ("[Defendant] argues that our inquiry at step one is extremely narrow: that, at least in this case, the only relevant question is whether the regulation criminalizes 'keep[ing] and bear[ing]' any 'Arms.' U.S. Const. amend. II. But that argument does not accord with the text of the Second Amendment, nor with the analysis put forth in *Heller, Bruen,* and [*United States v. Rahimi,* 602 U.S. 680, 144 S.Ct. 1889, 219 L.Ed.2d 351 (2024)]." (second and third alterations in original)), *cert. denied,* ––– U.S. ––––, 145 S.Ct. 1891, 221 L.Ed.2d 583, 2025 WL 951173 (2025).

Consistent with this understanding of the amendment, the State argues that the possession of an unserialized firearm is not presumptively protected conduct because unserialized firearms are not in common use for lawful purposes. Further, the presence of a serial number does not impair or improve

the functioning of a firearm. Therefore, requiring a serial number does not hinder an individual's ability to use a firearm for self-defense or other lawful purposes.

In *United States v. Serrano*, the United States District Court for the Southern District of California discussed whether the Second Amendment protects the possession of a firearm without a serial number, stating, "the Supreme Court in *Heller*, [*McDonald v. City of Chicago,* 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)], and *Bruen*, found that the Second Amendment protects the right of law abiding, responsible citizens to possess and carry weapons in case of confrontation." 651 F. Supp. 3d 1192, 1210 (S.D. Cal. 2023) (internal quotation marks omitted). And **\*354** "[c]onsequently, [the statute's] constitutionality hinges on whether a criminal prohibition on the possession of a firearm with an obliterated serial number 'burden[s] a law-abiding citizen's right to armed self-defense.' " *Id.* (third alteration in original) (quoting *Bruen,* 597 U.S. at 29, 142 S.Ct. 2111). The court found that the conduct of possessing an unserialized firearm was not protected by the Second Amendment because such firearms are "weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 1211 (internal quotation marks omitted).

In *Price*, the United States Court of Appeals for the Fourth Circuit also directly addressed an argument that a ban on unserialized weapons violates the Second Amendment post-*Bruen*. 111 F.4th at 396-97. *Price* reached the same conclusion as the *Serrano* court:

> [I]f we conclude that a weapon is not in common use for a lawful purpose, it can be permissibly excluded from the Second Amendment's protection based on the *tradition* of regulating dangerous and unusual arms. In other words, while historical tradition regarding the regulation of dangerous weapons *supports* a limitation on the scope of the Second Amendment right, a weapon must be in common use for a lawful purpose to be protected by that right.

*Id.* at 405 (citations and internal quotation marks omitted). The court found that unserialized "weapons would be preferable only to those seeking to use them for illicit activities"—i.e., concealing the commission of crimes. *Id.* at 406.[2] Accordingly, the court found such firearms were not in common use for lawful purposes and fell outside the scope of Second Amendment protection. *Id.* at 408. Many other federal courts have also found, post-*Bruen*, that the possession of unserialized firearms falls outside the scope of the Second Amendment. *See, e.g., United States v. Avila,* 672 F. Supp. 3d 1137, 1144 (D. Colo. 2023) (collecting cases).

[7] Consistent with other courts confronting the issue post-*Bruen,* we conclude that NRS 202.364(1) does not regulate conduct protected by the Second Amendment because it does not infringe on a law-abiding citizen's right to keep and bear arms for self-defense and other lawful purposes. Therefore, we conclude that the district court did not err in denying Cocking's motion to dismiss count III of the criminal information.

*Whether the district court abused its discretion in sentencing*

Cocking claims that the district court abused its discretion at sentencing by relying on impalpable or highly suspect evidence. He argues the district court considered three categories of information that were inappropriate: (1) juvenile offenses for which he was never adjudicated, (2) character evidence based on his rap lyrics, and (3) a view of the facts of the crime that was not supported by the record.

[8] [9] [10] Sentencing decisions are reviewed for an abuse of discretion. *Chavez v. State,* 125 Nev. 328, 348, 213 P.3d 476, 490 (2009). "[A]n abuse of discretion will be found only when the record demonstrates 'prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence ....' " *Lloyd v. State,* 94 Nev. 167, 170, 576 P.2d 740, 742 (1978) (quoting *Silks v. State,* 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976)). Accordingly, in determining if relief is warranted, this court must determine (1) whether the district court relied on facts founded on impalpable or highly suspect evidence, and (2) if so, whether prejudice resulted. *Id.*

*Juvenile history*

[11] [12] A district court may consider a defendant's juvenile record when making a sentencing determination. *See generally Thomas v. State,* 88 Nev. 382, 385, 498 P.2d 1314, 1316 (1972). Cocking argues that the **\*355** district court relied on a false characterization of his juvenile history because the State recounted details of certain robberies allegedly committed by Cocking in Texas for which he was never adjudicated. Although Cocking was never adjudicated

of those robberies, a court has discretion to hear evidence of uncharged facts at sentencing. *Cf. Ferris v. State,* 100 Nev. 162, 163, 677 P.2d 1066, 1066-67 (1984) (noting information pertaining to prior acts for which no conviction has been obtained was not impalpable or highly suspect because the information "was based upon reliable information given to police officers by one of the victims"). Here, the State provided police reports indicating Cocking was identified on video surveillance, Cocking admitted he was at the location of one of the robberies, and he was identified by multiple witnesses, including a codefendant.

[13] Further, the district court was careful to explain what it considered in making its sentencing determination and did not mention the facts of the robberies. Instead, as it relates to this issue, the district court simply noted the uncontested fact that Cocking had a prior history with the juvenile system. Therefore, we conclude that the district court did not rely on impalpable or highly suspect evidence related to Cocking's juvenile history.

*Rap lyrics*

[14] [15] Cocking asserts that the district court abused its discretion by considering violent rap lyrics he wrote as proof of bad character. We have expressed caution in allowing the State to present evidence of artistic works, including rap lyrics, during the State's case-in-chief. *See, e.g., Holmes v. State,* 129 Nev. 567, 573-74, 306 P.3d 415, 419 (2013). But a sentencing court may "consider facts and circumstances that would not be admissible at trial." *Denson v. State,* 112 Nev. 489, 492, 915 P.2d 284, 286 (1996). Importantly, the court was careful to state its specific considerations in making its sentencing determination. In listing its reasons, the court made no mention of the rap lyrics or Cocking's character. Therefore, we conclude that Cocking has failed to demonstrate that the district court relied on impalpable or highly suspect evidence in this regard.

*Facts of the crime*

[16] Cocking argues that the district court relied upon a characterization of the facts of the crime that were belied by the record. The court did raise the facts of the crime as the primary reason for the sentence, particularly noting that Cocking had a chance to walk away from the confrontation but instead chose to stick around and exchange insults with the group of minors, leading to the shooting. Cocking points to testimony from the minor witnesses at the preliminary hearing, who stated that they were instigating a fight with Cocking. He argues that the minors' testimony somehow negates the idea that he could have walked away. But the witnesses testified that after the initial taunting, Cocking turned and approached them, at which point they tried to instigate a fight. As the district court noted, after hearing the minors taunt him, Cocking could have walked away but instead chose to turn around and confront them. Once this happened, even though the minors testified that they were continuing to be disrespectful and trying to provoke him, he still had an opportunity to leave but stuck around, exchanging insults until the fatal shooting.

The district court made reasonable inferences about what happened based on the facts presented at the preliminary hearing and other proceedings. Therefore, we conclude that the district court did not abuse its discretion by relying on impalpable or highly suspect evidence.

CONCLUSION

The statutes Cocking challenges on appeal do not implicate presumptively protected conduct under *Bruen*'s two-part framework or, consequently, violate the Second Amendment of the United States Constitution. The district court therefore did not err in denying Cocking's motion to dismiss the counts of carrying a concealed firearm without a permit **\*356** and possession of a firearm not imprinted with a serial number. Further, the district court did not abuse its discretion in determining Cocking's sentence. Accordingly, we affirm the judgment of conviction.

We concur:

Bell, J.

Stiglich, J.

**All Citations**

567 P.3d 348, 141 Nev. Adv. Op. 21

---

**Footnotes**

[1]  Cocking also mentions the Nevada Constitution's Second Amendment counterpart—Nevada Constitution article 1, section 11(1)—stating that it is broader than the federal Second Amendment. But Cocking does not identify any meaningful distinction between the Second Amendment and the Nevada Constitution and provides arguments only related to the Second Amendment.

[2]  The *Price* decision specifically dealt with obliterated serial numbers, as opposed to guns that never had serial numbers. But courts generally treat the two categories the same for all practical purposes. *See, e.g., Montgomery v. Rosenblum,* No.: 3:24-cv-01273-AN, 2024 WL 3887248, at *5 (D. Or. Aug. 20, 2024) (stating plaintiff failed to identify "any meaningful difference between wanting to manufacture an unserialized firearm and wanting to remove a serial number from a firearm—in both instances, the goal is obtaining an unserialized firearm").

---

**End of Document**                                          © 2026 Thomson Reuters. No claim to original U.S. Government Works.