**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOHN RIGBY, ALAN KNIGHT, and FIREARMS POLICY COALITION, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 21-1523 (MN) |
| KATHY JENNINGS, Attorney General of Delaware, | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO ALTER OR AMEND THE JUDGMENT**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE
Jennifer Kate Aaronson (#3478)
Ian R. Liston (#5507)
Deputy Attorney General
820 N. French Street
Wilmington, Delaware 19801
(302) 577-8808

*Attorneys for Defendant*

Date: October 8, 2026

**TABLE OF CONTENTS**

**I . INTRODUCTION……………………………………………………………………1**

**II. PROCEDURAL HISTORY…………………………………………………………2**

**III. SUMMARY OF ARGUMENT……………………………...………………………3**

**IV. STATEMENT OF FACTS……………………………………..……………………4**

**V. LEGAL STANDARD…………………………………………………………………5**

**VI. ARGUMENT……………………………………………………………...…………6**

**A. It was clear error to hold the Enjoined Statutes are unconstitutional under *Bruen*'s two-step analysis, as clarified by *Berger*.………………………………6**

**1. The Enjoined Statutes are minimal, objective registration and serialization requirements that fall outside the scope of Second Amendment infringements, which ends the constitutional analysis at step one of *Bruen*. ……………………………………………………………………………..6**

**2. Even if the possession of ghost guns is analyzed under step two, the Enjoined Statutes are constitutional because unserialized firearms are not commonly used for legal purposes. …………………………………………………………………….………7**

**3. Delaware's serialization requirements comport with the historical tradition of public safety monitoring and market regulation. ……………………………………………………….…………………12**

**4. The plain text of the Second Amendment does not protect the right to self-manufacture unserialized firearms.…………………………..……………15**

**B. Permanently enjoining the Enjoined Statutes Constituted Clear Error, and the injunction should be lifted to avoid manifest injustice. …………………………………………………………………………………17**

**1. The enactment of House Bill 418 removed any threat of irreparable harm. …………………………………………………………………………………17**

**2. The balance of equities and the public interest tip against an injunction. …………………………………………………………………………………19**

**VII. CONCLUSION ……………………………...……………………………………20**

TABLE OF AUTHORITIES

Page(s)

Cases

*Adams v. Freedom Forge Corp.*,
204 F.3d 475 (3d Cir. 2000) ........ 17
*Ass'n N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
183 F.4th 211 (3d Cir. 2026) ........ 8, 9
*B & L Prods., Inc. v. Newsom*,
104 F.4th 108 (9th Cir. 2024) ........ 1
*Bondi v. VanDerStok*,
604 U.S. 458 (2025) ........ 2, 11, 14, 15
*Bradley*,
2023 WL 2621352 (collecting treatises) ........ 13, 16
*Campbell Soup Co. v. ConAgra, Inc.*,
977 F.2d 86 (3d Cir. 1992) ........ 17
*Defense Distributed v. Attorney General of New Jersey*,
167 F.4th 65 (3d Cir. 2026) ........ 15
*District of Columbia v. Heller*,
554 U.S. 570 (2008) ........ 8, 9, 10
*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ........ 17
*Harbor Assocs. Ltd. P'ship v. Micron Devices, LLC*,
2022 WL 1624360 (D. Del. May 23, 2022) ........ 17
*Lazaridis v. Wehmer*,
591 F.3d 666 (3d Cir. 2010) ........ 5
*Maryland v. King*,
567 U.S. 1301 (2012) ........ 19
*Marzzarella*,
614 F.4th at 94 ........ 6
*Montgomery v. Rosenblum*,
2025 WL 2781758 (D. Or. Sept. 29, 2025) ........ 10
*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ........ Passim
*New York v. Arm or Ally, LLC*,
718 F. Supp. 3d 310 (S.D.N.Y. 2024) ........ 10
*New York v. Arm or Ally, LLC*,
718 F. Supp. 310 (S.D.N.Y. 2024) ........ 13
*Nextel W. Corp. v. Unity Twp.*,
282 F.3d 257 (3d Cir. 2002) ........ 17
*Nken v. Holder*,
556 U.S. 418 (2009) ........ 19
*Princeton Univ. v. Schmid,*
455 U.S. 100 ........ 17

*Rigby v. Jennings*,
630 F. Supp. 3d 602 (D. Del. 2022) .......... 2
*Rigby v. Jennings*,
2026 WL 2664371, (D. Del. Sept. 10, 2026) .......... passim
*United States v. Berger*,
2026 WL 2577367 (3d Cir. Sept. 1, 2026) .......... Passim
*United States v. Clerfe*,
186 F.4th 141 (3d Cir. 2026) .......... 6
*United States v. Gomez*,
159 F.4th 172 (2d Cir. 2025) .......... 10
*United States v. Hemani*,
608 U.S. 772 .......... 13
*United States v. Marzzarella*,
614 F.3d 85 (2010) .......... 6, 9, 10, 19
*United States v. One Palmetto State Armory PA-15 Machinegun Receiver/Frame*,
822 F.3d (3d Cir. 2016) .......... 9
*United States v. Perez-Garcia*,
96 F. 4th 1166 (9th Cir. guns 2024) .......... 10
*United States v. Rahimi*,
602 U.S. 680 (2024) .......... 13
*United States v. Reyna*,
2022 WL 17714376 (N.D. Ind. Dec. 15, 2022) .......... 10
*Wiest v. Lynch*,
710 F.3d 121 (3d Cir. 2013) .......... 5
*Wolford v. Lopez*,
146 S. Ct. 2032 (June 25, 2026) .......... 12

Statutes

11 *Del. C.* § 222 .......... 4
11 Del. C. § 1459A .......... *passim*
11 Del. C. § 1463 .......... *passim*
18 U.S.C. § 922 .......... 4, 10, 19
18 U.S.C. § 923 .......... 4
26 U.S.C. § 5822 .......... 6
26 U.S.C. § 5841 .......... 7
26 U.S.C. § 5842 .......... 7

Delaware House Bills.

H.B. 125 .......... 4,7
H.B. 418 .......... Passim
H.B. 125 .......... 7

Legislative History

H.R. Rep. Nos. 90-1956, at 34 & 99-495, at 4 .......... 9

Rules

Fed. R. Civ. P. 59(e) ........................................................................................................ 5

Regulations

27 C.F.R. § 478.92(a)(2) ........................................................................................................ 4
27 C.F.R. § 479.62 ........................................................................................................ 6, 7

## I. INTRODUCTION

Second Amendment case law and statutory law regarding unserialized, and, in some cases, 3D printed, firearms has developed rapidly over the past two years. Most importantly, in the nine days before the Court issued its opinion, order, and judgment on the cross motions for summary judgment (D.Is. 81 (*Rigby v. Jennings*, 2026 WL 2664371, (D. Del. Sept. 10, 2026) ["Opinion" or "Op."], 82, and 83), (1) the Third Circuit issued a precedential opinion in *United States v. Berger*, which explains that "History teaches that governments may ban weapons when they are commonly used principally for crime" and that serialization and registration requirements are incidental burdens that do not infringe Second Amendment rights at step one of *Bruen* (2026 WL 2577367, at *1, *5 (3d Cir. Sept. 1, 2026)) ["*Berger*", Ex. A]; and (2) on September 3, 2026, the Governor of Delaware signed House Bill ("H.B.") 418, 153 Gen. Assemb., 2d Reg. Sess. (Del. 2021) ["H.B. 418"], which amends both 11 Del. C. §§ 1459A and 1463 to provide a six-month grace period for owners of unserialized firearms to serialize or relinquish their weapons under a clear and objective process. The Court issued its decision before the State filed notices of these subsequent authorities; thus, the Court did not have the benefit of considering these developments.

As a result, the Court's judgment effects manifest injustice by enjoining the challenged statutes. *Berger* is controlling Third Circuit precedent that alters the Court's analysis under *Bruen*, and H.B. 418 amends the statutes at issue in a manner that directly addresses the reasoning underlying the Court's injunction. *Cf., e.g.*, Op. at *10 n.18 ("Had this case arisen in another circuit, there may have been a nontrivial argument that prohibiting self-manufacturing passes *Bruen*'s first step because it does not place a 'meaningful' restriction on acquiring and keeping firearms. The Third Circuit has not adopted that standard." Op. at *10 n.18 (citing, *B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 119 (9th Cir. 2024)); *id.* at *11 ("[H]ad Delaware implemented a

serialization process that required all currently owned self-manufactured firearms to be serialized with the state, that might pass constitutional muster.”).

This Court’s resolution of Plaintiffs’ motion for summary judgment reflects clear error because it is contrary to Third Circuit precedent in *Berger* and because it finds a right to manufacture firearms in the plain text of the Second Amendment where none exists. Even if the plain language of the Second Amendment did encompass a right to self-manufacture firearms, a serialization requirement on the exercise of such a right is merely an incidental burden that is constitutional at step one of *Bruen*. *Berger*, at *5.

Accordingly, allowing the injunction of the challenged statutes to continue would work manifest injustice. The Court should amend its judgment by denying Plaintiffs’ motion for summary judgment, granting the remainder of Defendant’s motion for summary judgment, and dissolving the preliminary and permanent injunctions against enforceing 1 Del. C. §§ 1459A(b), 1463(a), 1463(c)(1), and the portion of § 1463(b) that prohibit manufacturing, assembling, or causing the manufacture or assembly of an untraceable firearm (the “Enjoined Statutes”).

## II. PROCEDURAL HISTORY

On October 27, 2021, Plaintiffs brought this action challenging Delaware’s laws banning unserialized firearms, *see generally* Docket Item [“D.I.”] 1, and sought injunctive relief (D.I. 5). Defendant moved to dismiss (D.I. 19). The Court denied Defendant’s motion but partially granted Plaintiffs’ request, preliminarily enjoining Delaware’s prohibitions against possessing and self-manufacturing untraceable firearms. *Rigby v. Jennings*, 630 F. Supp. 3d 602, 619–20 (D. Del. 2022) (D.I. 38). Thereafter, the parties filed cross-motions for summary judgment. D.Is. 57, 59. Briefing was completed in April 2024. D.Is. 58, 60–62, 63–65. Both parties then accepted the Court’s invitation to file supplemental briefs addressing the Supreme Court’s decision in *Bondi v.*

*VanDerStok*, 604 U.S. 458 (2025). D.Is. 67, 72–73. On September 10, 2026, the Court issued its Opinion granting in part and denying in part the cross-motions for summary judgment. Op.; D.Is. 82–83. Defendant now moves to alter or amend that judgment.

## III. SUMMARY OF ARGUMENT

1. The judgment results from clear error because it misapplies the standard set forth in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ("*Bruen*") as clarified by Third Circuit's September 1, 2026 opinion in *United States v. Berger* that minimal, objective serialization requirements do not infringe the Second Amendment at *Bruen*'s step one.

2. The judgment is also the result of clear error at Bruen step two, if reached, because regulations of unserialized weapons are consistent with *Berger's* analysis that weapons commonly used for crime may be banned.

3. The Court's injunction works manifest injustice because it is based on the clear errors described above and because it applies to statutes that have been amended through H.B. 418, as of September 3, 2026, to add a six-month safe harbor during which owners of unserialized firearms may follow a clear process to legalize or relinquish their weapons.

4. The Court committed clear error by finding the manufacture of firearms is protected by plain text of the Second Amendment. Even if a right to self-manufacture firearms were protected by the Second Amendment, the serialization requirement that the Enjoined Statutes place on all firearms, whether self-manufactured or not, represents at most an incidental burden that is constitutional at step one of *Bruen*.

5. In the interest of fairness, if the Court lifts the injunctions, the State will restart H.B. 418's six-month serialization period as of the date the injunction is no longer in effect.

## IV. STATEMENT OF FACTS

Delaware H.B. 125 criminalizes the distribution, possession, and manufacture of unserialized firearms and unfinished firearm components ("ghost guns"). 151st Gen. Assemb. (Del. 2021) (codified at 11 *Del. C.* §§ 222, 1459, 1459A, 1462, 1463). To avoid redundancy, Defendant incorporates by reference the factual findings set forth in the Opinion (Op. at *1–5), the statement of facts in Defendant's briefs in support of her motions to dismiss (D.I. 20 at 2–4) and summary judgment (D.I. 58 at 2–8), and the arguments thereto. This brief assumes familiarity with the Opinion and uses its defined terms. *See* Op. at *1–2.

On September 1, 2026, *Berger* clarified the two-step standard for reviewing firearm regulations under *Bruen* for the Third Circuit.

Two days later, H.B. 418 was enacted, amending Delaware's laws banning unserialized firearms. (Ex. A). Delaware's revised statute provides no immediate criminal liability, granting a six-month window for owners of unserialized firearms as of the effective date of the statute to serialize their property via Federal Firearms Licensees ("FFL"). 11 Del. C. §§ 1459A(e)(1) & 1463(f)(1). This grace period comports with federal standards mandating that commercial firearm entities obtain licenses, serial-mark inventory, maintain transaction records, and run background checks.18 U.S.C. §§ 922(t), 923(a), 923(g)(1)(A), 923(i) (2018). To mitigate the public safety threat of unmarked firearms, federal regulations require serialization the moment a ghost gun interacts with the licensed commercial grid. Under ATF Final Rule 2021R-05F, an FFL taking an unmarked firearm into inventory for repair must serialize it within seven days, or prior to returning it. 27 C.F.R. § 478.92(a)(2) (2026). An FFL can only avoid this requirement if they complete the repair and return the firearm to the owner on the same day, keeping it out of their overnight logbooks. *Id.* § 478.125(e). Delaware's statute simply closes the "same-day repair" loophole,

preventing owners from skirting law enforcement tracking. Because federal law already permits FFLs to return serviced firearms to their original owners without initiating a Form 4473 or background check, Plaintiffs face no substantive, administrative barrier to re-acquiring their property once compliant. *See* Harry McCabe, *Compliance: Record Keeping for Repair Firearms, NSSF*, https://www.nssf.org/retailers/compliance-record-keeping-repair-firearms/ (last visited Oct. 7, 2026) ("If the firearm is returned to the same person who brought it in for repair, no Form 4473 or background check is required because the law says this is not a 'transfer.'").

On September 10, 2026, the Court issued its Opinion granting in part and denying in part the parties' cross-motions for summary judgment. Op. at *1–2; D.Is. 82–83. The Court held that the challenged bans on instructions for manufacturing unserialized weapons and the distribution of unserialized frames or receivers are constitutional but that the prohibitions on possessing, manufacturing and assembling unserialized weapons in 11 Del. C. §§ 1459A(b), 1463(a), 1463(b) and (c)(1) are unlawful and issued a permanent injunction against those statutes. Op. at *13.

## V. LEGAL STANDARD

Rule 59(e) permits a court to "alter or amend a judgment" when the movant can show "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Fed. R. Civ. P. 59(e); *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).

## VI. ARGUMENT

### A. It was clear error to hold the Enjoined Statutes are unconstitutional under *Bruen*'s two-step analysis, as clarified by *Berger*.

#### 1. The Enjoined Statutes are minimal, objective registration and serialization requirements that fall outside the scope of Second Amendment infringements, which ends the constitutional analysis at step one of *Bruen*.

The Enjoined Statutes do not ban any underlying class of firearms—they merely require that, to be legal, any firearm in Delaware, whether purchased, otherwise acquired, or self-manufactured, be serialized. "With or without a serial number, a pistol is still a pistol." *United States v. Marzzarella*, 614 5.3d 85, 94 (3d Cir. 2010) *abrogated on other grounds by Bruen*, 597 U.S. 1. Because "unmarked firearms are functionally no different from marked firearms," a citizen retains the same self-defense capabilities with a serialized instrument. *United States v. Clerfe*, 186 F.4th 141, 147 (3d Cir. 2026) (quoting *Marzzarella*, 614 F.4th at 94). Under the Third Circuit's analysis in *Berger*, such restrictions do not infringe Second Amenement rights—instead, they represent a minimal, objective regulation that ensures the orderly exercise of the right and that are presumptively constitutional under step one of *Bruen*. *Berger*, at *4.

In *United States v. Berger*, the Third Circuit reiterated that "reasonable registration requirements are not infringements." *Id.* at *6. The court reasoned that a regulation violates the Constitution "only if it destroys or illegitimately restricts the right," *id.* at *5 (quoting Daniel D. Slate, *Infringed*, 3 J. Am. Const. Hist. 381, 396–441 (2025)), and held that a requirement to serialize home-manufactured silencers was constitutional at step one. *Id.* at *6.

In *Berger*, Berger claimed a constitutional right to receive, possess, and construct untraceable, unregistered firearms and parts—there silencers. Berger "made some of the silencers at home and bought others. So, he had to submit an application with his personal information, fingerprints, photograph, and description of the silencer. 26 U.S.C. § 5822; 27 C.F.R. § 479.62.

He had to notify the chief law enforcement officer in his area and pay a then-$200 tax for each silencer." *Id.* Berger also had to register his silencers and mark them with serial numbers. 26 U.S.C. §§ 5841(b), 5842(a). 2026 WL 2577367, at *6. The court explained these "clear, narrow standards"—which apply to both silencers that Berger bought and those he self-manufactured at home—"ensure that only law-abiding citizens own silencers" *Id.* The Third Circuit held that such requirements are presumptively constitutional under step one of *Bruen*. *Id.* at *5).

As applied to Plaintiffs' challenge to HB 125, *Berger* teaches that specific minimal regulatory mechanisms are presumptively constitutional at step one of *Bruen* rather than being viewed as burdens on Second Amendment rights. *Id.* at *5–6. The Enjoined Statutes are just such a minimal regulatory mechanism: requiring firearms and firearm components—however they are acquired—to be serialized does not infringe Second Amendment rights. Indeed, Delaware's regulations are less intrusive and burdensome than the constitutional registration requirements in *Berger*; *cf.* 11 *Del. C.* §§ 1459A(e)1), 1463(f)(1) (permitting decentralized serialization via local FFLs). While federal regulations permissibly require a manufacturer to submit personal information and mark items with serial numbers, H.B. 418 seeks only routine compliance with the requirement that firearms and their components be serialized. Such requirements ensure home-manufactured weapons can be traced by law enforcement if used in crimes. *Cf. Berger*, at *6 (registration requirements are "clear, narrow standards that ensure that only law-abiding citizens own silencers.").

**2. Even if the possession of ghost guns is analyzed under step two, the Enjoined Statutes are constitutional because unserialized firearms are not commonly used for legal purposes.**

To the extent the Court reaches the merits of the amended statutes under the historical-tradition test, it was still clear error to hold the Enjoined Statutes unconstitutional.

"The Second Amendment is not boundless. *Heller* recognized that the scope of the Second Amendment is limited to guns "in common use," not "dangerous and unusual weapons." *Berger*, 2026 WL 2577367, at *2 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008)). "The Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Bruen*, 597 U.S. at 47 (quoting *Heller*, 554 U.S. at 627). Courts assesses whether the carrying of a weapon was 'in common use at the time' at *Bruen*'s step two and "*Bruen* makes clear that when we assess common use for lawful purposes, [the court] considers how a given firearm is used in present times—not in the past." *Ass'n N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 183 F.4th 211, 236–238 (3d Cir. 2026) ["*ANJRPC*"].

"In determining whether a modern regulation has a relevantly similar historical analogue, the history-and-tradition test considers the functionality, features, and common use of a regulated weapon." *Id*. at 238. Unlike in *Association of New Jersy Rifle and Pistol Club, Inc. v. Attorney General of New Jersey*, where the regulation at issue affected a class of firearms defined by the weapons mechanical function, here the regulation at issue has no effect whatsoever on the functionality of any firearm. Instead, it is the lack of a serial number is a feature that makes any otherwise lawful firearm dangerous and unusual because they are principally misused by those seeking to evade detection by law enforcement.

"History teaches that governments may ban weapons when they are commonly used principally for crime." *Berger*, 2026 WL 2577367, at *1. Noting Congress banned machine guns (and silencers) in 1968 because they are "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime," and that between 1925 and 1934, at least 29 states had already done the same, the *Berger* court held that possession of a machine gun

is not protected by the Second Amendment. *Id.* at *4–5 (quoting H.R. Rep. Nos. 90-1956, at 34 & 99-495, at 4 (1968) (Conf. Comm. Rep. to the Gun Control Act of 1968). Rather, the "rapid consensus" outlawing these dangerous weapons—which developed long after the Founding—demonstrates that prohibiting their possession is consistent with our nation's tradition of banning weapons commonly used for crime. *See Berger*, 2026 WL 2577367, at *1 ("History teaches that governments may ban weapons when they are commonly used principally for crime."); *United States v. One Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 1636, 142 (3d Cir. 2016) (weapons that are "'exceedingly dangerous' and 'not in common use for lawful purposes'" are not protected by the Second Amendment).

The Third Circuit rejects the idea that unmarked firearms constitute a protected class of weapons based on historical common use. *United States v. Marzzarella*, 614 F.3d 85, 99 (2010) (citing *Heller*, 554 U.S. at 629) (explaining the court "c[ould] not conceive of a lawful purpose for which a person would prefer an unmarked firearm, the burden will almost always fall only on those intending to engage in illicit behavior" and "[r]egulating the possession of unmarked firearms—and no other firearms—therefore fits closely with the interest in ensuring the traceability of weapons."). "Because a firearm with a serial number is equally effective as a firearm without one, there would appear to be no compelling reason why a law-abiding citizen would prefer an unmarked firearm. These weapons would then have value primarily for persons seeking to use them for illicit purposes." *Id.* at 95. "With or without a serial number, a pistol is still a pistol." *Marzzarella*, 614 5.3d at 94; *see also ANJRPC*, 183 F.4th at 233–34 (explaining "a weapon that is 'dangerous and unusual' cannot be in common use for lawful purposes[; t]hat is, while 'dangerous and unusual' may not be the direct opposite of 'in common use for lawful purposes,' the two descriptors are mutually exclusive").

The view the Third Circuit expressed in *Marzzarella* is part of a consensus that unserialized weapons are commonly used for crime that has rapidly developed across federal courts as such weapons have proliferated. *See, e.g.*, *United States v. Perez-Garcia*, 96 F. 4th 1166, 1180 (9th Cir. guns 2024) ("The Second Amendment may not protect [a person]'s right to bear or keep 'dangerous and unusual weapons,' which might include ghost or silencers or armor-piercing ammunition." (quoting *Heller*, 554 U.S. at 627)); *New York v. Arm or Ally, LLC*, 718 F. Supp. 3d 310, 335–36 (S.D.N.Y. 2024) (finding unfinished frames and receivers qualify as actionable firearms under statutory definitions, thereby insulating tracking laws and serialization structures from threshold Second Amendment challenges); *Montgomery v. Rosenblum*, 2025 WL 2781758 (D. Or. Sept. 29, 2025) (denying preliminary injunction against state statute regulating undetectable firearms and unfinished frames or receivers, finding challengers failed to prove untraceable components occupy the category of weapons commonly possessed by law-abiding citizens for lawful self-defense); *United States v. Gomez*, 159 F.4th 172, 177–78 (2d Cir. 2025). "Guns with obliterated serial numbers are useful for criminal activity because identifying who possessed a firearm is more difficult when the serial number is destroyed. By using a gun without a serial number, a criminal ensures he has a greater higher likelihood of evading justice." *United States v. Reyna*, 2022 WL 17714376, at *5 (N.D. Ind. Dec. 15, 2022) (first quoting *Heller*, 554 U.S. at 625; and then quoting *Marzzarella*, 614 F.3d at 98). Unserialized precursor parts suit illicit subversion rather than defensive needs, as a "law-abiding citizen who uses a gun for self-defense has no reason to prefer a deserialized gun to a gun with serial number intact." *Id.* Prohibiting a weapon might implicate the Second Amendment if functionality defined the firearm—it does not do so when a non-functional attribute defines the asset. *Reyna*, 2022 WL 17714376, at *5 (first citing *Heller*, 554 U.S. at 625; then citing 18 U.S.C. § 922(k); and then quoting *Marzzarella*, 614

F.3d at 98). The Supreme Court cemented this administrative reality in *Bondi v. VanDerStok*, rejecting a facial challenge to federal ghost-gun regulations. 604 U.S. 458, 481 (2025).

In recent years, unserialized, privately made firearms have become a "weapon of choice" for violent crime because they lack a traceable paper trail. D.I. 58.1, Ex. A, Webster Decl. at 5 ["Webster"] (quoting Anthony A. Braga & Philip J. Cook, *Policing Gun Violence: Strategic Reforms for Controlling Our Most Pressing Crime Problem* 39 (Oxford Univ. Press 2023). Between 2017 and 2021, law enforcement recoveries of ghost guns reported to the ATF skyrocketed by over 1,000%, tracking a nationwide spike in gun violence. *Id.* Ex. C, DeLay Decl. at 5 ["DeLay"] (citing ATF Rep. (2021)). This accounted for 25% and up to half of all guns recovered at crimes scenes in major cities. *Id.* (citing Glenn Thrush, *'Ghost Guns': Firearm Kits Bought Online Fuel Epidemic of Violence*, NY TIMES (Nov. 14, 2021), https://www nytimes.com/2021/11/14/us/ghost-guns-homemade-firearms.html.). In underground markets, violent offenders including underage youth prefer "fresh," "out-of-the-box" firearms over used street weapons to elude recordkeeping. Webster at 6–7. By removing point-of-sale background checks and tracking features, ghost guns lower transaction costs (like risk of detection, arrest, and incarceration) for traffickers and proscribed purchasers. *Id.* at 9–11. States lacking background checks, dealer oversight, and purchaser licensing exporting a disproportionate share of ghost guns. *Id.* at 12. By July 2023, twelve states and the District of Columbia had enacted legislation to regulate the sale and manufacture of ghost guns. DeLay at *6 & n.15 (citing *Which States Regulate Ghost Guns?*, Everytown for Gun Safety, https://everytownresearch.org/rankings/law/ghost-guns-regulated/ (last visited Oct. 8, 2026) (reporting that 17 states have now enacted regulations targeting ghost guns).

Against the weight of such legal authority and expert testimony, it was clear error for the Court to find that "the evidence show[ed] that law-abiding citizens customarily use untraceable firearms and unserialized firearm components for constitutionally protected purposes, *i.e.*, self-defense." Op. at *8 (citing D.I. 61 ¶¶ 21–24, 35–36, 44), where the evidence presented by plaintiffs was anecdotal and reflected the subjective desires of two individuals—Plaintiffs Knight and Rigby—and a handful of anonymous organizational members. The stipulated record evinces nothing more than isolated intentions: Rigby and Knight merely desire "to own and repossess" their items, while some of the organizational roster avers they "would self-manufacture additional operable firearms" if the law allowed. D.I. 61 ¶¶ 21–24, 35–36, 44. A handful of individual preferences for unserialized firearms cannot establish that unserialized firearms are commonly used for lawful purposes where the feature of serialization has no bearing on functionality of a weapon or the exercise of Plaintiffs' Second Amendment rights in light of the great weight of federal authority, including *Marzzarella* in the Third Circuit, that they are commonly used in crime and the expert testimony presented by the State.

The fact that a single individual may prefer a weapon that is not commonly used for lawful purposes—such as an unserialized weapon—for a lawful purpose such as self-defense does not give that category of dangerous and unusual weapon protection under the Second Amendment any more than a single individual preference to use a machine gun for self-defense would entitle him or her to own one in contravention of *Berger*. It was clear error to hold otherwise.

**3. Delaware's serialization requirements comport with the historical tradition of public safety monitoring and market regulation.**

To meet its historical burden under *Bruen*, a government must pair analogues through a three-party inquiry tracking jurisdictional breadth, acceptance, and relevant similarity. *Wolford v. Lopez*, 146 S. Ct. 2032, 2044 (June 25, 2026) (citing *Bruen*, 597 U.S. at 36). A government may

restrict weapons if doing so is "consistent with the principles that underpin our regulatory tradition," looking to "why" and "how" the regulation burdens the right. *Rahimi*, 602 U.S. 680, 692 (2024). The regulatory challenges posed by firearms today are not the same as those earlier generations faced. *United States v. Hemani*, 608 U.S. 772, 780. Minimal, objective regulations that govern the process of buying and selling guns align with the normal rule allowing incidental burdens on constitutional rights. *Berger*, 2026 WL 2577367, at *6. Because Delaware's Enjoined Statutes impose a minimal, non-functional requirement for valid public tracking, they are consistent with the same regulatory tradition that *Berger* teaches is constitutional..

History also provides ample precedent for regulating the manufacture, possession, and sale of guns to ensure accountability. *New York v. Arm or Ally, LLC*, 718 F. Supp. 310, 336 (S.D.N.Y. 2024) (collecting cases). The Founders enacted militia laws requiring citizens and their households to present their firearms at the muster field twice a year for state-level firearm tracking. *Bradley*, 2023 WL 2621352, at *5 (collecting treatises). Beyond the fields, founding-era legislatures in New Hampshire, New Jersey, and Rhode Island went a step further, deploying government officials to conduct intrusive, "door-to-door firearm censuses" to record exactly which community members owned weapons. *Id.* Because the founding generation recognized that true liberty requires an orderly society rather than unchecked militarization, requiring a non-functional serial mark falls within this established history of public-safety monitoring.

Under *Bruen*, when a state legislature acts to combat a modern public safety threat that could not have arisen at the founding, the historical analogue inquiry must be flexible rather than mechanical. *Bruen*, 597 U.S. at 25–26. Post-*Bruen* decisions confirm this division between functional arms and administrative verification. *Berger*'s analysis of machine guns shows that a tradition of regulating a class of firearms may develop in modern times and still be constitutional

under the second step of *Bruen*. *Berger*, at *3–*4. As the Supreme Court observed in *Bondi v. VanDerStok*, the rapid proliferation of privately manufactured, untraceable guns has created a severe law enforcement and tracing crisis across the nation. 604 U.S. 458, 481 (2025). Weapon parts kits have grown exponentially. The Supreme Court recognized that, while home hobbyists enjoy them, criminals also find them attractive. *Id.* at 465. "The upshot? Police departments around the Nation have confronted an explosion of crimes involving these ghost guns." *Id.* (cleaned up) (noting 1,600 ghost-guns reports in 2017, and more than 19,000 by 2021). Just as the *Berger* court concluded "Machine guns are commonly used for crime, not self-defense. So they can be banned" (Berger, at *6), so too with unserialized firearms.

*Bondi v. VanDerStok* underscores that preventing the subversion of commercial background checks and law enforcement tracing infrastructure represents a paramount government interest. 604 U.S. 458, 467 ("Just consider some of the laws we have already encountered that require those who import, manufacturer, or deal in 'firearms' to obtain federal licenses, keep records of their sales, and conduct background checks. Plainly, those criminal laws can be applied sensibly to weapon parts kits." (citation omitted)). By mandating serialization for these precursor parts, H.B. 418 implements a modern solution to a modern threat, fulfilling the similar public-safety "why" that animated historical militia musters and firearm censuses.

Consistent with Supreme Court and Third Circuit precedent, the Opinion validates restrictions on distributing unserialized firearm components by stating they merely impose conditions on commercial sales. Op. at *9 (collecting cases). That holding demonstrates that it was clear error to hold that self-manufacturing unserialized firearms is a protected "necessary predicate" to the right to keep arms under *Bruen*. If the Second Amendment permits a state to place conditions on the commercial sale of firearm part kits, the Second Amendment cannot logically

require a state to permit an individual to self-manufacture an unserialized weapon from parts that can only be acquired in violation of such permissible restrictions.

Indeed, the Supreme Court upheld requirements to serialize firearm fames and receivers included in buy-build-shoot kit in kits in *VanDerStok*. The Court found "artifact nouns sometimes capture unfinished articles," so incomplete components constitute firearms when they can be "readily converted into a firearm." 604 U.S. at 482–83 (cleaned up). The Court deemed kits containing "all the parts necessary" to construct an operational weapon remain "firearms" under the Gun Control Act. *Id.* at 474. Because an ordinary person can assemble component parts "in short order" using common tools, the Court upheld federal regulations requiring their serialization to prevent compliance loopholes that would otherwise flood public circulation with untraceable weapons. *Id.* at 483–84.

**4. The plain text of the Second Amendment does not protect the right to self-manufacture unserialized firearms.**

The Court committed clear error when it found the right to manufacture arms in the plain text of the Second Amendment. Of the cases cited by the Court for the proposition that the plain text of the amendment supports acquiring arms (*see* Op. at *9), none protects the self-manufacture of unserialized firearms. Indeed, Third Circuit decisions concerning the self-manufacture of firearms in no way endorsed the idea. *See* Op. at *11 (citing *Defense Distributed v. Attorney General of New Jersey*, 167 F.4th 65, 76 (3d Cir. 2026) (describing without endorsing appellants' argument: "Putting aside the novelty of their asserted Second Amendment right to 'self-manufacture firearms free from any major regulation whatsoever,' we agree with the District Court that Appellants have failed to plead that the alleged violation of this right resulted in any actual and concrete Second Amendment injury.) (cleaned up)).

Stretching the Second Amendment to protect not only the ancillary acquisition of firearms, but beyond, to protect the manufacture of weapons that are not protected at step one of *Bruen*—unserialized firearms—is a bridge too far and constitutes clear error.

Further, relying on the need to clean and repair lawful serialized weapons to find a right to manufacture unserialized weapons at home was also clear error. Op. at *9–10. Cleaning or repairing a serialized firearm bears no relation to building an untraceable weapon from raw parts kits or 3D-printer files. Delaware's statute bans the assembly of untraceable firearms, not the maintenance of legal ones. A citizen can dismantle, clean, and reassemble a standard, serialized gun without violating the law.

As above, Plaintiffs' personal subjective preferences cannot define the bounds of constitutional protections. The Opinion weighed Plaintiffs' personal preference for self-manufactured firearms, concluding that the self-manufacturing ban strips them of their defensive weapon of choice. *Id.* at *10. But the fact that a few individuals may prefer a weapon that is not commonly used for lawful purposes—such as an unserialized weapon—for a lawful purpose such as self-defense does not give that category of dangerous and unusual weapons protection under the Second Amendment.

But even if such a constitutional right to self-manufacture weapons at home were found in the plain text of the Second Amendment, the Court committed clear error by holding the Enjoined Statutes unconstitutional. Under *Berger*, the serialization requirement that the Enjoined Statutes place on all firearms, whether self-manufactured or not, represents at most an incidental burden that is constitutional at step one of *Bruen*. *Berger* at *5. *Berger* also directly refutes the Court's reasoning as expressed in Footnote 18 that "whether the restriction is meaningful or not appears

irrelevant post-*Wolford* because the question is whether the law places "*any* restrictions," not meaningful restrictions, on keeping and bearing arms." Op. at *10 n.18 (emphasis added).

**B. Permanently enjoining the Enjoined Statutes Constituted Clear Error, and the injunction should be lifted to avoid manifest injustice.**

**1. The enactment of House Bill 418 removed any threat of irreparable harm.**

To secure the extraordinary remedy of a permanent injunction, a plaintiff must show they will suffer irreparable injury absent a court's intervention. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000). Irreparable harm requires a showing of imminent injury that is serious and irreversible, such that legal remedies or subsequent administrative adjustments cannot provide adequate cure. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). In the context of pre-enforcement constitutional challenges where a newly enacted statute provides an explicit, non-punitive avenue for citizens to achieve full legal conformity without disrupting their underlying rights, a claim of immediate, irreparable injury fails as a matter of law. *Harbor Assocs. Ltd. P'ship v. Micron Devices, LLC*, 2022 WL 1624360, at *2 (D. Del. May 23, 2022) (quoting *Princeton Univ. v. Schmid,* 455 U.S. 100, 102 (1982)). Plaintiffs have also not shown that requiring serial numbers be printed on frames or receivers causes them irreparable harm, nor have they demonstrated how serialization would impermissibly burden their ability to defend themselves, hunt, or, engage in the recreation hobby of self-manufacture.

Moreover, a change in law moots a case. *Harbor Assocs. Ltd. P'ship v. Micron Devices, LLC*, 2022 WL 1624360, at *2 (D. Del. May 23, 2022). Where a legislature intervenes to cure an alleged constitutional defect during the pendency of litigation, the original controversy concerning the unamended text ceases to exist. *Nextel W. Corp. v. Unity Twp.*, 282 F.3d 257, 263 (3d Cir.

2002) (collecting cases) ("if an amendment removes those features in the statute being challenged by the claim, any claim for injunctive relief becomes moot as to those features") (cleaned up).

This Court's Opinion addressed statutes that were amended in the absence of knowledge of the amendment. *But see* Op. at *11 (noting potential cures for the unamended states). A week before that ruling, the Governor signed H.B. 418 into law with immediate effect. H.B. 418, 152d Gen. Assemb. (Sept. 3, 2026). The enactment of H.B. 418 obviates any immediate threat of prosecution or property destruction that Plaintiffs previously asserted. Under the new provisions of 11 Del. C. §§ 1459A(e)(1) and 1463(f)(1), Delaware created a clear, comprehensive six-month period during which any person who lawfully possessed an unfinished component or an unserialized firearm prior to the law's effective date, September 3, 2026—or who transported such items into Delaware based on a change in residence—may legally retain possession of their property if the person serializes their property within six months of September 3, 2026. The statute imposes no immediate criminal liability, nor does it require citizens to surrender or destroy their property. Instead, it provides a simple, six-month administrative window to either bring the items into conformity via FFL serialization or render them permanently inoperable. The opinion reflects clear error because, through lack of knowledge of the enactment of H.B. 418, the Court did not address the current provisions of the statutes at issue in this case.

Because H.B. 418 provides a clear compliance pathway, Plaintiffs' claims of irreparable harm are speculative and self-inflicted. To the extent that individual gun owners choose not to use the statutory safe harbor over the next six months, any enforcement action would be a direct consequence of their own refusal to comply with a routine administrative marking framework, rather than an unconstitutional overreach by the State. Because the statutory clock allows for an orderly, risk-free adjustment of property characteristics, Plaintiffs do not face the choice between

immediate prosecution and total deprivation of property that characterizes irreparable constitutional harm. Absent a showing of immediate, unavoidable injury, the permanent injunction entered against the State is procedurally improper and should be dissolved.

Nonetheless, due to the timing of the effective date of H.B. 418 in relation to the date the Court issued its opinion, to ensure fairness and foreclose any risk of the seizure of property that individuals currently hold legally, in the event the Court dissolves the permanent injunction, the State will issue a formal administrative directive resetting the compliance clock under 11 *Del. C.* §§ 1459A(b), 1463(a), and 1463(b) to day one.

**2. The balance of equities and the public interest tip against an injunction.**

The permanent injunction entered by this Court inflicts direct, ongoing harm on the public interest by blinding Delaware law enforcement. When the government is the defending party in an injunction proceeding, the balance of equities and the public interest factors merge into a single, critical inquiry. *Nken v. Holder*, 556 U.S. 418, 435 (2009). A court must weigh the purported constitutional injury to the individual plaintiffs against the state's compelling interest in preserving public safety and executing its legislative mandates. *Maryland v. King*, 567 U.S. 1301, 1303 (2012).

Serialization is a vital regulatory infrastructure that assists law enforcement in tracing weapons used in violent crimes and disrupting illicit black markets. *Marzzarella*, 614 F.3d at 88 n.1, 94–95 (3d Cir. 2010) (rejecting a constitutional challenge to 18 U.S.C. § 922(k), the federal statute criminalizing the possession of a firearm with an obliterated, removed, or altered serial number). Privately manufactured, untraceable ghost guns represent a burgeoning threat to public safety in Delaware. The injunction of the Enjoined Statutes deprives law enforcement of critical

tracing metrics, leaving an unimpeded avenue for untraceable, background-check-evading firearms to flood the community.

Conversely, the equitable burden imposed on Plaintiffs by H.B. 418 is non-existent. The State does not demand the forfeiture of their weapons, nor does it disrupt their ability to use functional firearms for self-defense. It merely requires them to submit a non-functional, cosmetic component to a standard FFL tracking framework within a generous six-month window. Because the public interest is better served by maintaining transparent, traceable commercial channels for deadly weapons, and because the State's police power has historically encompassed firearm registration and musters, the equities tip against injunction. The public safety risks of leaving ghost guns entirely unregulated far outweigh the incidental, administrative "hoops" imposed on individual owners.

## VII. CONCLUSION

The Opinion is the result of clear errors of law and the resulting judgment works manifest injustice, inviting the continued surge of ghost guns in local communities that will eviscerate firearm tracking systems and interfere with law enforcement's ability to investigate crime. Defendant therefore respectfully requests the Court grant this motion to alter or amend its Opinion by dissolving the permanent injunction of the Enjoined Statutes, denying Plaintiffs' motion for summary judgment (D.I. 59) in its entirety, and granting Defendant's motion for summary judgment (D.I. 57) in its entirety, and holding the entireties of 11 Del. C. § 1459A and 11 Del. C. § 1463 constitutional and enforceable.

Respectfully submitted,

October 8, 2026

**STATE OF DELAWARE DEPARTMENT OF JUSTICE**

*<u>/s/ Ian R. Liston</u>*
Jennifer Kate Aaronson (#3478)
Ian R. Liston (#5507)
Deputy Attorney General
820 N. French Street
Wilmington, Delaware 19801
(302) 577-8808

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on October 8, 2026, I electronically filed the foregoing document and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Ian. R. Liston*
Ian R. Liston (DE Bar No. 5507)

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1.1

Pursuant to D. Del. LR 7.1.1, counsel for the parties met and conferred regarding Defendant's Motion to Alter or Amend the Judgment, including verbally by teleconference with Delaware counsel, and the parties were unable to reach an agreement on the relief sought therein.

*/s/ Ian. R. Liston*
Ian R. Liston (DE Bar No. 5507)

## UNOPPOSED REQUEST TO WAIVE 5PM FILING DEADLINE

Defendant respectfully requests the Court waive the 5 p.m. deadline set forth in the Court's Administrative Procedures Governing Filing and Service by Electronic Means (F) Deadlines for the electronic filing of Defendant's Motion to Alter or Amend the Judgment and Defendant's Opening Brief in support thereof set forth in the Administrative Procedures Governing Filing and Service by Electronic Means (F) Deadlines.

Counsel for Plaintiffs, William V. Bergstrom, Esquire, Cooper & Kirk, PLLC, does not oppose this request.

*/s/ Ian. R. Liston*
Ian R. Liston (DE Bar No. 5507)