**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN RIGBY, ALAN KNIGHT, and FIREARMS POLICY COALITION, INC.,<br>Plaintiffs,<br><br>v.<br><br>KATHY JENNINGS, Attorney General of Delaware,<br>Defendant. | C.A. No. 1:21-cv-01523-MN |

**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION TO ALTER OR AMEND THE JUDGMENT**

David H. Thompson*
Peter A. Patterson*
William V. Bergstrom*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com
**Pro hac vice*

Bradley P. Lehman
WHITEFORD, TAYLOR & PRESTON LLC
600 N. King Street, Suite 300
Wilmington, DE 19801
(302) 295-5674
blehman@whitefordlaw.com

Dated: November 12, 2026

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

PROCEDURAL HISTORY .......... 2

SUMMARY OF ARGUMENT .......... 2

STATEMENT OF FACTS .......... 3

I. *United States v. Berger* .......... 4

II. House Bill 418 .......... 5

LEGAL STANDARD .......... 5

ARGUMENT .......... 6

I. The Court Correctly Held That the Enjoined Provisions Implicate the Text at *Bruen*'s First Step .......... 6

A. The enjoined provisions do not impose a minimal serialization requirement .......... 7

B. The Court correctly held that the manufacturing ban falls within the scope of the Second Amendment .......... 8

II. The Court Correctly Held That the Enjoined Provisions Fail at *Bruen*'s Second Step .......... 9

A. The enjoined provisions do not fit into any purported tradition of public tracking .......... 9

B. The State's common-use argument fails .......... 11

III. The Case Is Not Moot .......... 14

IV. The Enjoined Provisions Still Cause Irreparable Harm, and the Equities Still Favor Permanent Injunctive Relief .......... 15

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ACLU v. Ashcroft*,
322 F.3d 240 (3d Cir. 2003)....15

*Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*,
183 F.4th 211 (3d Cir. 2026) ....12, 13, 14

*Banister v. Davis*,
590 U.S. 504 (2020)....9

*Blystone v. Horn*,
664 F.3d 397 (3d Cir. 2011)....5, 11, 12

*Bondi v. VanDerStok*,
604 U.S. 458 (2025)....10

*Def. Distributed v. Blanche*,
--- F. Supp. 3d ---, 2026 WL 2413200 (N.D. Tex. Aug. 17, 2026) ....10

*District of Columbia v. Heller*,
554 U.S. 570 (2008)....4, 12, 14

*Elrod v. Burns*,
427 U.S. 347 (1976)....15

*Exxon Shipping Co. v. Baker*,
554 U.S. 471 (2008)....5, 9, 13

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
585 F. Supp. 2d 623 (D. Del. 2008)....6, 11

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*,
176 F.3d 669 (3d Cir. 1999)....6

*Mills v. District of Columbia*,
571 F.3d 1304 (D.C. Cir. 2009) ....15

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022)....10, 12

*Range v. Att'y Gen. of the United States*,
124 F.4th 218 (3d Cir. 2024) ....14

*Samuel v. Carroll*,
505 F. Supp. 2d 256 (D. Del. 2007)....6, 8, 10

*United States v. Berger*,
189 F.4th 333 (3d Cir. 2026) ....4, 8, 13, 14

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010) ........ 14

**Statutes**

11 Del. C.
§ 1459A(b) ........ 2
§ 1459A(e)(1) ........ 5, 7, 15
§ 1463(a) ........ 2
§ 1463(b) ........ 2, 5, 7, 13, 14
§ 1463(c) ........ 2, 5, 13, 14
§ 1463(c)(1) ........ 2, 7
§ 1463(f)(1) ........ 5, 7, 15

**Other Authorities**

House Bill 418, 153d Gen. Assemb., 2d Reg. Sess. (Del. 2026) ........ 5

## INTRODUCTION

Rule 59(e) motions serve an "extremely limited" purpose—to prevent manifest injustice by correcting clear errors of law or introducing newly discovered evidence. They are not vehicles for relitigating a case, raising new arguments, or requesting that a court rethink its decision. But that is exactly what the State seeks to do here. The Court should reject that effort and adhere to its well-reasoned opinion that the "Possession" and "Manufacturing and Assembly" bans, as the Court previously labeled them, violate the Second Amendment.

The State cites two "developments"—each of which occurred *before* the Court issued its decision—that purportedly justify the State's attempt to relitigate the Court's judgment. The first is a Third Circuit decision holding that machine guns are not in common use for lawful purposes and that the federal registration requirement for suppressors does not implicate the plain text of the Second Amendment because it imposes a "minimal" and "incidental" burden on the right to keep and bear arms. The second is a Delaware statutory amendment that gives persons who possessed unserialized firearms and unfinished components as of September 3, 2026, six months to add serial numbers without penalty.

Neither event justifies the State's motion. In arguing otherwise, the State defends a statute that does not exist—one that merely imposes a "minimal, objective serialization requirement" on firearms and unfinished firearm components. But the State *still* flatly prohibits "manufacturing firearms and using 3-D printers to manufacture firearms," which the Court held violates the Second Amendment. Summ. J. Mem. Op., D.I. 81 at 23 (Sep. 10, 2026) ("Op."); *see also id.* at 22 ("But prohibiting possession of firearms that are currently lawfully owned *or future manufacturing and assembly* of the same . . . place[s] restrictions on keeping and bearing firearms." (emphasis added)). And though the State now provides a temporally limited safe harbor for persons who possessed unserialized firearms and components before the amendment was enacted, the State still

imposes a *prospective* "outright prohibition on owning a class of firearms." *Id.* at 23.

Because the State mischaracterizes the challenged provisions and ultimately rehashes issues that have already been litigated and decided, the Court should deny the motion.

## PROCEDURAL HISTORY

Plaintiffs filed this suit in October 2021 challenging the State of Delaware's statutory ban on distributing, possessing, and manufacturing unserialized firearms and unfinished firearm components. *See* Compl., D.I. 1 (Oct. 27, 2021). The Court denied the State's motion to dismiss and granted in part Plaintiffs' motion for a preliminary injunction. *See* Mem. Op., D.I. 38 (Sep. 23, 2022). The parties later cross-moved for summary judgment, and the Court granted each motion in part and denied each in part. *See* Op. at 28. As relevant here, the Court enjoined enforcement of the State's bans on (1) "possess[ing] an unfinished firearm frame or receiver that does not have the name of the manufacturer and individual serial number conspicuously placed on it or on a major component of the firearm into which the unfinished firearm frame or receiver will be housed," (2) "possessing an untraceable firearm," (3) "manufacturing an untraceable firearm," and (4) "using a 3-dimensional printer . . . to manufacture or produce a firearm, firearm receiver, or major firearm component when not licensed as a manufacturer." 11 Del. C. §§ 1459A(b), 1463(a)–(c)(1); *see* Op. at 14–17, 18–26. The State now moves under Rule 59(e) to alter or amend that judgment. *See* Def.'s Mot. to Alter or Amend J., D.I. 86 (Oct. 8, 2026).

## SUMMARY OF ARGUMENT

1. The Court correctly held that the enjoined provisions implicate the plain text at *Bruen*'s first step. The enjoined provisions do not impose a "minimal, objective serialization requirement." Rather, they impose a flat ban on self-manufacture—with no opportunity to add a serial number—which the Court already held violates the plain text of the Second Amendment. The State's argument, rooted in minor statutory changes that do not meaningfully alter the burden,

attempts to relitigate whether the Second Amendment protects the right to self-manufacture. And even as to possession, the enjoined provisions still, on a prospective basis, prohibit possession of an entire class of "Arms" protected by the Second Amendment.

2. The Court correctly held that the enjoined provisions fail at *Bruen*'s second step. The State's new argument that there is a historical tradition of "minimal, non-functional requirement[s] for valid public tracking" is improper under Rule 59(e) and irrelevant because the enjoined provisions impose blanket bans, not "minimal" tracking requirements. The State eventually acknowledges as much but responds that a ban on unserialized firearms is permissible because they are "commonly used for crime." That recycled argument is likewise improper. It also distorts the legal standard, ignores the manufacturing ban, and misclassifies the firearms in question.

3. The case is not moot because the statutory amendment did not cure the constitutional defects. There is no safe harbor for self-manufactured firearms, and the safe harbor for possession is limited to firearms possessed before the statute's effective date. Moreover, the plain text of the safe harbor does not allow Plaintiffs Rigby and Knight to reacquire the firearms and components that they have already relinquished.

4. The deprivation of Plaintiffs' constitutionally protected rights, including their right to self-manufacture, constitutes irreparable injury, and there is no public interest in enforcing unconstitutional laws. The Court should deny the motion.

## STATEMENT OF FACTS

The Court's prior opinion lays out the relevant background facts. *See* Op. at 1–5. The State purports to ground its motion in two events that occurred the week before the Court issued its decision.

## I. *United States v. Berger*

On September 1, 2026, the Third Circuit decided *United States v. Berger*, which involved a Second Amendment challenge to the federal machine-gun ban and registration requirement for suppressors. 189 F.4th 333, 335 (3d Cir. 2026). The court upheld both regulations.

Starting with the machine-gun ban, the court held that it was valid at *Bruen*'s second step because "[m]achine guns are not in common use for lawful purposes" and thus "are dangerous and unusual." *Id.* at 337. As such, *Berger* held that they could be banned under *Heller*, which had already "done the work of distilling the key principle from history," and established that such weapons could be outlawed because "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 338–39 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008)). The court concluded that machine guns fit into the "small category" of weapons that are "particularly dangerous to others and commonly associated only with crime." *Id.* at 339.

The court then upheld the registration requirement for suppressors, which the court held was valid at step one of the *Bruen* inquiry by reasoning that it is a "minimal, objective" regulation that "imposes only an incidental burden" and thus does not "infringe" upon the Second Amendment-protected right to keep and bear arms. *Id.* at 340.[1] The court noted that the appellant had "made some of the silencers at home and bought others" and was simply required to submit an application, pay a tax, register the suppressors, and add serial numbers. *Id.* at 341. These "narrow" requirements impose no "real barriers to owning" suppressors, even self-manufactured ones. *Id.* They simply create "a minimal, objective hoop that buyers must jump through." *Id.* at 335.

[1] Plaintiffs reserve the right to challenge *Berger*'s application of *Bruen* step one in an appropriate forum.

### II. House Bill 418

On September 3, 2026, the Governor signed House Bill ("H.B.") 418, 153d Gen. Assemb., 2d Reg. Sess. (Del. 2026). The State claims that H.B. 418 "directly addresses the reasoning underlying the Court's injunction" by creating a serialization process for currently owned firearms, thus providing "a clear compliance pathway" and "obviat[ing] any immediate threat of prosecution or property destruction that Plaintiffs previously asserted." Def.'s Opening Br. in Supp. of Mot. to Alter or Amend J., D.I. 87 at 1, 18 (Oct. 8, 2026) ("Def.'s Br."). But the State's own description of H.B. 418 reveals a more limited scope. *See id.* at 4. H.B. 418 simply amended 11 Del. C. §§ 1459A and 1463 by providing a six-month safe harbor for persons who possessed unserialized firearms or unfinished components as of September 3 to serialize their firearms and components or render them inoperable. *See* 11 Del. C. §§ 1459A(e)(1), 1463(f)(1). For current residents, this safe harbor exists only for firearms owned as of September 3—it does not cover firearms obtained after that date, regardless of whether those firearms are self-manufactured or acquired by other means. Indeed, Delaware still flatly prohibits persons from manufacturing their own firearms. *Id.* § 1463(b)–(c). Persons who acquire unserialized firearms or unfinished components in another state and then move to Delaware must serialize within six months of establishing residency. *Id.* §§ 1459A(e)(1), 1463(f)(1). In other words, despite the amendments, Delaware's restrictions otherwise *today* stand as a flat ban on acquiring, manufacturing, and possessing self-made firearms.

## LEGAL STANDARD

The scope of a motion to alter or amend a judgment under Rule 59(e) "is extremely limited," *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011), and "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (cleaned up); *see also*

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 623, 634 (D. Del. 2008) (explaining that Rule 59(e) motions "should not be used to rehash arguments which have already been briefed by the parties and considered by the Court" (cleaned up)). The purpose of such motions is "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Accordingly, "[t]he standard for obtaining relief under Rule 59(e) is difficult for a movant to meet," *Samuel v. Carroll*, 505 F. Supp. 2d 256, 261 (D. Del. 2007), and such motions are "sparingly" granted, *Honeywell Int'l*, 585 F. Supp. 2d at 634.

## ARGUMENT

The State's motion relies on *Berger* and H.B. 418 to defend a statute that does not exist. Because that reliance is misplaced, the State is forced to recycle old arguments and raise new ones in hopes that the Court will change its mind, which is not a proper use of Rule 59(e). The Court should deny the motion.

### I. The Court Correctly Held That the Enjoined Provisions Implicate the Text at *Bruen*'s First Step.

In its motion, the State makes two arguments relevant to step one of the *Bruen* analysis. First, the State contends that the enjoined provisions merely impose "minimal, objective registration and serialization requirements" that do not "infringe" upon Second Amendment-protected rights under *Berger*. Def.'s Br. at 6. Second, the State asserts that the plain text of the Second Amendment does not protect a right to self-manufacture firearms and, in any event, the "serialization requirement" does not infringe upon that right. *Id.* at 15–16. Both arguments misconceive the enjoined provisions, and the second one improperly reasserts an argument that the Court already considered and rejected.

### A. The enjoined provisions do not impose a minimal serialization requirement.

The State's claim that the enjoined provisions "do not ban any underlying class of firearms" but simply require serialization is false. *Id.* at 6. Delaware still prohibits "knowingly manufactur[ing]" or "assembl[ing]" "an untraceable firearm" and "caus[ing]" "an untraceable firearm" "to be manufactured or assembled." 11 Del. C. § 1463(b). And it still prohibits "using a 3-dimensional printer . . . to manufacture or produce a firearm, firearm receiver, or major firearm component when not licensed as a manufacturer." *Id.* § 1463(c)(1). Today, as when the Court issued its decision, "[t]here are no exceptions" to these prohibitions. Op. at 23. As such, just as when this Court issued its earlier decision, these restrictions implicate the Second Amendment at step one because they "appl[y] to all people, concern[] arms, and place[] at least some restrictions on keeping and bearing arms." *Id.* at 20; *see also id.* at 22 (holding that the ban on "future manufacturing . . . fail[s] at *Bruen*'s first step").

Even as to possession, the enjoined provisions still impose a *prospective* ban. *See* 11 Del. C. §§ 1459A(e)(1) (providing a safe harbor only for unfinished firearm frames or receivers possessed as of September 3, 2026), 1463(f)(1) (same as to unserialized firearms). Moving forward, a person who, as Plaintiffs Rigby and Knight wish to do, manufactures a prohibited item or obtains one by other means would be in unlawful possession. *See* Op. at 4 & n.7 (noting that Plaintiffs Rigby and Knight desire to self-manufacture and acquire items that are banned under the enjoined provisions); *see also* Joint Stipulation, D.I. 61 ¶¶ 24, 26–27, 36 (Mar. 25, 2024). Indeed, Plaintiffs Rigby and Knight have already relinquished firearms and components covered by the statute, *see* Op. at 3–4, and repossessing them now would not be protected by the safe harbor. *See* 11 Del. C. § 1463(f)(1) (providing that "a person who lawfully possessed a firearm that does not bear a serial number prior to [September 3, 2026] . . . *may retain possession*" if that person serializes within six months (emphasis added)); *see also id.* § 1459A(e)(1) (similar).

*Berger* is thus no help to the State. The regulations at issue there did not impose a blanket ban on suppressors, whether self-manufactured or purchased (the appellant had "made some of the silencers at home and bought others"). *Berger*, 189 F.4th at 341. The laws simply required the appellant "to register his silencers and mark them with serial numbers." *Id.* In other words, *Berger* involved precisely what this Court posited may be constitutionally permissible—requiring "all future self-manufactured firearms to be serialized with the state within a certain timeframe after manufacturing." Op. at 21. Delaware still does not permit that option; it instead closes off future self-manufacturing and possession of unserialized firearms entirely, with no opportunity for persons to add serial numbers. For this reason, it is inaccurate to characterize the enjoined provisions as a mere serialization requirement. A blanket prohibition with no path to compliance is not a "minimal, objective hoop that [persons] must jump through." *Berger*, 189 F.4th at 335.

**B. The Court correctly held that the manufacturing ban falls within the scope of the Second Amendment.**

The State previously argued that the manufacturing ban does not violate the Second Amendment. *See* Def.'s Reply in Supp. of Mot. for Summ. J., D.I. 65 at 4 (Apr. 26, 2024). The Court, in turn, fully considered the issue and held, correctly, that the ban "places restrictions on conduct protected by the Second Amendment." Op. at 19–20. The State's bare request that the Court "rethink" its decision is not a proper basis for a Rule 59(e) motion. *Samuel*, 505 F. Supp. 2d at 261; *see* Def.'s Br. at 15–16. And the State's insistence that the enjoined provisions do not infringe upon any right to self-manufacture because they create a mere "serialization requirement," Def.'s Br. at 16–17, fails for the reasons given above.[2]

[2] Insofar as the State argues that it may ban the self-manufacture of *unserialized* firearms, that argument fails because (1) Section 1463(c)(1) prohibits using a 3-D printer to self-manufacture firearms and components, regardless of serialization; and (2) the State has not established that it can ban unserialized firearms—to the contrary, the Court already held that Delaware's "outright

## II. The Court Correctly Held That the Enjoined Provisions Fail at *Bruen*'s Second Step.

As with step one, the State has two arguments relevant to step two of the *Bruen* analysis. First, the State argues that the purported "serialization requirement" comports with a historical tradition of imposing "minimal, non-functional requirement[s] for valid public tracking." *Id.* at 12–13. Second, the State says that it can regulate (and even ban) unserialized firearms because they are commonly used for crime. *Id.* at 9–12. Once again, both arguments misapprehend the enjoined provisions. The first argument is also a new one that cannot be raised in a Rule 59(e) motion, and the second rehashes an old argument, distorts the legal standard, and misclassifies the firearms in question.

### A. The enjoined provisions do not fit into any purported tradition of public tracking.

The State's attempt to identify historical analogues for the enjoined provisions fails to clear the starting blocks because it asserts an entirely new argument. At summary judgment, to meet its historical burden, the State "point[ed] to three categories of laws: (1) laws restricting clubs, bludgeons, fighting knives, and slungshots; (2) laws restricting trap, punt, pivot, and swivel guns; and (3) laws about gunpowder storage." Op. at 22 (citing Def.'s Opening Br. in Supp. of Mot. for Summ. J., D.I. 58 at 12–15 (Mar. 25, 2024)). It did not rely on the so-called "public tracking" laws it now invokes. Def.'s Br. at 13. And Rule 59(e) motions "may not be used . . . to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co.*, 554 U.S. at 485 n.5 (quoting 11 WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)); *Banister v. Davis*, 590 U.S. 504, 508 (2020) ("[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued[.]");

---

prohibition on owning a class of firearms (unserialized firearms)" violates the Second Amendment. Op. at 23; *see also infra* Part II.B.

*Samuel*, 505 F. Supp. 2d at 261.

The State's argument fails for another fundamental reason: It assumes, yet again, that the provisions impose a mere serialization requirement. *See* Def.'s Br. at 13 ("[R]equiring a non-functional serial mark falls within this established history of public-safety monitoring[.]"). But as explained above, the enjoined provisions do more than require serialization—they ban entire classes of arms (*e.g.*, there is still no way for someone, today, to self-manufacture a *new* firearm, even if he serializes it immediately). The enjoined provisions are thus fundamentally different from the historical laws identified by the State, none of which imposed an outright ban on a class of firearms. *See* Def.'s Br. at 13. Or in doctrinal terms, even if the State's characterization of these purported analogues were correct, they differed in "how" they burdened Second Amendment-protected rights. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 29 (2022).

As for the self-manufacturing ban, the State does not even try to meet its burden of establishing that the ban is "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. Nor could it—the "[s]elf-manufacture of firearms in America was common and indeed foundational to establishing our Nation," and "Americans throughout our history have continued to build their own arms," which has "remained unregulated throughout much of American history." *Def. Distrib. v. Blanche*, --- F. Supp. 3d ---, 2026 WL 2413200, at *10 (N.D. Tex. Aug. 17, 2026) (cleaned up) (collecting sources); *see also* Pls.' Br. in Supp. of Mot. for Summ. J., D.I. 60 at 6–7 (Mar. 25, 2024).

The State's reliance on *Bondi v. VanDerStok*, 604 U.S. 458 (2025), is also misplaced, in that it depends on the mischaracterization of Delaware's law as a mere serialization requirement. And it also makes arguments that the State had the opportunity to make prior to the issuance of this Court's summary judgment opinion. *See generally* Def.'s Suppl. Br. re *VanDerStok*, D.I. 73

(Apr. 8, 2025). As Plaintiffs explained in their supplemental brief on the topic, *VanDerStok* was not a Second Amendment case, and the enjoined provisions are unlike the federal regulations that were at issue there. *See* Pls.' Suppl. Br. re *VanDerStok*, D.I. 72 at 1–2 (Apr. 8, 2025).

Finally, the State's claim that it was somehow inconsistent for the Court to uphold the ban on distribution but enjoin the ban on self-manufacturing is incorrect. *See* Def.'s Br. at 14–15. The Court reasoned that the latter regulates the *acquisition* of firearms, which the Second Amendment protects, while the former regulates the *dispossession* of firearms, which the Court held the Second Amendment does not protect. *See* Op. at 17, 19–20. Although it remains Plaintiffs' view that *both* should have been held unconstitutional, the result the Court reached is consistent on the terms of the Court's ruling. What is more, this argument too depends upon accepting the State's misunderstanding of the effect of its own statute. Delaware bans the use of 3-D printers to self-manufacture, whether or not the firearm is serialized. So, contrary to the State's contention, the prohibition extends beyond the "self-manufacture [of] an unserialized weapon from parts that can only be acquired in violation of . . . permissible restrictions" on distribution. Def.'s Br. at 14–15. The prohibition also reaches the self-manufacture of firearms using *serialized* parts.

**B. The State's common-use argument fails.**

Rounding out its long list of errors, the State turns to the common-use inquiry and *Berger* to defend its regulation of unserialized firearms. The State's argument fails for four independent reasons.

First, the State is attempting to "rehash" an argument that has "already been briefed by the parties and considered by the Court." *Honeywell Int'l*, 585 F. Supp. 2d at 634; *see, e.g.*, Def.'s Opening Br. in Supp. of Mot. for Summ. J. at 11–12; Def.'s Opp'n to Pls.' Mot. for Summ. J., D.I. 63 at 5–6 (Apr. 15, 2024); Def.'s Reply in Supp. of Mot. for Summ. J. at 2–3; Op. at 16–17, 23, 25. Rule 59(e) "motions are not to be used as an opportunity to relitigate the case." *Blystone*, 664

F.3d at 415.

Second, the State distorts the common-use test. At times, the State defends its ban on unserialized firearms on grounds that such firearms are commonly used for crime. *See* Def.'s Br. at 3 (reasoning that "weapons commonly used for crime may be banned"); *id.* at 9 (stating that our Nation has a "tradition of banning weapons commonly used for crime"). To this end, the State relies heavily on empirical data allegedly showing that unserialized firearms have become the "weapon of choice" for violent criminals. *Id.* at 11.

But the test is common use, not criminal use. That is, the relevant question is not whether the class of firearms being regulated is commonly used for crime—it is whether the class of firearms is "in common use for lawful purposes." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 183 F.4th 211, 234 (3d Cir. 2026) (en banc) ("*ANJRPC*"). As this Court explained in rejecting the State's prior reliance on criminal use, "most, if not all, types of guns are used by criminals to some degree but that does not relieve them of constitutional protection." Op. at 15 n.17; *see also id.* at 22–23. And *Heller* itself teaches that a class of firearms may be in common use for lawful purposes even if it is also commonly used for crime. *See Heller*, 554 U.S. at 636 ("We are aware of the problem of handgun violence . . . ."); *id.* at 682 (Breyer, J., dissenting) (defending the District of Columbia's ban on handguns on grounds that they "are specially linked to urban gun deaths and injuries" and are "the overwhelmingly favorite weapon of armed criminals"). Here, even if it could relitigate this question under a Rule 59(e) motion, the State makes no effort to show that unserialized firearms are not in common use for lawful purposes, even though it carries the burden at *Bruen*'s second step. *See Bruen*, 597 U.S. at 33–34 (holding that the "burden falls on" the government at the second step to show that a restriction "is consistent with this Nation's historical tradition of firearm regulation"); *ANJRPC*, 183 F.4th at 236–37

(holding that the common-use inquiry applies "at *Bruen*'s second step"); *see also* Op. at 22–23; *contra* Def.'s Br. at 12 (suggesting that Plaintiffs bear the burden).

Contrary to the State's claim, *Berger* did not hold that "weapons commonly used for crime may be banned." Def.'s Br. at 3. *Berger* applied the common-use standard and held that "[m]achine guns are not in common use for lawful purposes" but instead are "commonly used" *only* "for crime or war." 189 F.4th at 337–39; *see also id.* at 339 (holding that machine guns "fit into th[e] small category" of "weapons that [a]re particularly dangerous to others and commonly associated *only* with crime" (emphasis added)). In fact, *Berger* purported simply to apply *Heller* and *ANJRPC*, both of which this Court already relied on in its summary judgment opinion. That is yet another reason the State's reliance on Rule 59(e) is misplaced. *See Exxon Shipping Co.*, 554 U.S. at 485 n.5.

Third, whether unserialized firearms are in common use is irrelevant to the State's ban on self-manufacturing, which applies regardless of whether the individual who self-manufactures an arm proceeds to have it serialized. *See* 11 Del. C. § 1463(b)–(c). The State's common-use argument, like many of its others, depends on a view of what the statute does that cannot be supported by the statute itself.

Fourth, *unserialized* firearms is not the relevant category for purposes of the common-use inquiry. In *Berger*, the court considered the "features" of machine guns to determine that they are *functionally* distinct from semiautomatic arms that are in common use. *See* 189 F.4th at 337, 339. As the State repeatedly emphasizes, however, unserialized firearms are functionally no different from serialized ones. *See* Def.'s Br. at 6, 8, 9, 10, 12; *see also* Op. at 23 ("[F]unctionally ghost guns are no different than serialized guns."). Put another way, the presence or absence of a serial number is no more relevant to common use than a firearm's color. *See* Op. at 25 (noting that "there

is no record evidence here that untraceable or self-manufactured guns pose any danger that serialized or traditionally manufactured guns do not"). What matters is that the firearms Plaintiffs wish to manufacture and possess—handguns and rifles—are functionally "well-suited for traditionally lawful purposes like self-defense or hunting." *Berger*, 189 F.4th at 337 (cleaned up). They are undisputedly in common use. *See Heller*, 554 U.S. at 629 ("[H]andguns are the most popular weapon chosen by Americans for self-defense[.]"); *ANJRPC*, 183 F.4th at 242 ("[T]he many millions of semi-automatic rifles in circulation for lawful purposes are plainly in common use[.]").

Furthermore, the State relies on *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), to argue that "[t]he Third Circuit rejects the idea that unmarked firearms constitute a protected class of weapons based on historical common use." Def.'s Br. at 9. But *Marzzarella* applied the type of means-ends scrutiny that *Bruen* expressly excised from Second Amendment jurisprudence. *See Range v. Att'y Gen. of the United States*, 124 F.4th 218, 225 (3d Cir. 2024) (en banc) (recognizing that *Bruen* abrogated *Marzzarella*). Moreover, the State misreads *Marzzarella*—the court reasoned that unmarked firearms are *not* "dangerous and unusual" weapons because "[a]n unmarked firearm . . . is no more damaging than a marked firearm." 614 F.3d at 95. The court thus assumed that criminalizing unmarked firearms burdens Second Amendment-protected rights and upheld the law only after applying means-ends scrutiny. *Id.* at 95–96. The other, out-of-circuit decisions relied on by the State either did not address the legal questions presented here or involved analyses at odds with this Court's opinion. *See* Def.'s Br. at 10.

## III. The Case Is Not Moot.

The State contends that H.B. 418's safe harbor for possession cures any constitutional defect and thus moots the case. *Id.* at 17–18. But again, Delaware still prohibits self-manufactured firearms, *see* 11 Del. C. § 1463(b)–(c), and this ban on "future manufacturing" violates the Second

Amendment, Op. at 22. For current residents, the statutory safe harbor is also limited to firearms possessed as of September 3, 2026—it does not cover firearms obtained after that date, even though serialization is possible for such firearms, as evidenced by the fact that Delaware allows *new* residents to serialize firearms recently acquired out of state. 11 Del. C. §§ 1459A(e)(1), 1463(f)(1). Finally, even putting aside that Plaintiffs Rigby and Knight wish to both self-manufacture prohibited items and obtain possession by other means, *see* Op. at 4 & n.7; *see also* Joint Stipulation ¶¶ 24, 26–27, 36, the safe harbor does not protect them in any event because they have not "retain[ed] possession" of their firearms and components, 11 Del. C. §§ 1459A(e)(1), 1463(f)(1). Accordingly, the State has not cured the constitutional defects.

**IV. The Enjoined Provisions Still Cause Irreparable Harm, and the Equities Still Favor Permanent Injunctive Relief.**

The remaining permanent injunction factors still favor relief for the reasons the Court has already given. *See* Op. at 27–28. The deprivation of Plaintiffs' constitutionally protected rights—including the right to self-manufacture firearms—constitutes irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (plurality op.); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009). And the balance of equities and public interest—which merge here—favor a permanent injunction because there is no public interest in enforcing an unconstitutional law. *See ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003). Although the State reiterates its arguments on each of these points, *see* Def.'s Br. at 17–20, it is merely rehashing arguments this Court has already rejected, and the arguments should not be considered under Rule 59(e).

**CONCLUSION**

The Court should deny the motion.

Dated: November 12, 2026

Respectfully submitted,

WHITEFORD, TAYLOR & PRESTON LLC

*/s/ Bradley P. Lehman*
Bradley P. Lehman (DE 5921)
WHITEFORD, TAYLOR &
PRESTON LLC
600 N. King Street, Suite 300
Wilmington, DE 19801
(302) 295-5674
blehman@whitefordlaw.com

David H. Thompson*
Peter A. Patterson*
William V. Bergstrom*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com
**Pro hac vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Bradley P. Lehman, Esq., hereby certify that on November 12, 2026, I caused a true and correct copy of this opposition brief to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to registered participants.

Dated: November 12, 2026

/s/ *Bradley P. Lehman*
Bradley P. Lehman (DE 5921)